## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

BARBARA J. FULLER, and all others
similarly situated,

          Plaintiff,

    vs.

SUNTRUST BANKS, INC., THE
SUNTRUST BANKS, INC. BENEFITS
PLAN COMMITTEE, JORGE
ARRIETA, HAROLD BITLER, MIMI
BREEDEN, MARK CHANCY,
ALSTON D. CORRELL, DAVID
DIERKER, TED HOEPNER, KEN
HOUGHTON, THOMAS KUNTZ,
DONNA LANGE, JOSEPH L.
LANIER, JR., JEROME
LIENHARD,GREGORY MILLER,
THOMAS PANTHER, WILLIAM
O'HALLORAN, LARRY L. PRINCE,
WILLIAM H. ROGERS, JR.,
CHRISTOPHER SHULTS, JOHN
SPIEGEL, MARY STEELE, and JOHN
and JANE DOES 1 to 20.

          Defendants.

**AMENDED COMPLAINT-
CLASS ACTION**

Case No.:  1:11-cv-00784 ODE

# TABLE OF CONTENTS

I.    NATURE OF THE ACTION ........................................................................1

II.   JURISDICTION AND VENUE ..................................................................6

III.  PARTIES ....................................................................................................6

    A.    Plaintiff ............................................................................................6

    B.    Defendants........................................................................................7

IV.   FACTUAL BACKGROUND ....................................................................14

    A.    THE SUNTRUST BANKS, INC. 401(K) PLAN AND ITS
          FIDUCIARIES ..............................................................................14

    B.    DEFENDANTS' DUTIES UNDER ERISA......................................20

    C.    DEFENDANTS BREACHED THEIR DUTIES TO THE PLAN AND
          CAUSED THE PLAN TO ENGAGE IN PROHIBITED
          TRANSACTIONS BY CAUSING THE PLAN TO INVEST IN THE
          AFFILIATED FUNDS....................................................................24

V.    CLASS ACTION ALLEGATIONS. ..........................................................44

VI.   EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TOLLING OF
      THE STATUTE OF LIMITATIONS............................................................48

VII.  CLAIMS FOR RELIEF ............................................................................50

    COUNT I

    Engaging in Prohibited Transactions by Causing the 401(k) Plan to Invest in
    SunTrust-Affiliated Investment Products(Violation of ERISA, 29 U.S.C.
    §1106 by Committee Defendants)................................................................50

    COUNT II

    Breach of Duties of Loyalty and Prudence by Failing to Remove or Replace
    the Affiliated Funds as 401(k) Plan Investment Vehicles during the Class

Period, which Caused Losses to the 401(k) Plan (Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants)......................................................52

COUNT III

Breach of Duties of Loyalty and Prudence by Selecting the STI Classic International Equity Index Fund as an Investment Fund for the 401(k) Plan (Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants) ............54

COUNT IV

Violation of ERISA by Knowingly Participating in Breaches of Fiduciary Duty and Prohibited Transactions (Relief sought pursuant to ERISA, 29 U.S.C. §1132(a)(3) against SunTrust)............................................................55

COUNT V

Defendants Lanier, Prince, and Correll Violated ERISA by Failing to Remove and Prudently Monitor Committee Defendants .............................53

COUNT VI

Liability for Breach of Co-Fiduciary (Liability of Committee Defendants and Defendants SunTrust, Lanier, Prince, and Correll Pursuant to ERISA, 29 U.S.C. §1105 as Cofiduciaries for Participating in and Failing to Remedy Committee Defendants' Breaches of Fiduciary Duty)...................................58

COUNT VII

Breach of ERISA Fiduciary Duties of Prudence and Loyalty by Approving the "Mapping" of Funds from the NCF 401(k) Plan into the Affiliated Funds in the SunTrust 401(k) Plan (Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants))................................................................................60

## I.   <u>NATURE OF THE ACTION</u>

1.      This is a civil enforcement action brought pursuant to the Employee

Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C.

§1132(a)(2) & (a)(3), for violations of ERISA's fiduciary duty and prohibited

transaction provisions.  It is brought as a class action by Barbara J. Fuller, a

participant in the SunTrust Banks, Inc. 401(k) Plan ("401(k) Plan" or "Plan"), on

behalf of the 401(k) Plan and all similarly situated Plan participants and

beneficiaries (henceforth, collectively, "participants"), and all predecessor plans.

2.      This suit is about corporate self-dealing at the expense of the

company's own employee retirement plan.  Defendants include Plan fiduciaries

SunTrust Banks, Inc. ("SunTrust" or the "Company"), the SunTrust Banks, Inc.

Benefits Plan Committee ("Plan Committee") and its individual members.

Defendants were required by ERISA to act solely in the interest of the Plan's

participants when making decisions with respect to removing, replacing,

monitoring, or selecting the Plan's investments.  Rather than fulfilling their

fiduciary duties (the "highest duties known to the law"), which call for prudent

investments at reasonable cost, Defendants selected for the Plan and repeatedly

failed to remove or replace proprietary mutual funds managed and offered by

SunTrust affiliates.  These funds were not selected by an impartial or prudent

1

process, but were instead selected because those SunTrust affiliates would benefit financially if 401(k) Plan assets were invested with them.  These funds offered poor performance and high fees compared to numerous other available investment vehicles, including mutual funds offered by The Vanguard Group, Inc. ("Vanguard"), and separately managed accounts and collective trusts managed by investment advisors, which SunTrust itself employed in its defined benefit plan, the SunTrust Bank, Inc. Retirement Plan ("Pension Plan").[1]  (Collective trusts and separately managed accounts are low-cost alternatives to mutual funds available to institutional investors such as retirement plans.)  Significantly, SunTrust itself benefited by using low-cost good performing investments in the Pension Plan, because SunTrust bears the risk of poor performance in that plan, but participants bear the risk of underperformance in a defined contribution plan such as the 401(k) Plan, so SunTrust only benefited if it could collect fee income from participants.

---

[1] Mutual Funds offered by Vanguard, and separately managed accounts and collective trusts, are appropriate comparisons for determining whether mutual fund fees are high.  Vanguard is different from other mutual fund companies in that their fund boards are truly independent and engage in genuine arms-length negotiation when it comes to setting investment advisory fees for their funds.  *See* John P. Freeman, Stuart L. Brown, & Steve Pomerantz, Mutual Fund Advisory Fees:  New Evidence and a Fair Fiduciary Duty Test, 61 *Okla. L. Rev.* 83, 95-103 (2008).  Fees for separately managed accounts and collective trusts are also an appropriate comparison class because they are set through negotiations between unconflicted entities in an open market.  *Id.* at 103-106.

By choosing proprietary investment funds for the 401(k) Plan, Defendants enriched SunTrust and its affiliates at the expense of 401(k) Plan participants, and disregarded the participants' interests in having low-cost good performing investment funds.

3.      Defendants engaged in a continuing pattern and practice of favoritism towards SunTrust's proprietary mutual funds, including:  (i) permitting the affiliated and conflicted investment advisor for these funds to participate routinely in fiduciary committee meetings discussing investment fund selection for the 401(k) Plan and serve as a primary source of recommendations for the plan's lineup of investment options, (ii) ignoring evaluations describing the poor performance of several proprietary funds, (iii) failing to consider whether the same type of low-cost investment vehicles used for the majority of Pension Plan investments could also be used in the 401(k) Plan, (iv) failing to apply the same performance standards to proprietary and non-proprietary funds, and (v) waiting until 2008 to adopt a written investment policy for evaluation of investment vehicles, and then adopting an investment policy statement with lax standards that permitted continued investment in SunTrust proprietary funds.

3

4.     The proprietary funds offered in the 401(k) Plan that are the subject of this lawsuit consist of eight mutual funds:  the STI Classic Capital Appreciation Fund (later renamed the "Large Cap Growth Fund"), STI Classic Small Cap Growth Fund, STI Classic Growth and Income Fund (later renamed the "Large Cap Relative Value Fund" and then renamed the "Large-Cap Core Equity Fund"), the STI Classic Mid-Cap Equity Fund (later renamed "Mid-Cap Core Equity"), the STI Classic Investment Grade Bond Fund, the STI Classic Short-Term Bond Fund, the STI Classic Prime Quality Money Market Fund, and the STI Classic International Equity Index Fund.[2]  (Collectively, the "Affiliated Funds").

5.     Defendants are ERISA fiduciaries for the 401(k) Plan.  The Defendants are obligated to comply with ERISA's fiduciary duties — "the highest known to law" — to act prudently and solely in the interest of the 401(k) Plan and its participants.

6.     The class is all participants in the 401(k) Plan (and their beneficiaries), excluding the Defendants, who had a balance through their Plan

---

[2] Effective March 31, 2008, STI Classic Funds were renamed the RidgeWorth Funds.  However, for the purpose of this complaint the former name will be employed.  Ticker symbols for these mutual funds, in the order listed, are: STCAX, SSCTX, CRVAX, SAGTX, STIGX, SSBTX, SQTXX, and SIEIX.

accounts in any of the Affiliated Funds at any time from April 25, 2002 to December 31, 2010 ("Class Period").[3]

7.     As a result of Defendants' breaches of fiduciary duty in causing the 401(k) Plan to invest in the Affiliated Funds, the 401(k) Plan and its participants have lost tens of millions of dollars during the Class Period in high fees and poor performance compared to what they could have earned in unaffiliated investment vehicles and/or the types of separately managed accounts SunTrust employed in its own Pension Plan.

8.     The allegations in this complaint are based upon counsel's investigation of public documents, including filings with the U.S. Department of Labor and U.S. Securities and Exchange Commission, documents provided to Plaintiff because of her status as Plan participant, and documents provided by Defendants in the course of exhaustion of administrative remedies, as discussed further below.  As many facts are still within Defendants' exclusive possession, Plaintiff may make further changes to the claims herein after discovery.

---

[3] April 25, 2002 is the start of the Class Period in the administrative class claim, discussed further below, submitted with respect to the conduct alleged in this complaint.

## II.   JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 29 U.S.C.

§1132(e)(1).

10.     Venue is proper in this district pursuant to ERISA, 29 U.S.C.

§1132(e)(2) because many of the breaches complained of occurred in this District,

the Plan is administered in this District, and one or more of the Defendants reside

or may be found in this District.

## III.   PARTIES

### A.   Plaintiff

11.     **Plaintiff Barbara J. Fuller ("Fuller")**.  Plaintiff Fuller is a

participant in the 401(k) Plan.   She worked for SunTrust, and several predecessor

entities, for thirty-eight years, in a variety of clerical positions.   Her employment

ended in late 2005.   She invested in the Affiliated Funds during the Class period.

Ms. Fuller has had her retirement assets invested in the STI Classic Short-Term

Bond Fund,  STI Classic Prime Quality Money Market Fund, and the STI Classic

Growth and Income Fund.  Prior to March 2011, Plaintiff Fuller was unaware,

*inter alia*, (i) that the 401(k) Plan had fiduciaries or the identity of those

fiduciaries, (ii) that Defendant fiduciaries met several times per year during the

Class Period to review the status of 401(k) Plan investment options, (iii) of the

6

facts relating to the processes Defendants employed or failed to employ when monitoring the performance of, or making decisions regarding whether to select, remove, or replace, 401(k) Plan investment options, (iv) that the fees charged by the Affiliated Funds were high compared to other investment options that could have been offered in the 401(k) Plan, (v) that during the Class Period the historical performance of the Affiliated Funds was poor compared to other investment options that could have been offered in the 401(k) Plan, (vi) that Defendant fiduciaries were aware of better performing lower cost alternatives to the Affiliated Funds but nevertheless failed to offer them instead of the Affiliated Funds, (vii) that the Affiliated Funds were SunTrust proprietary funds, (viii) that the investment manager of the Affiliated Funds was a SunTrust subsidiary, or (ix) that SunTrust stood to benefit financially if the Affiliated Funds, rather than non-proprietary funds, were offered in the 401(k) Plan.

**B.      Defendants**

12.      **Defendant SunTrust Banks, Inc. ("SunTrust").**  SunTrust is one of the nation's largest commercial banking organizations and provides a broad range of financial services to consumers and corporate customers.  Through its subsidiary SunTrust Bank, SunTrust provides deposit, credit, and trust and investment

services.  SunTrust primarily operates in Virginia, Florida, Georgia, Maryland, North Carolina, South Carolina, Tennessee, and the District of Columbia.  Its corporate headquarters are in Atlanta, Georgia.

13.    **Chairman of the Compensation Committee, Joseph L. Lanier, Jr. ("Lanier").**  Defendant Lanier has been a member of the SunTrust Board of Directors ("Board") since 1980. He served as Chairman of the Board's Compensation Committee ("Compensation Committee") since at least November 2001 through part of 2004.  As chairman of the Compensation Committee, Defendant Lanier was responsible for appointing, monitoring, and removing members of the Benefits Plan Committee.

14.    **Chairman of the Compensation Committee, Larry L. Prince ("Prince").**  Defendant Prince has been a member of the Board since 1996. He served as Chairman of the Compensation Committee from at least 2004 through part of 2008.  As Chairman of the Compensation Committee, Defendant Prince was responsible for appointing, monitoring, and removing members of the Benefits Plan Committee.

15.    **Chairman of the Compensation Committee, Alston D. Correll ("Correll").**  Defendant Correll is a member of the Board.  He has served as

Chairman of the Compensation Committee since on or about mid-2008.  In that capacity, Defendant Correll is responsible for appointing, monitoring, and removing members of the Benefits Plan Committee.

16.    **The SunTrust Benefits Plan Committee.**  The Benefits Plan Committee and its individual members (collectively referred to as the "**Committee Defendants**") serve as a named fiduciary and administrator of the 401(k) Plan. The Plan Committee also has fiduciary and administrative responsibility with respect to the SunTrust defined-benefit Pension Plan and welfare plans. Individuals who served on the Plan Committee during the Class Period include.

> a.  **Jorge Arrieta.**  Defendant Arrieta was a member of the Plan Committee from at least November 2002 through July 2004.
>
> b.  **Harold Bitler**.  Defendant Bitler was a member of the Plan Committee from at least February 2000 through June 2002.
>
> c.  **Mimi Breeden.**  Defendant Breeden is a member of the Plan Committee and has been since at least May 2006.  She is also a Corporate Executive Vice President and Director of Human Relations for the Company.

d. **Mark Chancy.**  Defendant Chancy is a member and chairman of the Plan Committee.  He has served as chairman from at least February 2005, and has served as a committee member since at least February 2002.  He also serves as SunTrust's Chief Financial Officer.

e. **David Dierker**.  Defendant Dierker is a member of the Plan Committee and has been since at least May 2005.  He is also a Senior Executive Vice President, and Chief Administrative Officer, for the Company.

f. **Ted Hoepner**.  Defendant Hoepner was a member of the Plan Committee and served as chairman from at least February 2000 through November 2004.

g. **Ken Houghton.**  Defendant Houghton was a member of the Plan Committee from at least February 2000 through February 2008.

h. **Thomas Kuntz**.  Defendant Kuntz is a member of the Plan Committee and has been since at least February 2005.  He is also a Corporate Executive Vice President for the Company.

i. **Donna Lange.**  Defendant Lange is a member of the Plan Committee and has been since at least February 2000.  She is also Senior Executive Vice President, Employee Benefits, for the Company.

j. **Jerome Lienhard.**  Defendant Lienhard is a member of the Plan Committee and has been since at least August 2006.  He is also Corporate Treasurer for the Company.

k. **Gregory Miller.**  Defendant Miller is a member of the Plan Committee and has been since at least November 2000.  He is also Senior Vice President for the Company.

l. **William O'Halloran.**  Defendant O'Halloran was a member of the Plan Committee from at least February 2000 through June 2002.

m. **Thomas Panther.**  Defendant Panther is a member of the Plan Committee and has been since at least February 2005.  He is also Chief Accounting Officer, Senior Vice President, and Controller of the Company.  Prior to becoming a member of the Plan Committee, Defendant Panther was employed by Trusco.

n. **William H. Rogers, Jr.**  Defendant Rogers is a member of the Plan Committee and has been since at least December 2001.  He is also President of the Company.

o. **Christopher Shults.**  Defendant Shults is a member of the Plan Committee and has been since at least February 2008.

p. **John Spiegel.**  Defendant Spiegel was a member of the Plan Committee from at least November 2000 through June 2004.

q. **Mary Steele.**  Defendant Steele was a member of the Plan Committee from at least February 2000 through August 2005.  She is also Senior Vice President and Human Resources Director for the Company.

17. **John and Jane Does 1-20.**  Plaintiff may not currently know the identity of all of the Plan's fiduciaries, in particular the identities of all the persons who served on the Plan Committee and all Chairs of the Compensation Committee during the Class Period.  Once the identities of those not currently named, if any, are ascertained, Plaintiff will seek leave to join them under their true names.

18. **Nonparty Trusco Capital Management, Inc. ("Trusco").**  Trusco is a SunTrust subsidiary and investment advisor registered with the U.S. Securities and Exchange Commission ("SEC").  During the Class Period, Trusco provided

investment advisory services to the Affiliated Funds and the separately managed accounts in the Pension Plan.  During most of the Class Period, Trusco also served as an investment advisor to the 401(k) Plan.  On or about March 2008, Trusco split into two entities:  Trusco Capital Management and RidgeWorth Capital Management.  On information and belief, Plaintiff alleges that RidgeWorth Capital Management took over Trusco's duties with respect to the 401(k) Plan.  For purposes of this Complaint, unless the context indicates otherwise, Plaintiffs will use the term "Trusco" to refer to the entity that engaged in both (i) the activities of Trusco Capital Management prior to the creation of RidgeWorth Capital Management and (ii) the activities of RidgeWorth Capital Management once it came into being.

19.   **Nonparty RidgeWorth Capital Management, Inc. ("RidgeWorth" (also "Trusco" — see discussion in the preceding paragraph)).**  RidgeWorth is a SunTrust subsidiary and an investment advisor registered with the SEC. RidgeWorth currently provides investment advisory services to the Affiliated Funds, except it ceased being the advisor for the Prime Quality Money Market Fund on or about the last half of 2010, when its money market business was sold to Federated Investors, Inc.  Trusco is RidgeWorth's predecessor in interest.

20.     **Nonparty Seix Investment Advisors.**  Seix Advisors is a Trusco subsidiary that Trusco acquired on or about April 13, 2004 that provides investment advisory services to one of the funds offered in the Plan, the Seix High Yield Bond Fund.

## IV.     FACTUAL BACKGROUND

## A. THE SUNTRUST BANKS, INC. 401(K) PLAN AND ITS FIDUCIARIES

21.     At all relevant times, the 401(k) Plan was an "employee pension benefit plan" within the meaning of ERISA, 29 U.S.C. §1002(2)(A), and was established to provide retirement income to SunTrust employees.  The 401(k) Plan is a defined contribution plan.

22.     SunTrust also sponsored its traditional defined benefit Pension Plan. A plan sponsor has an obligation to fund a defined benefit plan sufficiently to provide the promised pension benefits to participants, and to increase funding if the funding level appears insufficient.  Moreover, any surplus may revert to the sponsor if a defined benefit plan terminates.  29 U.S.C. §1344(d).  For this reason, good performance of investments in the SunTrust Pension Plan benefited SunTrust financially.  In contrast, participants bear the risk of losses in a defined contribution plan, such as a 401(k) Plan, and the plan sponsor ordinarily has no

obligation to remedy investment losses resulting from market declines in such plans.

23.     Effective January 1, 2008 the SunTrust Bank, Inc. Retirement Plan converted from a traditional defined benefit Pension Plan to a cash balance plan.

24.     Every employee benefit plan must provide for one or more named fiduciaries that jointly or severally possess the authority to control and manage the operation and administration of the plan.  ERISA, 29 U.S.C. §1102(a)(1).  Further, a person who functions as a fiduciary is a fiduciary, even if he or she is not named as such, so long as the person exercises any discretionary authority or control over the operation or administration of the plan or any authority or control over the disposition of plan assets.  ERISA, 29 U.S.C. §1001(21)(A).  Each of the Defendants was named as a fiduciary and/or functioned as one.  Named Plan fiduciaries have the powers ascribed to them in the Plan documents, and may delegate their duties to the extent permitted under ERISA, 29 U.S.C. §1102.

25.     SunTrust is a named fiduciary and the sponsor of the 401(k) Plan. SunTrust had, at all applicable times, effective control over the activities of its directors, officers and employees, including over their 401(k) Plan-related activities.  SunTrust, acting through its Board, had the authority and discretion to

15

appoint, monitor, and remove members of the Board's Compensation Committee, including the Chair.

26.     The Chair of the Compensation Committee, including, during their terms, Defendants Lanier, Prince, and Correll, is a named 401(k) Plan fiduciary and is responsible for appointing and monitoring members of the Plan Committee. The Chair of the Compensation Committee has the right to remove any member of the Plan Committee at any time.  The Chair appoints successors to fill any vacancy in the Plan Committee's membership.

27.     The Plan Committee is a named fiduciary and administrator of the 401(k) Plan.   The Plan Committee consists of not fewer than three individuals who are appointed by, monitored by, and serve at the pleasure of the Chair of the Compensation Committee.  The Plan Committee (and its individual members) has the authority, discretion, and responsibility to select, monitor, and remove or replace the 401(k) Plan's investment funds, including the Affiliated Funds.  Its specific responsibilities include, but are not limited to:

      a. Selecting and making decisions with respect to removing or replacing investment vehicles for the 401(k) Plan.

16

b.  Appointing members of the Plan Committee's Investment Sub-Committee.

c.  Periodically reviewing the performance of the 401(k) Plan's investment funds and approving investment fund changes.

28.    Trusco was a SunTrust subsidiary and the investment advisor to the Affiliated Funds.  Trusco received as revenue all the investment management fees generated by investment of assets in the Affiliated Funds.  Trusco also served as an investment advisor to the 401(k) Plan, attending Plan Committee meetings in which decisions were made regarding whether to offer or maintain in the Plan the Affiliated Funds it advised.  In mid-2006 it was proposed at a Plan Committee meeting that sub-committees of the Plan Committee be formed.  One such subcommittee was the Investment Sub-Committee, which was responsible for monitoring 401(k) Plan investments.  In documents submitted to the Plan Committee it was suggested that John Floyd, a Trusco employee, be a member of this subcommittee.  While Plaintiff lacks sufficient information to determine whether this proposal was put into effect, Plaintiff intends to name Trusco as a defendant fiduciary if subsequent discovery supports fiduciary status.

17

29.     During much of the Class Period, the 401(k) Plan offered between 9 and 17 investment vehicles for retirement assets held within the Plan.  (These numbers exclude the SunTrust Stock Fund, which invested primarily in SunTrust Stock and is not at issue in this Complaint because such a fund is proprietary by nature).  For a significant portion of the Class Period (fiscal years 2002 through 2004), the only investment funds offered were SunTrust proprietary funds.

30.     The mutual fund investment vehicles offered in the 401(k) Plan are not the mutual funds themselves, which trade in "shares", but corresponding unitized funds that trade in units.  On information and belief, these units include as the primary component of their value the corresponding mutual fund shares.  On information and belief, the performance and expenses of the unitized funds differs from that of the mutual funds themselves.  For this reason, performance and expense information regarding the mutual funds, such as is available through prospectuses filed with the U.S. Securities and Exchange Commission, does not accurately reflect the performance and expenses of the unitized funds in the 401(k) Plan.  On information and belief, performance and expense information regarding the unitized funds actually offered in the 401(k) Plan is not available to 401(k) Plan participants.

31.     The 401(k) Plan's Summary Plan Description, which is participants' principal source of information regarding the Plan, did not disclose that the Affiliated Funds were SunTrust proprietary funds, that the investment advisor was a SunTrust subsidiary, nor that that SunTrust subsidiary — and thereby SunTrust — benefited financially from investment of Plan assets in the Affiliated Funds.  It also did not disclose the amount of the fees charged by the Affiliated Funds.

32.     An account in the 401(k) Plan is maintained for each participant.

33.     A participant in the 401(k) Plan may elect to contribute between 1% and 20% of eligible compensation to her account.

34.     Prior to January 1, 2008 the Company made a matching contribution in an amount equal to 100% of the first 3% and 50% of the next 2% of eligible compensation, for a maximum match of 4% of the participant's compensation.

35.     Starting January 1, 2008, the Company changed its match formula to 100% on the first 5% of a participant's before-tax contribution.

36.     All Company contributions are initially invested in SunTrust Stock via the SunTrust Stock Fund, but a participant could transfer all of her company match to other investment vehicles effective January 1, 2007.

19

37.    A participant's account is credited with the amount the participant contributes, plus the Company's matching contributions and any investment earnings made thereon.

38.    On October 1, 2004, SunTrust acquired National Commerce Financial Corporation ("NCF").

39.    On November 15, 2004 the Plan Committee approved a plan developed by Trusco to map, i.e. transfer, over $120 million in assets invested in investment funds in the NCF 401(k) Plan into investment funds in the SunTrust 401(k) Plan.

40.    This transfer took place effective July 1, 2005.

**B.    DEFENDANTS' DUTIES UNDER ERISA**

41.    Under ERISA, fiduciaries that exercise discretionary authority or control over the selection of plan investments and the selection of plan service providers must act prudently and solely in the interest of plan participants when making decisions about the plan's investment lineup and retaining service providers.  Thus, "the duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary

duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996).  As the

U.S. Department of Labor ("DOL") explains,

> [T]o act prudently, a plan fiduciary must consider, among other
> factors, the availability, riskiness, and potential return of alternative
> investments for his or her plan. [Where an investment], if
> implemented, causes the Plan to forego other investment
> opportunities, such investments would not be prudent if they provided
> a plan with less return, in comparison to risk, than comparable
> investments available to the plan, or if they involved a greater risk to
> the security of plan assets than other investments offering a similar
> return.

DoL Ad. Op. No. 88-16A.

42.     Fiduciaries must also ensure that the services provided to the plan are

necessary and that the fees are reasonable:

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries
> must act prudently and solely in the interest of the Plan participants
> and beneficiaries both in deciding … which investment options to
> utilize or make available to Plan participants or beneficiaries. In this
> regard, the responsible Plan fiduciaries must assure that the
> compensation paid directly or indirectly by the Plan to [service
> providers] is reasonable … .

DoL Ad. Op. 97-15A; DoL Ad. Op. 97-16A.

43.     The duty of loyalty requires a fiduciary to act solely in the interest of

plan participants and beneficiaries.  As the DOL has repeatedly warned:

> We have construed the requirements that a fiduciary act solely in the
> interest of, and for the exclusive purpose of providing benefits to,
> participants and beneficiaries as prohibiting a fiduciary from

21

subordinating the interests of participants and beneficiaries in their retirement income to unrelated objectives. Thus, in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider only factors relating to the interests of plan participants and beneficiaries in their retirement income. **A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan.**

DoL Ad. Op. No. 98-04A; DoL Ad. Op. No. 88-16A (emphasis added).

44.     The DOL counsels that fiduciaries are responsible for ensuring that a plan pays reasonable fees and expenses and that fiduciaries need to carefully evaluate differences in fees and services between prospective service providers:

> While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.
>
> In comparing estimates from prospective service providers, ask which services are covered for the estimated fees and which are not. Some providers offer a number of services for one fee, sometimes referred to as a "bundled" services arrangement. Others charge separately for individual services. Compare all services to be provided with the total cost for each provider. Consider whether the estimate includes services you did not specify or want. Remember, all services have costs.
>
> Some service providers may receive additional fees from investment vehicles, such as mutual funds, that may be offered under an employer's plan. For example, mutual funds often charge fees to pay brokers and other salespersons for promoting the fund and providing

other services. There also may be sales and other related charges for investments offered by a service provider. Employers should ask prospective providers for a detailed explanation of all fees associated with their investment options.

*Meeting Your Fiduciary Responsibilities* (May 2004) (available at

http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html).

In a separate publication, the DOL writes:

> Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

* * *

> By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers should pay attention to these fees. They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly from investment returns. Net total return is the return after these fees have been deducted. For this reason, these fees, which are not specifically identified on statements of investments, may not be immediately apparent to employers.

*Understanding Retirement Plan Fees and Expenses* (May 2004) (available at

http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.)

45.     The general duties of loyalty and prudence imposed by ERISA, 29

U.S.C. §1104 are supplemented by a detailed list of transactions that are expressly

prohibited by ERISA, 29 U.S.C. §1106, and are considered "*per se*" violations

because they entail a high potential for abuse.

46.     These provisions prohibit fiduciaries, such as the Defendants here,

from causing plans to engage in transactions with the plan sponsor or its

subsidiaries and affiliates, here the Affiliated Funds, including causing a plan to

invest assets in investment management and other products offered by a party in

interest or plan fiduciary and the payment of investment management and other

fees in connection with such investments.

**C.     DEFENDANTS BREACHED THEIR DUTIES TO THE PLAN
AND CAUSED THE PLAN TO ENGAGE IN PROHIBITED
TRANSACTIONS BY CAUSING THE PLAN TO INVEST IN
THE AFFILIATED FUNDS.**

47.     Throughout the Class Period, Defendants caused the 401(k) Plan to

invest in the Affiliated Funds when Defendants knew or should have known that

less costly, better-performing, comparable investment vehicles were available as

separately managed accounts, collective trusts, and/or from unaffiliated financial

24

services companies.  Committee Defendants knew or should have known, by virtue of their senior positions at a large financial services company, that such superior investment funds were available.

48.     Committee Defendants are responsible for making decisions regarding whether to select, remove, or replace investment funds, which decisions and selections must be made prudently and solely in the interest of plan participants. Over many years, Committee Defendants used their discretion to direct hundreds of millions dollars of 401(k) Plan assets into the Affiliated Funds.

49.     The Plan Committee met four or more times per year, and met 43 times during a portion of the Class Period, between April 25, 2002 and March 25, 2008.

50.     Periodically, at Plan Committee meetings, the performance of 401(k) Plan investment funds was reviewed, and the reasonableness of the expenses charged by these funds was also reviewed, though less frequently.  Despite the high fees and poor performance of the Affiliated Funds, Committee Defendants failed to remove or replace any of the Affiliated Funds as Plan investment options at any of their meetings during the Class Period.

25

51.     Proprietary SunTrust mutual funds were first added as investment options in the 401(k) Plan effective July 1, 1997.  Prior to that, on information and belief, lower cost collective trusts and/or separate accounts were offered as investment options.  Effective dates for the Committee Defendants' selection of the Affiliated Funds as investment options in the 401(k) Plan are as follows.  Effective July 1, 1997:  the STI Classic Capital Appreciation Fund (then known as the Capital Growth Fund), the STI Classic Investment Grade Bond Fund, the STI Classic Short-Term Bond Fund, and the STI Classic Prime Quality Money Market Fund.  Effective 1999:  the STI Classic Small Cap Growth Fund and the STI Classic Growth and Income Fund.   Effective 2002:  SunTrust Mid-Cap Equity Fund.  Effective 2005:  STI Classic International Equity Index Fund.

52.     It was not until 2005, sixteen years after the Plan was created (on January 1, 1989), that any non-proprietary funds were added as investment options.

53.     During the Class Period, the number of investment funds offered in the 401(k) Plan ranged from 9 to approximately 18.  (These figures exclude the SunTrust Company Stock Fund, and the latter figure treats as a single fund various target date retirement funds that differed only in the target retirement date for which they were purportedly designed).

54.     On information and belief, when Committee Defendants initially selected the Affiliated Funds, they were not selected via a prudent process.  There was no or insufficient consideration of alternatives or review of the performance and reasonableness of the fees of the Affiliated Funds.  Because of this, the fact that the Affiliated Funds were currently in the Plan should have been given no weight in deciding whether to remove or replace them.

55.     All Committee Defendants knew or should have known the Affiliated Funds were not prudently selected.

56.     Plan participants, including the named Plaintiff herein, do not have access to minutes or other information regarding the proceedings of the Plan Committee absent special circumstances.  Plaintiff Fuller had no access to the minutes or other such information prior to March 2011.  This information was disclosed to her counsel by SunTrust in the course of the pursuit of an administrative claim, discussed further below.  However, Plaintiff Fuller was not represented by her current counsel prior to March 2011.

57.     The Affiliated Funds charged the 401(k) Plan's participants and beneficiaries excessive fees compared to separately managed accounts and unaffiliated mutual funds.  Furthermore, based on the fact that the 401(k) Plan

27

controlled over $2 billion in assets the Plan Committee could have and should have leveraged the 401(k) Plan's size to offer less costly investment vehicles such as separately managed accounts and/or collective trusts.

58.     SunTrust subsidiaries and affiliates received the fees from the funds they managed for the 401(k) Plan.

59.     Defendants' improper favoritism with respect to employing the Affiliated Funds as investment vehicles in the 401(k) Plan is demonstrated, *inter alia*, by the following facts:

a.  An internal SunTrust document dated February 27, 2006 that was circulated at a Plan Committee meeting discussed investment options for the Pension Plan. The document admitted, with respect to proprietary fund investments, that better performing non-proprietary funds were readily available, that favoring non-proprietary funds generated significant income for SunTrust, and that favoring proprietary funds because of the financial benefit to the Company was a violation of fiduciary duties, *but nevertheless suggested that the benefit to SunTrust was a factor that should be considered.* The document stated that the "Financial analysis of decision [of whether to

go with proprietary or non-proprietary funds] should compare foregone revenue to reduced pension expense incurred by Company as a result of obtaining higher investment returns." In terms of negatives of going with non-proprietary funds, the document asserted that "Shift of assets to outside funds represents tangible loss of revenue to Company" and that shifting to outside funds would send a signal of " 'loss of confidence' in Trusco's ability to manage assets." Factors favoring a shift to outside funds would be "Favorable perception of fiduciary monitoring and oversight process working as it should."

b. Though Committee Defendants removed unaffiliated funds as investment vehicles for the 401(k) Plan on performance grounds, no Affiliated Fund was ever removed as an investment vehicle for the 401(k) Plan despite the fact that Committee Defendants themselves repeatedly recognized the existence of serious performance issues with several of the Affiliated Funds during the Class Period;

c. Committee Defendants also had fiduciary responsibility with respect to the Pension Plan, and doubtless knew that the Pension Plan utilized

29

for most of its investments separately managed accounts managed by Trusco and Trusco affiliates. (As of December 31, 2007, over 65% of Pension Plan assets were invested in separately managed accounts rather than mutual funds). On information and belief, these accounts assessed fees more than 50% less than the Affiliated Funds. Nevertheless, the Plan Committee did not offer, or consider offering, such separately managed accounts as investment vehicles in the 401(k) Plan.

d. Committee Defendants were repeatedly warned during the Class Period by an investment advisor, Towers Perrin, that one of the Affiliated Funds, STI Classic Capital Appreciation, was dramatically underperforming its benchmark, but nevertheless did not remove it as an investment vehicle;

e. Prior to on or about 2006, Committee Defendants did not follow any systematic process for monitoring the performance or prudence of 401(k) Plan investment options. Their monitoring of these options was haphazard and irregular.

f.  Though Committee Defendants eventually adopted a systematic monitoring process after suits were filed against other banks for improperly favoring their proprietary funds, this process was critically flawed for many reasons, including:  (i) the ultimate decision whether to remove a fund is completely left to the discretion of Committee Defendants, it is not dictated by objective criteria of underperformance; (ii) internal SunTrust and Trusco evaluations of fund performance are at the heart of the monitoring process; thus, the monitoring process at its core depends upon the opinions of conflicted fiduciaries and advisors.

g.  The flaws in Committee Defendants' systematic monitoring process were dramatically highlighted when Committee Defendants focused their attention on two underperforming funds in 2007 and 2008.  In 2007, Committee Defendants considered whether to remove or replace an underperforming proprietary fund, the STI Classic Capital Appreciation Fund, for which objective criteria indicated the highest level of alert under their process.[4]  After being informed by Trusco

---

[4] There is some ambiguity in the Plan Committee minutes regarding the identity of the fund being discussed.  Sometimes it also appears to be referred to as the "Trusco Core Equity Fund."

that various changes had been made to fund management, Committee

Defendants decided that the history of underperformance could be

disregarded, and that the Fund would be retained.  They indicated that

because of the changes, past performance should no longer be

considered relevant to the fund.  Committee Defendants ignored the

fact that this decision, regardless of its merits, meant that they were

approving the retention of a fund in the 401(k) Plan that essentially

had no track record.  The Committee Defendants' monitoring process

with respect to this fund was a sham.  They ignored objective criteria

and instead contrived a flimsy rationale to achieve their end of

keeping a proprietary fund in the 401(k) Plan.  This process was in

sharp contrast to consideration of an underperforming non-proprietary

mutual fund in 2008, a fund managed by Lazard Asset Management.

This fund was almost immediately removed from the 401(k) Plan with

little discussion by Committee Defendants.

h.  Committee Defendants did not adopt an Investment Policy Statement

("IPS") with respect to the 401(k) Plan until on or about 2008, after

several lawsuits had been filed regarding proprietary funds and use of

investment vehicles with excessive fees in 401(k) plans.  Adopting such an IPS earlier could have forced Committee Defendants to evaluate objectively the propriety of continuing to offer the Affiliated Funds.  However, even the IPS that was eventually adopted incorporates lax standards.  For example, it permits selection and retention of investment vehicles charging a 2% expense ratio or greater — which is exorbitant by any measure.

i.  The Committee minutes reflect that Committee Defendants accepted as a valid reason for favoring proprietary funds the fact that providing 401(k) Plan assets for investment in such funds would benefit Trusco because it would help to provide sufficient "seed money" to enable Trusco to start its own funds in certain asset class categories.

j.  Committee Defendants employed a conflicted advisor, Trusco, to advise them regarding investment offerings in the 401(k) Plan. Furthermore, Committee Defendants routinely permitted Trusco to participate in Plan Committee meetings and decision-making that concerned investment issues.  The Plan Committee almost always adopted Trusco's position with respect to selection and retention of

investment vehicles for the 401(k) Plan, and, provided Trusco offered

a fund in the relevant asset class or fund category, Trusco almost

always advocated selection and retention of the funds for which it

served as investment advisor — the Affiliated Funds.

k. When a question arose regarding the legal propriety of offering

primarily proprietary funds in the 401(k) Plan, Committee Defendants

relied on Trusco, a conflicted advisor, to provide legal advice on this

issue.

l. In May 2006 concerns were raised in a Plan Committee meeting

regarding the poor performance of the STI Classic Prime Quality

Money Market Fund compared to its benchmark.  Instead of

considering and evaluating alternatives to the fund, the Plan

Committee decided to compare it to a different benchmark.  There is a

well-known, but improper practice in the mutual fund industry of

"benchmark shifting."  When a fund looks bad in comparison to its

chosen benchmark, the company simply selects a different benchmark

to make the fund appear better than it is.

m. Committee Defendants selected the STI Classic International Equity Index Fund for the Plan, one of the Affiliated Funds, on or about October 4, 2004.  In selecting this fund Committee Defendants considered no alternatives at all to this proprietary fund.  A handout to the Plan Committee minutes of that date showing Trusco's analysis explicitly notes in the "Other Funds Considered" column "N/A", meaning "not applicable".

60.     The high fees charged by the Affiliated Funds are illustrated by the following:

a. During a portion of the Class Period the STI Classic International Equity Index Fund charged an expense ratio of 1.12%.  A similar Vanguard offering (VIDMX) has an expense ratio of 0.13% — approximately one-tenth as much.

b. The STI Classic Capital Appreciation Fund had an expense ratio of 1.24% during a portion of the Class Period.  A similar Vanguard index fund (VINIX) has an expense ratio of 0.05% — less than one-twentieth as much.  In 2004 alone, this difference in expense ratio for this fund meant participants paid over $1.6 million more in expenses

35

(money that enriched SunTrust affiliates) than they would have with alternative investment vehicles.  A comparable Vanguard actively managed fund (VPMCX) has an expense ratio of 0.45%.  Moreover, on information and belief, a similar separately managed account managed by Trusco and approved by the Plan Committee for use in the Pension Plan has an expense ratio of 0.25% — one-fifth as much as the STI fund.

c.  The STI Classic Prime Quality Money Market Fund, which was offered in the 401(k) Plan throughout the Class Period, had an expense ratio of 0.74% to 0.52% during the Class Period.  The same company itself offers a much cheaper vehicle which was not used in the 401(k) Plan — the STI Classic Institutional Cash Management Money Market Fund, which had an expense ratio of 0.17%.  Vanguard offers a still cheaper money market offering (VMRXX) which had an expense ratio of 0.13%.

d.  A comparison of the expense ratios of the remaining Affiliated Funds mutual funds during the Class Period with comparable Vanguard actively managed funds is as follows:  STI Classic Small Cap Growth

Fund ranged from 1.19% to 1.24% (comparable Vanguard fund VEXPX is 0.49%); STI Classic Growth and Income Fund ranged from 0.83% to 0.99% (comparable Vanguard fund VDIGX is 0.38%); STI Classic Investment Grade Bond Fund ranged from 0.83% to 0.57% (comparable Vanguard fund VFICX is 0.24%); STI Classic Short-Term Bond Fund ranged from 0.75% to 0.46% (comparable Vanguard fund VFSTX is 0.24%); SunTrust Mid-Cap Equity Fund ranged from 1.25% to 1.02% (comparable Vanguard fund VMGRX is 0.51%).

61. Examples of poor performance include:

a. Plaintiff has detailed performance information regarding seven of the eight Affiliated Funds (Plaintiff lacks complete information for the Prime Quality Money Market Fund).  **If the Plan had offered comparable Vanguard funds instead of these seven Affiliated Funds, participants would have earned approximately $110 million more for their retirement during the Class Period.**

b. Approximate amounts that Plan participants would have earned in comparable Vanguard actively managed or index funds rather than

one of the seven Affiliated Funds for which Plaintiff has detailed performance information are as follows:  STI Classic Capital Appreciation Fund (comparable Vanguard fund VPMCX would have earned over $69 million more); STI International Equity Index Fund (comparable Vanguard index fund VGTSX would have earned over $10.5 million more); STI Classic Growth and Income Fund (comparable Vanguard fund VDIGX would have earned over $11 million more); STI Classic Investment Grade Bond Fund (comparable Vanguard fund VFICX would have earned over $10 million more); STI Classic Short-Term Bond Fund (comparable Vanguard fund VFSTX would have earned over $2.5 million more); SunTrust Mid-Cap Equity Fund (comparable Vanguard fund VMGRX would have earned over $6.5 million more); STI Classic Small Cap Growth Fund (comparable Vanguard Index fund VISGX would have earned over $27 million more).

c.  Based on incomplete publicly available performance data, Plaintiff estimates that a comparable Vanguard money market fund (VPMXX)

would have earned at least $2 million more than the STI Prime

Quality Money Market Fund offered in the Plan.[5]

62.     Examples of dire warnings from various sources regarding the

performance of the Affiliated Funds that were presented to Committee Defendants

but not acted upon include:

 a.  Committee Defendants were advised as follows on or about March 31,

 2006 regarding the STI Classic Capital Appreciation Fund:  "On an

 absolute basis over the last five years, the fund had a significantly

 lower return with a slightly lower level of risk than the index and

 median large cap core manager".  On or about June 30, 2006 the Plan

 Committee was advised regarding the same fund that "selection

 returns ranked at the bottom of the universe of large-cap core

 managers over short and long term.  Poor stock selection decisions

 caused the fund's two-year rolling information ratio to fall below the

 bottom five percent relative to other large-cap core managers".

---

[5] The funds identified as being comparable in this complaint are examples of comparable funds, but Plaintiff is not asserting that they are the only comparable Vanguard funds or necessarily the most comparable funds.  Thus, Plaintiff may determine that other funds, or fund share classes, are appropriate benchmark funds for purposes of different or future analyses.

b. On or about September 30, 2005 the Plan Committee was advised : "8 of 10 of the additional funds in the 401(k) Plan [additional to what was offered in the Pension Plan] with at least three years of historical performance underperformed their respective benchmarks for the three-year period [the only funds that outperformed their benchmarks were non-proprietary funds]".

63.    The effect of excess fees on retirement savings is quite significant. Higher fees not only reduce plan assets but hinder the growth of savings through the opportunity cost of having less to re-invest.  Under typical assumptions, the effect of an additional 1% in fees can reduce the effective life of a retiree's savings balance by ten years.

64.    Figure 1 below illustrates the plan balance of a typical retiree through the working/savings and retirement/spending phases of the portfolio.

Figure 1



65.     Figure 1 considers the portfolio trajectory for a typical employee. In this example, an individual starts saving at age 25 and continues until age 65. At that time, savings are withdrawn until the balance reaches $0.  As illustrated, the effective life of the assets moves from age 88 to age 78 if fees are increased by 1%.[6]

---

[6] A note about other assumptions in this analysis: The participant earns $40,000 per year and saves 5% annually towards retirement. Inflation is assumed to be 2.5%, which increases salary and annual contributions accordingly. Investment returns are assumed to be 9%, and at retirement, the participant withdraws annually 70% of her projected salary on an inflation adjusted basis.

66.    ERISA prohibits a plan from investing in the plan sponsor's investment products or paying the plan sponsor fees for services provided to the plan.  The 401(k) Plan's investments in the Affiliated Funds were prohibited transactions under ERISA.

67.    SunTrust, as Plan sponsor, was a party in interest to the 401(k) Plan and a fiduciary.  Though SunTrust knew or should have known that the Committee Defendants were breaching their duties under ERISA and engaging in prohibited transactions by causing the 401(k) Plan to do business with SunTrust subsidiaries and affiliates, SunTrust welcomed and participated in the Committee Defendants' violations of ERISA.   SunTrust must disgorge all monies received from the 401(k) Plan and profits SunTrust earned thereon.

68.    Trusco, as fiduciary and investment advisor to the 401(k) Plan, was obviously conflicted when it came to recommending or evaluating any of the Affiliated Funds as 401(k) Plan investment vehicles since it served as the investment advisor to all of those funds.  Nevertheless, it freely participated in Plan Committee meetings, was present when the Plan Committee voted on whether to include and retain its funds in the 401(k) Plan, and repeatedly advocated that the Plan Committee include and/or retain the Affiliated Funds as 401(k) Plan

investment vehicles.  When the Plan Committee determined to add investment options, Plan Committee members worked directly with Trusco to develop lists of candidate funds.

69.    Defendants Lanier, Prince, and Corell, as Chairmen of the SunTrust Board of Directors' Compensation Committee, had the authority and responsibility to appoint, monitor, and remove members of the Plan Committee.  They knew or should have known that Committee Defendants were breaching their fiduciary duties and engaging in prohibited transactions through the conduct discussed herein, but failed to replace or remove any of the individual Plan Committee members engaged in this misconduct.

70.    Committee Defendants were aware that employees were dissatisfied with the heavy concentration of proprietary funds in the 401(k) Plan. Nevertheless, some committee members openly expressed a belief that only proprietary funds should be offered in the 401(k) Plan.

71.    Even if Committee Defendants can prove the transactions are exempt from ERISA, 29 U.S.C. §1106, ERISA does not permit such arrangements when they are not solely in the interest of the plan or when a prudent, unconflicted fiduciary would choose differently.

43

## V.   CLASS ACTION ALLEGATIONS.

72.   Plaintiff brings this action on behalf of:

> All participants and beneficiaries in the SunTrust Banks,
> Inc. 401(k) Plan, excluding the Defendants, who had a
> balance through their Plan accounts in any of the Affiliated
> Funds at any time from April 25, 2002 to December 31,
> 2010.
>
> (The Affiliated Funds are the following eight funds:  STI
> Classic Capital Appreciation Fund (later renamed the "Large
> Cap Growth Fund"), STI Classic Small Cap Growth Fund,
> STI Classic Growth and Income Fund (later renamed the
> "Large Cap Relative Value Fund" and then renamed the
> "Large-Cap Core Equity Fund"), the STI Classic Mid-Cap
> Equity Fund  (later renamed "Mid-Cap Core Equity"), the
> STI Classic Investment Grade Bond Fund, the STI Classic
> Short-Term Bond Fund, the STI Classic Prime Quality
> Money Market Fund, and the STI Classic International
> Equity Index Fund).

73.   Class certification is appropriate under Fed. R. Civ. P. 23(a) and

(b)(1), (b)(2), and/or (b)(3).

74.   The class satisfies the numerosity requirement because it is composed

of thousands of persons, in numerous locations.  The 401(k) Plan has more than

34,000 participants.  The number of class members is so large that joinder of all its

members is impracticable.

75.   Common questions of law and fact include:

44

A.     Whether Defendants were fiduciaries responsible for selecting, evaluating, and monitoring 401(k) Plan investments;

B.     Whether Defendants caused the 401(k) Plan to pay fees to SunTrust subsidiaries and affiliates, and whether such fees were reasonable;

C.     Whether Defendants breached their fiduciary duties to the 401(k) Plan and engaged in prohibited transactions by causing the Plan to invest its assets in mutual funds and other investment products offered or managed by SunTrust subsidiaries and affiliates, and whether such fees were reasonable;

D.     Whether Defendants are liable to disgorge fees collected from the 401(k) Plan and profits earned thereon; and

E.     Whether the 401(k) Plan and its participants suffered losses as a result of the Defendants' fiduciary breaches and prohibited transactions.

76.    Plaintiff's claims are typical of the claims of the Class.  She has no interests that are antagonistic to the claims of the Class.  She understands that this matter cannot be settled without the Court's approval.

77.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous representation of the Class.  Plaintiff's

45

counsel, McTigue & Veis LLP, are experienced in class action and ERISA litigation.  Counsel have agreed to advance the costs of the litigation contingent upon the outcome.  Counsel are aware that no fee can be awarded without the Court's approval.

78.    A class action is the superior method for the fair and efficient adjudication of this controversy.  Joinder of all members of the class is impracticable.  The losses suffered by some of the individual members of the class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights. Moreover, Defendants, as 401(k) Plan fiduciaries, were obligated to treat all class members similarly, i.e. as Plan participants governed by written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries.  Individual proceedings, therefore, would pose the risk of inconsistent adjudications.  Plaintiff is unaware of any difficulty in the management of this action as a class action.

79.    This Class may be certified under Rule 23(b).

A.    23(b)(1).  As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action.  Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying

46

adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants, or (B) adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.     23(b)(2).  This action is suitable as a class action under 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class.

C.     23(b)(3).  This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter.

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TOLLING OF THE STATUTE OF LIMITATIONS

80.     In this circuit, exhaustion of administrative remedies is required prior to bringing an ERISA fiduciary breach claim. *Lanfear v. Home Depot*, 536 F.3d 1217 (11th Cir. 2008). This requirement has been satisfied.

81.     On April 24, 2008 a class claim was submitted on behalf of the Plan, by class member Mary E. Lee, to the 401(k) Plan Administrator that includes the fiduciary breach and prohibited transaction claims brought in this Complaint, and which was brought on behalf of the same Plan. The inception date for the Class Period in the class claim was April 25, 2002.

82.     The Defendant Plan Committee delegated to a subcommittee of its members the authority to rule on the claim. The claim was denied by the subcommittee via a letter dated August 29, 2008 and signed by Defendant Mimi Breeden.

83.     On November 26, 2008 an administrative appeal of the denial of that claim was initiated. The Defendant Plan Committee delegated to one of its members, Defendant Thomas Panther, the authority to rule on the appeal. By letter dated March 26, 2009, that appeal was denied by a subcommittee formed of

members of the Plan Committee, and Plaintiff was informed that the 401(k) Plan had no additional voluntary appeal procedures.

84.    In denying the class claim, 401(k) Plan fiduciaries, Defendants in this action, labored under a direct conflict of interest since they were some of the very entities and persons against whom the claim was brought.

85.    On March 12, 2011, Mary E. Lee assigned to named Plaintiff Barbara Fuller all rights and interests Mary Lee had in her class claim, including all rights to further litigate that claim.  Mary Lee is unable to continue to represent the class due to personal reasons.[7]

---

[7] On information and belief, prior to March 11, 2008, Mary Lee was unaware, *inter alia*, (i) that the 401(k) Plan had fiduciaries or the identity of those fiduciaries, (ii) that Defendant fiduciaries met several times per year during the Class Period to review the status of 401(k) Plan investment options, (iii) of the facts relating to the processes Defendants employed or failed to employ when monitoring the performance of, or making decisions regarding whether to select, remove, or replace, 401(k) Plan investment options, (iv) that the fees charged by the Affiliated Funds were high compared to other investment options that could have been offered in the 401(k) Plan, (v) that during the Class Period the historical performance of the Affiliated Funds was poor compared to other investment options that could have been offered in the 401(k) Plan, (vi) that Defendant fiduciaries were aware of better performing lower cost alternatives to the Affiliated Funds but nevertheless failed to offer them instead of the Affiliated Funds, (vii) that the Affiliated Funds were SunTrust proprietary funds, (viii) that the investment manager of the Affiliated Funds was a SunTrust subsidiary, or (ix) that SunTrust stood to benefit financially if the Affiliated Funds, rather than non-proprietary funds, were offered in the 401(k) Plan.

86.     Since filing of this complaint was delayed while administrative

remedies were being exhausted on behalf of the class, Plaintiff, and the 401(k) Plan

and the class she seeks to represent are entitled to a tolling of the statute of

limitations during the time the administrative class claim, including the appeal, was

pending.[8]

## VII.    CLAIMS FOR RELIEF

### COUNT I

**Engaging in Prohibited Transactions by Causing the 401(k) Plan to Invest in
SunTrust-Affiliated Investment Products
(Violation of ERISA, 29 U.S.C. §1106 by Committee Defendants)**

87.     All previous averments are incorporated herein.

88.     At all relevant times, the Committee Defendants acted as fiduciaries

within the meaning of ERISA, 29 U.S.C.§1002(21)(A), by exercising authority and

control with respect to the management of the 401(k) Plan and its assets.

89.     The Committee Defendants, by their actions and omissions,

throughout the Class Period,  in causing the 401(k) Plan to be invested in the

---

[8] Some of the attorneys who represented the original claimant, Mary E. Lee, in the
prosecution of her administrative class claim brought on behalf of the Plan also
represent Barbara J. Fuller, the named Plaintiff in this class action brought on
behalf of the Plan.  Mary E. Lee had no contact with counsel regarding the claims
asserted in her administrative claim, and was not represented by them, prior to
March 11, 2008.

Affiliated Funds, and in causing the 401(k) Plan to pay, directly or indirectly, investment management and other fees in connection therewith, caused the Plan to engage in transactions that Defendants knew or should have known constituted sales or exchanges of property between the Plan and parties in interest, the furnishing of services by parties in interest to the Plan, and transactions with fiduciaries in violation of 29 U.S.C. §§1106(a)(1)(A), (C), and 1106(b).

90.    The Committee Defendants caused these transactions to occur by failing to remove or replace the Affiliated Funds as Plan investment vehicles at each of the Committee meetings that occurred periodically during each year of the Class Period.  By failing to remove the Affiliated Funds at each of these meetings, the Committee Defendants were a proximate cause of the investment, subsequent to each of these meetings, of millions of additional Plan dollars in the Affiliated Funds when participants' periodic contributions were invested in 401(k) Plan investment options.

91.    Committee Defendants also caused prohibited transactions to occur by initially selecting the STI Classic International Equity Index Fund for the Plan and opening it for Plan investments effective 2005.

92.     Committee Defendants also caused prohibited transactions to occur by approving the mapping or transfer of millions of dollars in the NCF 401(k) Plan into the Affiliated Funds when the NCF and SunTrust 401(k) plans merged in 2005.

93.     As a direct and proximate result of these prohibited transaction violations, the Plans, directly or indirectly, paid millions of dollars in investment management and other fees that were prohibited by ERISA and suffered millions of dollars in losses annually.

## COUNT II

**Breach of Duties of Loyalty and Prudence by Failing to Remove or Replace the Affiliated Funds as 401(k) Plan Investment Vehicles during the Class Period, which Caused Losses to the 401(k) Plan**

**(Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants)**

94.     All previous averments are incorporated herein.

95.     At all relevant times, the Committee Defendants acted as fiduciaries within the meaning of ERISA, 29 U.S.C. §1002(21)(A), by exercising authority and control with respect to the management of the Plan and its assets.  Committee Defendants had the responsibility for making decisions with respect to 401(k) Plan investment options under the Plan Document.

96.     Committee Defendants, by their actions and omissions in repeatedly failing to remove or replace the Affiliated Funds, which offered poor performance and high fees, as investment options in the Plan during the Class Period breached their duties of prudence and loyalty under ERISA, 29 U.S.C. §§1104(a)(1)(A), (B). The fact that the Plan's investments in fee-generating managed funds were concentrated in funds managed by SunTrust subsidiaries and affiliates reflects a failure to consider and obtain less expensive and better performing alternative, unaffiliated funds and services at the expense and to the detriment of the Plan and to the benefit of SunTrust subsidiaries and affiliates.

97.     Committee Defendants also knew or should have known that the Affiliated Funds had not been prudently selected to begin with.

98.     Committee Defendants committed these breaches during each of the Committee meetings that occurred periodically during each year of the Class Period.  At each of these meetings, the Committee Defendants had cause to remove the Affiliated Funds based on their poor performance and high fees, but failed to do so.

99.     As a direct and proximate result of these breaches of duty, the Plan, and indirectly Plaintiff and the Plan's other participants, realized losses.

100.   Pursuant to ERISA, 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1109(a), the Committee Defendants are liable to restore all losses suffered by the Plan caused by the Committee Defendants' breaches of fiduciary duty.

## COUNT III

**Breach of Duties of Loyalty and Prudence by Selecting the STI Classic International Equity Index Fund as an Investment Fund for the 401(k) Plan (Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants)**

101.   All previous averments are incorporated herein.

102.   The STI Classic International Equity Index Fund ("International Index Fund"), a SunTrust proprietary fund managed by Trusco, was added as an investment option in the 401(k) Plan effective 2005.

103.   The Committee Defendants were required to prudently and loyally select funds for the 401(k) Plan.

104.   On or about October 4, 2004 Committee Defendants selected the International Index Fund as one of the 401(k) Plan's investment funds.  No alternatives to the International Index Fund were considered prior to selecting this fund for the 401(k) Plan.

105.   By their actions and omissions in causing the International Index Fund to be added as an option in the 401(k) Plan, Committee Defendants breached their duties of prudence and loyalty.

106.   The Committee Defendants breached their fiduciary duties with respect to selection of this fund because they gave no or inadequate consideration as to whether it was a prudent or appropriate choice for the 401(k) Plan, and selected the fund because of its affiliation with SunTrust and selecting it would bring millions of dollars in additional revenue to SunTrust affiliates.

107.   The International Index Fund offered poor performance and high fees.

108.   Committee Defendants' breaches in the selection of the International Index Fund caused millions of dollars in losses to the 401(k) Plan.

## COUNT IV

**Violation of ERISA by Knowingly Participating in Breaches of Fiduciary Duty and Prohibited Transactions (Relief sought pursuant to ERISA, 29 U.S.C. §1132(a)(3) against SunTrust)**

109.   All previous averments are incorporated herein.

110.   At all relevant times, SunTrust was a party in interest and named fiduciary to the 401(k) Plan.

111.   SunTrust, by its actions in participating in and abetting fiduciary breaches and prohibited transactions, caused the 401(k) Plan to invest in the

Affiliated Funds and purchase products and services from SunTrust subsidiaries and affiliates, and to pay investment management and other fees in connection therewith, to SunTrust subsidiaries and affiliates.  A party in interest is subject to liability under ERISA, 29 U.S.C. §1132(a)(3).

112.   As a direct and proximate result of SunTrust's violations of ERISA, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants, lost tens of millions of dollars to the Affiliated Funds' high fees and poor returns.

113.   Pursuant to ERISA, 29 U.S.C. §1132(a)(3) SunTrust is liable to disgorge all revenues received from the 401(k) Plan and SunTrust's earnings thereon.

## COUNT V

**Defendants Lanier, Prince, and Correll Violated ERISA by Failing to Remove and Prudently Monitor Committee Defendants**

114.   All previous averments are incorporated herein.

115.   At all relevant times Defendants Lanier, Prince, and Correll (and any Does that also served as chair of the Compensation Committee), acted as 401(k) Plan fiduciaries within the meaning of ERISA, 29 U.S.C. §1002(21)(A), by exercising authority and control with respect to appointment, removal (if necessary), and monitoring of the members of the Plan Committee.

116.   Under ERISA, 29 U.S.C. §1104, an appointing fiduciary has an ongoing obligation to monitor the actions of fiduciaries which he or she appoints to ensure that the appointed fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets and the administration of the plan, and to take prompt and effective action to protect the plan and participants when they are not.  In addition, a monitoring fiduciary must provide the other fiduciaries with accurate information in its possession that it knows or reasonably should know that the other fiduciaries must have in order to prudently manage the plan and its assets.

117.   Defendants Lanier, Correll, and Prince, and any Does that also served as chair of the Compensation Committee, violated their ERISA fiduciary duties of prudence and loyalty by failing to adequately monitor the performance of the Committee Defendants when they knew or should have known that the Plan Committee members were failing to fulfill their ERISA fiduciary obligations.  In particular, the Plan Committee members were engaging in prohibited transactions and breaching their duties of loyalty and prudence by causing the Plan to invest in the Affiliated Funds.

118.   As a direct and proximate result of these breaches of fiduciary duty, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants, lost tens of millions of dollars to the Affiliated Funds' fees and poor returns.

## COUNT VI

**Liability for Breach of Co-Fiduciary**
**(Liability of Committee Defendants and Defendants SunTrust, Lanier, Prince, and Correll Pursuant to ERISA, 29 U.S.C. §1105 as Cofiduciaries for Participating in and Failing to Remedy Committee Defendants' Breaches of Fiduciary Duty)**

119.   All previous averments are incorporated herein.

120.   At all relevant times, the Defendants acted as 401(k) Plan fiduciaries within the meaning of ERISA.

121.   As fiduciaries of the 401(k) Plan, each of the Defendants assumed a duty to protect the Plan from the improper actions of other Plan fiduciaries.  A co-fiduciary is liable for their breach of another co-fiduciary under ERISA, 29 U.S.C. §1105, if he either knowingly participates in or conceals another fiduciary's breach of duty, or fails to make reasonable efforts under the circumstances to remedy the breach of another fiduciary when he has knowledge of the breach.

122.   Defendants SunTrust, Lanier, Prince, and Correll are liable as co-fiduciaries because they were aware of, participated in, enabled, and failed to

remedy Committee Defendants's breaches of fiduciary duty and prohibited transactions related to the Plan's selection of, and failure to remove, the Affiliated Funds as 401(k) Plan investment funds.

123.   Committee Defendants are liable as co-fiduciaries because they were aware of, participated in, enabled, and failed to remedy each other's breaches of fiduciary duty and prohibited transactions.  On information and belief, each Committee Defendant knew that the other Committee Defendants were breaching their fiduciary duties and engaging in prohibited transactions as described in this complaint, but failed to take any action.

124.   Defendants Lanier, Prince, and Correll failed to remove any of the individual members of the Plan Committee when they knew that they were breaching their duties.

125.   Defendant SunTrust, through its board of directors, failed to remove Defendants Lanier, Prince, or Correll when it knew that they failed to remove individual members of the Plan Committee who were breaching their duties.

126.   As a direct and proximate result of the breaches of co-fiduciaries alleged herein, the Plan and its participants lost tens of millions of dollars to poor performance and high fees from their investments in the Affiliated Funds.

59

Pursuant to ERISA, 29 U.S.C. §§1132(a)(2) & 1109(a), the Defendants are liable

to restore all losses to the Plan caused by the breaches of their co-fiduciaries.

## COUNT VII

**Breach of ERISA Fiduciary Duties of Prudence and Loyalty by Approving the
"Mapping" of Funds from the NCF 401(k) Plan into the Affiliated Funds
in the SunTrust 401(k) Plan
(Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants))**

127.   All previous averments are incorporated herein.

128.   On October 1, 2004, SunTrust acquired National Commerce Financial

Corporation ("NCF").

129.   On November 15, 2004 the Plan Committee approved a plan

developed by Trusco to map, i.e. transfer, over $120 million in assets invested in

options in the NCF 401(k) Plan in options in the SunTrust 401(k) Plan.

130.   This transfer took place effective July 1, 2005.

131.   By approving this transfer, Committee Defendants caused millions of

dollars to be invested in the Affiliated Funds, thereby enriching SunTrust and its

affiliates by increasing the amount of fee income they received from 401(k) Plan

investments.

132.   Committee Defendants breached their fiduciary duties because they approved the transfer not because it was in the best interests of plan participants, but to enrich SunTrust and its affiliates.

133.   Committee Defendants did not engage in a prudent process to determine whether the mapping should be approved.  They engaged in no analysis to determine whether the funds into which the NCF Plan funds were being mapped were prudent investment options, or whether there were better alternatives.

134.   As a direct and proximate result of these breaches of fiduciary duty, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants, lost tens of millions of dollars to the Affiliated Funds' high fees and poor returns.


WHEREFORE, Plaintiff prays for relief as follows:

a)      Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

b)      Declare that Defendants breached their ERISA fiduciary duties to the Plan and its participants;

c)      Issue an order compelling Defendants to make good to the Plan all losses to the Plan resulting from breaches of fiduciary duty, including lost return on investments and payment of excessive fees that would have been prevented by

loyal and prudent selection and monitoring of investment vehicles for the 401(k) Plan;

d)      Issue an order compelling disgorgement of all fees the 401(k) Plan and its participants paid, directly or indirectly, to the Affiliated Funds and/or the funds' investment manager;

e)      Order equitable restitution and other appropriate equitable monetary relief against Defendants;

f)      Award such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the Plan and the appointment of independent fiduciaries to administer the Plan;

g)      Enjoin Defendants collectively, and each of them individually, from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

h)      That this action be certified as a class action pursuant to Fed. R. Civ. P. 23;

i)      Award Plaintiff and the class their attorneys' fees and costs pursuant to ERISA, 29 U.S.C. §1132(g) and/or the Common Fund doctrine; and

j)     Award such other and further relief as the Court deems equitable and

just.


June 6, 2011                              Respectfully Submitted,


                                          By /s/  James A. Moore_____

                                          J. Brian McTigue (*Admitted Pro Hac Vice*)
                                          James A. Moore (*Admitted Pro Hac Vice*)
                                          **MCTIGUE & VEIS LLP**
                                          4530 Wisconsin Avenue, NW
                                          Suite 300
                                          Washington, DC  20016
                                          Tel:  (202) 364-6900
                                          Fax: (202) 364-9960
                                          bmctigue@mctiguelaw.com
                                          jmoore@mctiguelaw.com

                                          *Counsel for Plaintiff Barbara J. Fuller*

                                          Alan R. Perry    (By James A. Moore)
                                          Alan R. Perry, Jr. (GA Bar #572508)
                                          **PAGE PERRY LLC**
                                          1040 Crown Pointe Parkway
                                          Suite 1050
                                          Atlanta, Georgia 30338
                                          (P) 770-673-0047
                                          (F)770-673-0120
                                          aperry@pageperry.com

                                          *Local Counsel for Plaintiff Barbara J. Fuller*


                                  63

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **BARBARA J. FULLER, et al.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **CIVIL ACTION FILE NO.** |
| | ) **1:11-CV-784-ODE** |
| **SUNTRUST BANKS, INC. et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 6, 2011, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF which will

automatically send a copy to the following attorneys of record:

**Darren A. Shuler**
King & Spalding, LLP-ATL
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
404-572-2790
Email: dshuler@kslaw.com

**Michael Benjamin Wakefield**
King & Spalding, LLP-ATL
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
404-572-2825
Email: mwakefield@kslaw.com

**David Tetrick , Jr.**
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309-3521
404-572-4600

Email: dtetrick@kslaw.com

/s/ James A. Moore
McTigue & Veis LLP