## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **BARBARA J. FULLER, et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION FILE NO.** |
| | ) | **1:11-CV-784-ODE** |
| **SUNTRUST BANKS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT</u>

David Tetrick, Jr.
Georgia Bar No. 713653
Darren A. Shuler
Georgia Bar No. 644276
Michael B. Wakefield
Georgia Bar No. 950517

**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3531
(404) 572-4600
(404) 572-5139 (facsimile)

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................1

ALLEGATIONS IN THE AMENDED COMPLAINT ...........................3

   A.   The Affiliated Funds .....................................................................3

   B.   The Plan ........................................................................................5

   C.   The Plan's Sponsor and Its Fiduciaries.........................................6

   D.   The Plan's Disclosures Regarding the Affiliated Funds..............7

   E.   Mary Lee's Exhaustion of Administrative Remedies...................9

ARGUMENT AND CITATION OF AUTHORITIES...........................11

   A.   Legal Standard for Motion to Dismiss.......................................11

   B.   ERISA's Repose and Limitations Periods .................................12

   C.   Most, If Not All, of Plaintiff's Claims Are Barred by ERISA's Six-Year Repose Period.............................................................13

       1.   Plaintiff's Prohibited Transaction Claim Based on Seven of the Eight Affiliated Funds Is Barred By the Repose Period..............................15

       2.   Plaintiff's Prudence Claims Based on Seven of the Eight Affiliated Funds Are Barred by the Repose Period. ...........................................16

   D.   All of Plaintiff's Claims Are Barred by ERISA's Three-Year Limitations Period. .....................................................................18

   E.   Plaintiff's Prohibited Transaction Claim Fails Because It Seeks to Impose Liability for Transactions That ERISA Expressly Allows. .......................23

   F.   Plaintiff's Derivative Claims Fall with Her Time-Barred Claims and Because They Do Not Plead Any Plausible Entitlement to Relief.............24

   G.   Plaintiff Lacks Standing to Pursue Claims on Behalf of the NCF Plan. ....24

i

CONCLUSION ....................................................................................................25

## **INTRODUCTION**

In her Amended Complaint,[1] Plaintiff alleges that Defendants violated ERISA[2] by offering the STI Classic Funds as investment alternatives in the SunTrust Banks, Inc. 401(k) Plan (the "Plan").  In particular, Plaintiff contends that the STI Classic Funds charged excessive fees, offered sub-par performance, and were only selected as Plan investment options because they paid fees to SunTrust affiliates.[3]  In Count I, Plaintiff alleges that the Plan Committee's selection of the STI Classic Funds was a "prohibited transaction" under ERISA (the "Prohibited Transaction Claim").[4]  In Counts II and III, Plaintiff alleges that—even if not a *per se* violation of ERISA—the selection of the STI Classic Funds was nevertheless imprudent and a breach of the Plan Committee's fiduciary duty (the "Prudence Claims").[5]

---

[1] Plaintiff filed her original Complaint on March 11, 2011.  [Doc. No. 1.] Defendants moved to dismiss the original Complaint.  [Doc. No. 29.]  On the day Plaintiff's response to Defendants' motion to dismiss was due, she filed her Amended Complaint ("Am. Compl.") instead.  [Doc. No. 36.]

[2] The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461.

[3] Am. Compl. ¶ 2.

[4] Id. ¶¶ 87-93.

[5] Id. ¶¶ 94-100, 101-108.

According to her own allegations, however, Plaintiff did not file her original Complaint until well more than six years after the STI Classic Funds in which she invested were selected as alternatives for the Plan, and more than three years after she had actual knowledge of the allegedly excessive fees and sub-par performance on which her claims are based.  As a consequence, Plaintiff's Prohibited Transaction and Prudence Claims are barred under either prong of ERISA's limitations provision and must be dismissed as a matter of law.[6]

Plaintiff's remaining claims allege a variety of secondary fiduciary breaches, all of which depend upon the viability of her time-barred claims.  In Count IV, Plaintiff alleges that SunTrust "knowingly participated" in the Plan Committee's fiduciary breaches (the "Knowing Participation Claim").[7]  In Count V, Plaintiff alleges that successive Chairmen of SunTrust's Compensation Committee breached their duty to monitor the Plan Committee (the "Monitoring Claim").[8]  In Count VI, Plaintiff alleges that all Defendants are liable as "co-fiduciaries" for any breaches committed by the Plan Committee (the "Co-Fiduciary Claim").[9]  Finally,

---

[6] ERISA § 413, 29 U.S.C. § 1113.

[7] Am. Compl. ¶¶ 109-113.

[8] Id. ¶¶ 114-118.

[9] Id. ¶¶ 119-126.

2

in Count VII, added in the Amended Complaint, Plaintiff repeats her Prohibited Transaction and Prudence Claims with respect to the National Commerce Financial 401(k) plan—a plan in which Plaintiff never participated, sponsored by a company for which she never worked.[10]

Like the original, Plaintiff's Amended Complaint must be dismissed because all of her claims are time-barred.  Even if Plaintiff's allegations are credited and construed in the light most favorable to her, this Court can still grant her no relief under ERISA and the Amended Complaint should be dismissed with prejudice.

## ALLEGATIONS IN THE AMENDED COMPLAINT

### A.    The Affiliated Funds

The Amended Complaint focuses on eight STI Classic Funds that were offered as investment alternatives in the Plan (the "Affiliated Funds").[11]  Plaintiff admits that six of the eight Affiliated Funds—including all three in which she invested—were selected by the Committee "[e]ffective 1999" or earlier.[12]  Thus, as summarized in the following table, Plaintiff's own allegations demonstrate that six

---

[10] Id. ¶¶ 127-134; see also id. ¶¶ 11, 38-39.

[11] Id. ¶ 4 (listing "Affiliated Funds").

[12] Id. ¶ 11 (alleging Plaintiff invested in the STI Classic Short-Term Bond Fund, the STI Classic Prime Quality Money Market Fund, and the STI Classic Growth and Income Fund); Id. ¶ 51 (alleging that six of the Affiliated Funds, including the three in which Plaintiff invested, were selected "[e]ffective 1999" or earlier).

3

of the Affiliated Funds, and all three in which she invested, were selected as

investment options <u>at least eleven years</u> before Plaintiff filed her Complaint:

| Fund Name | Date Selected | Plaintiff Invested? | Time from Date Selected to Complaint |
|---|---|---|---|
| STI Classic Capital Appreciation Fund (STCAX) | "Effective July 1, 1997" (Am. Compl. ¶ 51) | No (Am. Compl. ¶ 11) | 13 years, 8 months |
| STI Classic Investment Grade Bond Fund (STIGX) | "Effective July 1, 1997" (Am. Compl. ¶ 51) | No (Am. Compl. ¶ 11) | 13 years, 8 months |
| STI Classic Short-Term Bond Fund (SSBTX) | "Effective July 1, 1997" (Am. Compl. ¶ 51) | Yes (Am. Compl. ¶ 11) | 13 years, 8 months |
| STI Classic Prime Quality Money Market Fund (SQTXX) | "Effective July 1, 1997" (Am. Compl. ¶ 51) | Yes (Am. Compl. ¶ 11) | 13 years, 8 months |
| STI Classic Growth and Income Fund (CRVAX) | "Effective 1999" (Am. Compl. ¶ 51) | Yes (Am. Compl. ¶ 11) | 11 years, 2 months (assuming December 31, 1999) |
| STI Classic Small Cap Growth Fund (SSCTX) | "Effective 1999" (Am. Compl. ¶ 51) | No (Am. Compl. ¶ 11) | 11 years, 2 months (assuming December 31, 1999) |

For the two remaining Affiliated Funds, Plaintiff alleges that one (the STI

Classic Mid-Cap Equity Fund) was selected "[e]ffective 2002" and the other (the

4

STI Classic International Equity Index Fund) was selected "[e]ffective 2005."[13]

The Amended Complaint shows that Plaintiff never invested in either of these

Funds.[14]  Even so, as summarized in the following table, Plaintiff's allegations

demonstrate that the STI Classic Mid-Cap Equity Fund was selected as an

investment option <u>at least eight years</u>, and the STI Classic International Equity

Index Fund was selected <u>more than six years</u>, before she filed her Complaint:

| Fund Name | Date Selected | Plaintiff Invested? | Time from Date Selected to Complaint |
|---|---|---|---|
| STI Classic Mid-Cap Equity Fund (SAGTX) | "Effective 2002" (Am. Compl. ¶ 51) | No (Am. Compl. ¶ 11) | 8 years, 2 months (assuming December 31, 2002) |
| STI Classic International Equity Index Fund (SIEIX) | "Effective 2005" (Am. Compl. ¶ 51)  "[S]tarting Jan. 1, 2005" (Exhibit A) | No (Am. Compl. ¶ 11) | 6 years, 2 months (from actual January 1, 2005) |

**B.    The Plan**

The Plan is an Internal Revenue Code 401(k) arrangement that permits

participants to contribute a portion of their pre-tax wages on a tax-deferred basis,

---

[13] <u>Id.</u> ¶ 51.  Plan documents establish that the STI Classic International Equity Index Fund was offered for investment through the Plan "starting Jan. 1, 2005." <u>See</u> December 15, 2004 Plan disclosure of new investment options, attached as Exhibit A.

[14] <u>See</u> Am. Compl. ¶ 11.

subject to certain limits imposed by law.[15]  SunTrust makes contributions to

"match" those made by participants.[16]  The Plan is a "defined contribution plan"

under ERISA.[17]  Each Plan participant has a separate account, directs how her

contributions are invested, and bears the risk of investment loss.[18]

## C.    The Plan's Sponsor and Its Fiduciaries

SunTrust is the "sponsor" of the Plan,[19] and its limited duties are set out in

the Plan Document.[20]  As sponsor, SunTrust is responsible for establishing the

Plan's design and appointing the Chairman of the Compensation Committee,[21]

who, in turn, appointed the members of the Plan Committee.[22]

The Plan Committee is the sole "named fiduciary"[23] of the Plan and is

---

[15] Id. ¶ 33.

[16] Id. ¶¶ 34-35.

[17] Id. ¶ 21; see 29 U.S.C. § 1002(34) (defining "defined contribution plan").

[18] Am. Compl. ¶¶ 32-33, 36-37; see also SunTrust Banks, Inc. 401(k) Plan, Amended and Restated Effective January 1, 2006 ("Plan Doc.") § 4.2(a)-(b). A copy of the Plan Doc. is attached as Exhibit B.

[19] Am. Compl. ¶ 25; see 29 U.S.C. § 1002(16)(B) (defining "sponsor").

[20] Plan Doc. § 9.1(a).

[21] Am. Compl. ¶ 25; Plan Doc. § 9.1(a).

[22] Am. Compl. ¶ 26; Plan Doc. § 9.1(b).

[23] 29 U.S.C. § 1102(a)(1); Plan Doc. § 1.9.

designated as the Plan "administrator."[24]  The Committee is responsible for the

day-to-day operations of the Plan, and its duties are detailed in the Plan

document.[25]  Those duties include selecting "one or more funds for the investment

of [a]ccount balances . . . as elected by each [p]articipant or beneficiary" and

"timely describ[ing] the investment funds that are available from time to time, in

written notices to [p]articipants and beneficiaries."[26]  The Plan Committee also

"prepar[ed] and distribut[ed] to the [participants] plan summaries, notices and

other information about the Plan . . . in compliance with applicable law."[27]

**D.     The Plan's Disclosures Regarding the Affiliated Funds**

ERISA requires specific disclosures to participants, including a Summary

Plan Description ("SPD") describing the terms of the Plan in language the average

participant can understand.[28]  The Plan Committee is responsible for preparing and

distributing the SPD and the other communications required by ERISA.[29]  The

SPD informs participants that they are responsible for allocating the investments in

---

[24] Plan Doc. § 9.1(c)(4), § 1.43; see 29 U.S.C. § 1102(a)(2), § 1002(16)(A).

[25] Plan Doc. § 9.1(c)(4)(A)-(N).

[26] Id. § 4.2(a).

[27] Id. § 9.1(c)(4)(G).

[28] 29 U.S.C § 1024, § 1022.

[29] Plan Doc. § 9.1(c)(4)(G), (K), and (L).

7

their individual accounts and that they bear the risk of loss resulting from their exercise of control.[30]

The SPD describes the Plan's investment options, including the Affiliated Funds, and informs participants of the risk rating of each.[31]   The SPD also incorporates by express reference the Quarterly Investment Performance ("QIP") booklets that were provided to participants and posted on the Plan's website.[32]   The QIP booklets contain "fact sheets" listing the expense ratio and historical performance of the Affiliated Funds.[33]   They also disclose that the "STI Classic Funds are advised by affiliates of SunTrust Banks, Inc."[34]   The QIP booklets expressly reference the STI Classic Funds Prospectus for the SunTrust 401(k) Plan

---

[30] SPD at 134.  A copy of the 2006 SPD is attached as Exhibit C.

[31] Id. at 124-126.

[32] Id. at 126, 155.  A copy of the incorporated QIP booklet the fourth quarter of 2005 is attached as Exhibit D.

[33] See Exhibit D at 10-11 (STI Classic International Equity Index Fund); 12-13 (STI Classic Small Cap Growth Stock Fund), 18-19 (STI Classic Mid-Cap Equity Fund); 20-21 (STI Classic Capital Appreciation Fund); 24-25 (STI Classic Large Cap Relative Value Fund, formerly named the STI Classic Growth and Income Fund (see Am. Comp. ¶ 4)); 31-32 (STI Classic Investment Grade Bond Fund); 33-34 (STI Classic Short-Term Bond Fund); 35-36 (STI Classic Prime Quality Money Market Fund).

[34] Exhibit D at 37-38.

("Plan Prospectus") that was provided to participants each year and, like the

booklets, posted on the Plan website.[35]

The Plan Prospectus provides even more detailed information about the fees,

expenses, and performance of the Affiliated Funds.[36]  It also contains a "Financial

Highlights" table that lists audited fee, expense, and performance information for

each of the Affiliated Funds for the prior six-year period.[37]

## E.    Mary Lee's Exhaustion of Administrative Remedies

On April 24, 2008, Mary Lee, a Plan participant represented by "[s]ome of

the attorneys who represent[]" Plaintiff in this case, submitted an administrative

claim alleging that the Plan violated ERISA by offering the STI Classic Funds.[38]

Ms. Lee's administrative claim was denied on August 29, 2008.[39]  She submitted

---

[35] Id. at 1, 6.

[36] A copy of the Plan Prospectus for 2005 is attached as Exhibit E.  See Exhibit E at 4-5 (STI Classic Capital Appreciation Fund); 6-8 (STI Classic International Equity Index Fund); 9-10 (STI Classic Large Cap Relative Value Fund); 13-15 (STI Classic Mid-Cap Equity Fund); 16-18 (STI Classic Small Cap Growth Stock Fund); 19-21 (STI Classic Investment Grade Bond Fund); 22-24 (STI Classic Short-Term Bond Fund); 25-26 (STI Classic Prime Quality Money Market Fund).

[37] Exhibit E at 38-40.

[38] Am. Compl. ¶¶ 81, 86 n.8.

[39] Id. ¶ 82.

9

an appeal, which was denied on March 26, 2009.[40]  A total of 336 days elapsed

between Ms. Lee's submission of her claim (on April 24, 2008) and the denial of

her appeal (on March 26, 2009).

Plaintiff alleges that Ms. Lee's was "a class claim . . . submitted on behalf of

the Plan" and notes that "[t]he inception date for the Class Period in [Ms. Lee's]

class claim was April 25, 2002"—which is five years and 364 days before the date

when Ms. Lee submitted her claim (April 24, 2008).[41]  Plaintiff paradoxically

alleges that, although she was "unaware" of the existence of her claims "[p]rior to

March 2011,"[42] the filing of her Complaint on March 11, 2011 was "delayed while

administrative remedies were being exhausted [by Ms. Lee] on behalf of the class"

from April 24, 2008 until March 26, 2009.[43]  Accordingly, Plaintiff alleges that her

statute of limitations should be tolled "during the time the administrative class

claim, including the appeal, was pending."[44]

---

[40] Id. ¶ 83.

[41] Id. ¶ 81.

[42] Id. ¶ 11.

[43] Id. ¶ 86.

[44] Id.

## ARGUMENT AND CITATION OF AUTHORITIES

### A.    Legal Standard for Motion to Dismiss

Defendants move to dismiss Plaintiff's Amended Complaint under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) authorizes the early dismissal of claims based on dispositive issues of law.  "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding."[45]  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."[46]

In evaluating the legal sufficiency of claims under Rule 12(b)(6), the Court accepts well-pleaded facts as true, but disregards legal conclusions and unwarranted deductions of fact.[47]  In addition to the well-pleaded allegations of the Complaint, the Court may consider documents attached to a motion to dismiss "where the attached document is central to the plaintiff's claim and is undisputed

---

[45] Neitzke v. Williams, 490 U.S. 319, 326-327 (1989).

[46] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007) (quotation marks omitted).

[47] Day v. Taylor, 400 F.3d 1272, 1277 (11th Cir. 2005).

in the sense that the authenticity of the document is not challenged."[48]  If such

documents "reveal[] facts which foreclose recovery as a matter of law, dismissal is

appropriate."[49]

Rule 12(b)(1) permits a party to seek dismissal of an action for lack of

standing, which implicates the subject-matter jurisdiction of the Court.  If subject

matter jurisdiction is challenged, the plaintiff bears the burden of proving its

existence.[50]  The Court is not limited to the pleadings in ruling on a 12(b)(1)

motion.[51]

## B.   ERISA's Repose and Limitations Periods

ERISA § 413 requires claims to be brought within "the earlier of . . . six

years after . . . the date of the last action which constituted a part of the breach or

violation, or . . . three years after the earliest date on which the plaintiff had actual

knowledge of the breach or violation."[52]  As this Court has explained, "ERISA's

---

[48] Pedraza v. The Coca-Cola Co., 456 F. Supp. 2d 1262, 1264-65 (N.D. Ga. 2006) (Evans, J.) (internal citation omitted).

[49] Smith v. Delta Air Lines, 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006) (Evans, J.) (citation omitted).

[50] Elend v. Basham, 471 F.3d 1199, 1206-07 (11th Cir. 2006); In re ING Groep, N.V. ERISA Litig., 749 F. Supp. 2d 1338, 1345 (N.D. Ga. 2010) (Carnes, J.).

[51] Barnett v. Okeechobee Hospital, 283 F.3d 1232, 1237-38 (11th Cir. 2002).

[52] 29 U.S.C. § 1113.

12

six-year period of limitations serves as a statute of repose" and "no action may be brought more than six years after the last violation constituting a breach."[53]  The six-year repose period is triggered by Defendants' "last action which constituted a part of the breach or violation," regardless of when Plaintiff learned of that action.[54]  ERISA also bars any suit filed more than three years after Plaintiff obtained actual knowledge of the facts underlying the alleged breach.[55]  Because ERISA bars claims filed outside "the earlier of" these distinct periods, Plaintiff must clear both the six-year and the three-year hurdles.[56]

## C.    Most, If Not All, of Plaintiff's Claims Are Barred by ERISA's Six-Year Repose Period.

With respect to the seven (of the eight) Affiliated Funds added to the Plan no later than " [e]ffective 2002,"[57] Plaintiff's claims are barred by ERISA's repose period because her Complaint was not filed within six years of "the date of the last

---

[53] <u>New Orleans Emp'rs Int'l v. Mercer Inv. Consultants</u>, 635 F. Supp. 2d 1351, 1378 (N.D. Ga. 2009) (Evans, J.).

[54] ERISA § 413(1), 29 U.S.C. § 1113(1).

[55] <u>Mercer</u>, 635 F. Supp. 2d at 1378.

[56] <u>Id.</u>

[57] Am. Compl. ¶ 51 (alleging that four of the Affiliated Funds were selected "[e]ffective July 1, 1997", two "[e]ffective 1999", and another "[e]ffective 2002").

13

action which constituted a part of the breach or violation."[58]  Here, the "last

actions" constituting a part of the Prohibited Transaction and Prudence Claims

were the Plan Committee's selection of the Affiliated Funds as Plan investments.

For the STI Classic Mid-Cap Equity Fund (added "[e]ffective 2002") that selection

occurred at least eight years prior to the filing of the Complaint.  For the six

Affiliated Funds added "[e]ffective July 1, 1997" and "[e]ffective 1999" (and

which include the three Funds in which Plaintiff invested), that selection occurred

at least eleven years before Plaintiff filed her original Complaint.[59]

Permitting Plaintiff the benefit of Ms. Lee's 336-day tolling period makes no

difference.  Indeed, even if Plaintiff can reach back to April 9, 2004 (i.e., six years

and 336 days before the March 11, 2011 Complaint) her claims with respect to

seven of the eight Affiliated Funds would still be barred by ERISA's six-year

period of repose.  And even if claims based on the eighth Affiliated Fund (the STI

Classic International Equity Index Fund, added "[e]ffective 2005")[60] are not barred

by the six-year repose period due to tolling, Plaintiff lacks standing to bring claims

---

[58] ERISA § 413(1)(A), 29 U.S.C. § 1113.

[59] Am. Compl. ¶ 51.

[60] Id.

based on a Fund in which she never invested.[61]

### 1.    Plaintiff's Prohibited Transaction Claim Based on Seven of the Eight Affiliated Funds Is Barred By the Repose Period.

Plaintiff's Prohibited Transaction Claim alleges that the Plan Committee violated ERISA by offering the Affiliated Funds as Plan investments.[62]  The plain language of the statute requires dismissal of this claim with respect to seven of the eight Affiliated Funds.  ERISA § 406 provides that fiduciaries "shall not <u>cause</u> the plan to engage in" a prohibited transaction.[63]  Here, the Plan Committee "caused" but one "transaction" for each Affiliated Fund: the addition of the Fund to the Plan.  Thus, the "last actions which constituted a part of the breach or violation" were the Plan Committee's "selections of affiliated funds as investment options for the Plan."[64]  Plaintiff's own allegations show that all but the STI Classic International Equity Index Fund—and all of the Affiliated Funds in which she invested—were selected <u>at least eight years before</u> she filed her Complaint.[65]  Under Plaintiff's best-case scenario, she had approximately seven years (i.e., six years and 336 days)

---

[61] <u>In re ING Groep, N.V. ERISA Litig.</u>, 749 F. Supp. 2d at 1345.

[62] Am. Compl. ¶ 89.

[63] 29 U.S.C. § 1106(a)(1) (emphasis added).

[64] <u>Leber v. Citigroup, Inc.</u>, 2010 WL 935442, at *7 (S.D.N.Y. March 16, 2010).

[65] <u>See</u> Am. Compl. ¶¶ 11, 46.

15

to bring those claims, and did not do so.  As a result, her Prohibited Transaction

Claim is time barred.

## 2.    Plaintiff's Prudence Claims Based on Seven of the Eight Affiliated Funds Are Barred by the Repose Period.

Plaintiff's Prudence Claims suffer the same infirmity.  They, too, allege that

the Plan Committee's selections of the Affiliated Funds violated ERISA because

their fees were high and their performance poor.[66]  Plaintiff does not allege that the

Affiliated Funds became imprudent during the Class Period; she alleges that they

were imprudent from the times they were selected.[67]  As with her Prohibited

Transaction Claim, the trigger for Plaintiff's Prudence Claims was the

Committee's selection of each Affiliated Fund.  Thus, ERISA's six-year repose

period bars the Prudence Claims with respect to seven of the eight Affiliated

Funds, just as it bars the Prohibited Transaction Claim.[68]  With respect to the

---

[66] Id. ¶¶ 96, 107.

[67] Id. ¶¶ 2, 54, 57.

[68] See Tibble v. Edison Int'l, 639 F. Supp. 2d 1074, 1086, 1120 (C.D. Cal. 2009) (noting that "there is no 'continuing violation' theory to claims subject to ERISA's statute of limitation" and dismissing excessive fee claims because "the initial decision to add retail mutual funds . . . as an option in the Plan" was made more than six years before suit was filed) (citation omitted).

16

eighth Affiliated Fund (the STI Classic International Equity Index Fund), Plaintiff lacks standing to assert claims about a Fund in which she never invested.[69]

Recognizing that she simply waited too long to bring her claims, Plaintiff attempts to evade ERISA's six-year repose period by splitting her Prudence Claims into separate Counts.  In Count II, Plaintiff alleges that the Plan Committee breached its fiduciary duty by "failing to remove or replace" the seven Affiliated Funds that were selected as investment options outside of the six-year repose period.[70]  In Count III, by contrast, Plaintiff alleges that the Committee violated ERISA by "the selection of" the lone Affiliated Fund (the STI Classic International Equity Index Fund) that was added to the Plan "[e]ffective 2005" and—solely due to Ms. Lee's 336-day tolling period—would fall within the six-year repose period.[71]  As this Court has recognized, however, Plaintiff's artful pleading cannot turn back the clock on her time-barred Prudence Claims.[72]  And other courts have rejected similar attempts (once advanced by Plaintiff's counsel) to repackage

---

[69] In re ING Groep, N.V. ERISA Litig., 749 F. Supp. 2d at 1345.

[70] Am. Compl. ¶ 96.

[71] Id. ¶ 106; see Exhibit A (the STI Classic International Equity Index Fund was offered as a Plan investment "beginning Jan. 1, 2005," placing it outside the six-year period prior to Plaintiff's March 11, 2011 Complaint without the benefit of tolling).

[72] Mercer, 635 F. Supp. 2d at 1380 (collecting cases).

17

discrete fiduciary acts (i.e., the selection of allegedly imprudent investments) as "continuing violations" (i.e., the failure to remove those same investments thereafter) to evade ERISA's limitation periods.[73]   Here, Plaintiff's dissembling is best understood as recognition that her claims are stale.

**D.   All of Plaintiff's Claims Are Barred by ERISA's Three-Year Limitations Period.**

Plaintiff's Claims are also barred by ERISA's three-year limitations period. It requires Plaintiff to file her Complaint within three years of acquiring "actual knowledge" of the breach or violation alleged.[74]   In the Eleventh Circuit, it is well-settled that "actual knowledge" means knowledge of the relevant facts underlying

---

[73] See, e.g., Tibble v. Edison Int'l, 2010 WL 2757153, at *24-*25, *31-33 (C.D. Cal. July 8, 2010) (dismissing allegations cast as "failure to remove" claims in an effort to bring them within the limitations period and noting that, where allegedly imprudent funds do not materially change during the limitations period, ERISA does not impose a duty on fiduciaries to conduct a "full due diligence review equivalent to that performed for a newly-added fund"); Leber, 2010 WL 935442, at *7-*8 (rejecting Plaintiff's counsel's "continuing violations" argument and concluding that "the relevant 'last actions' were the committee defendants' selections of affiliated funds as investment options for the Plan" but declining to dismiss on limitations grounds because, unlike here, the complaint was "silent as to when virtually all of these actions occurred").

[74] ERISA § 413(2), 29 U.S.C. § 1113(2).

the breach or violation, not knowledge that those facts make up a legal claim under

ERISA.[75]  Any other interpretation would nullify ERISA's limitations period.[76]

For Plaintiff's Prohibited Transaction Claim, the three-year limitations

period began when she learned that fiduciaries "cause[d] the plan to engage in a

[prohibited] transaction" by selecting the Affiliated Funds as Plan investments.[77]

For her Prudence Claims, the three-year period began when Plaintiff learned of the

Funds' allegedly excessive fees and poor performance.[78]  The Plan regularly

disclosed to Plaintiff the information upon which her claims are based—and

certainly did so more than three years before she filed her Complaint.[79]  In light of

the information provided to Plaintiff in the Plan documents, her assertions that

"performance and expense information . . . is not available to 401(k) Plan

---

[75] Scott v. Evins, 802 F. Supp. 411, 416 (N.D. Ala. 1992); aff'd without opinion, 998 F.2d 1022 (11th Cir. 1993); see also Mercer, 635 F. Supp. 2d at 1378.

[76] See Wright v. Heyne, 349 F.3d 321, 331 (6th Cir. 2003).

[77] 29 U.S.C. §§ 1106(1); Figas v. Wells Fargo & Co., No. 08-4546, slip op. 4-5 (D. Minn. Apr. 6, 2010) ("[I]n the ERISA prohibited-transaction context[,] . . . knowledge of the prohibited transaction would be actual knowledge of the breach.") (citation and alteration omitted).

[78] 29 U.S.C. §1104(a); Young v. Gen. Motors Inv. Mgmt. Corp., 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008) (dismissing claims as time-barred where "[t]he allegedly excessive fees that form[ed] the central basis of [the] claim were readily apparent from the information provided to all Plan participants more than three years before" the suit was filed), aff'd on other grounds, 325 F. App'x 31 (2d Cir. 2009).

[79] See Exhibits C, D, and E (discussed in footnotes 30-37 above).

Participants" and that the Plan "did not disclose that the Affiliated Funds were SunTrust proprietary funds, that the investment advisor was a SunTrust subsidiary, [or] the amount of fees charged by the Affiliated Funds" are not worthy of credit.[80]

Indeed, the Plan documents establish Plaintiff's actual knowledge, regardless of whether her Complaint specifically admits that she read them.  As one court recently noted in dismissing excessive fee claims: "Any interpretation of the term 'actual knowledge' that would allow a participant to disregard information clearly provided to him/her would effectively provide an end run around ERISA's limitations requirement."[81]  Plaintiff cannot eschew ERISA's limitations period by "merely [] refusing to read or examine information disclosing relevant facts that would trigger the statute of limitations."[82]

As this Court recently admonished, Plaintiff cannot avoid ERISA's three-year limitations period through willful blindness or artful pleading:

---

[80] Am. Compl. ¶¶ 30-31.

[81] Young, 550 F. Supp. 2d at 419 n.3; see also Brown v. Owens Corning Inv. Review Comm., 622 F.3d 564, 571-72 (6th Cir. 2010) (holding "the SPDs and other Plan communications," including "quarterly account statements," "gave the Plaintiffs actual knowledge" of the facts making up their claims); Shirk v. Fifth Third Bancorp, 2009 WL 3150303, at *3 (S.D. Ohio Sep. 30, 2009) ("In making this 'actual knowledge' determination, courts have 'focused on whether documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary duty . . . ' [and not whether the plaintiff admits reading them]".) (citation omitted)).

[82] Shirk, 2009 WL 3150303, at *3.

> [C]ourts addressing the ERISA statute of limitations period have made clear that manipulation of the statute of limitations should not be tolerated.  See Librizzi v. Children's Mem'l Med. Ctr., 134 F.3d 1302, 1307 (7th Cir. 1998) (refusing to start the statute of limitations on the date that the deferred effect of the breach of fiduciary duty occurred because to do so "would destroy the structure of the statute, which gives participants the shorter of two periods"); Radiology Ctr., S.C. v. Stifel, Nicolaus & Co., 919 F.2d 1216, 1221 (7th Cir. 1990) ("While it is not uncommon for parties to cast the same set of facts in such a way that they amount to a claim that is not time-barred rather than one that is, we are reluctant to read § 1113 as encouraging this practice.").  In addition, the United States Court of Appeals for the First Circuit has cautioned that, when determining whether a plaintiff had actual knowledge or merely constructive knowledge, willful blindness to a violation should not be permitted.  Edes v. Verizon Comm'ns, Inc., 417 F.3d 133 (1st Cir. 2005).[83]

Plaintiff's assertion that, "[p]rior to March 2011" she "was unaware . . . of facts relating to the processes Defendants employed or failed to employ" in selecting the Affiliated Funds is also unavailing.[84]  For even if Plaintiff did lack detailed information about the process used to select the Affiliated Funds until she filed her Complaint, that does not alter that the results of that process were known to her well before: that Affiliated Funds were selected as Plan investments and that the fees, expenses, and performance of those Funds was routinely disclosed in Plan

---

[83] Mercer, 635 F. Supp. 2d at 1380.

[84] Am. Compl. ¶ 11.

documents.  These are the facts on which Plaintiff's claims are based, and they were provided to her more than three years before she filed her Complaint.[85]

Here, Plaintiff was repeatedly informed of the fees, expenses, and performance that she now alleges made the Affiliated Funds imprudent Plan investments.[86]  And, if the inclusion of SunTrust's ticker symbol (STI) in the name of the STI Classic Funds could leave any doubt, it was eliminated by the Plan documents' disclosure that the Affiliated Funds were "advised by affiliates of SunTrust Banks, Inc."[87]  Because Plaintiff had actual knowledge of the facts underlying her claims more than three years before filing her Complaint, ERISA's three-year limitations period bars her from pursuing those claims before this Court.[88]

---

[85] <u>Shirk</u>, 2009 WL 3150303, at *4 ("To trigger the ERISA statute of limitations, the plaintiff need only have knowledge of the act and cannot wait until the consequences of the act become painful.").

[86] <u>See</u> Exhibits C, D, and E (discussed in footnotes 30-37 above).

[87] Exhibit D at 38-39.

[88] <u>See</u> <u>Owens Corning</u>, 622 F.3d at 571-73 (dismissing claims under three-year limitations period and holding plaintiffs obtained actual knowledge required to trigger period through plan communications and public filings); <u>Young</u>, 550 F. Supp. 2d at 419 (same); <u>Shirk</u>, 2009 WL 3150303, at *6-*7 (same).

**E.    Plaintiff's Prohibited Transaction Claim Fails Because It Seeks to Impose Liability for Transactions That ERISA Expressly Allows.**

Moreover, even if it were timely, Plaintiff's Prohibited Transaction Claim would still fail because the Department of Labor has promulgated an exemption providing that "the restrictions of section[] 406 [of ERISA] shall not apply to the acquisition or sale of shares of an open-end investment company registered under the Investment Company Act of 1940 [i.e., a mutual fund] by an employee benefit plan covering only employees of such investment company."[89]   In other words, there is an express exemption permitting exactly the type of "transaction" that Plaintiff alleges is "prohibited" in her Complaint.   In light of this exemption permitting the Plan to offer the Affiliated Funds as investment options, Plaintiff cannot plausibly "allege a course of conduct [that is] actionable under [ERISA § 406]," and her Prohibited Transaction Claim must be dismissed.[90]

---

[89] Prohibited Transaction Exemption 77-3, 42 Fed. Reg. 18734 (1977), a copy of which is attached as Exhibit F.

[90] Leber, 2010 WL 935442, at *9-*10; Mehling v. New York Life Ins. Co., 163 F. Supp. 2d 502, 510-11 (S.D.N.Y. 2001).

**F.   Plaintiff's Derivative Claims Fall with Her Time-Barred Claims and Because They Do Not Plead Any Plausible Entitlement to Relief.**

Plaintiff also purports to allege derivative Knowing Participation, Monitoring, and Co-Fiduciary Claims, but those all fall with her time-barred Prohibited Transaction and Prudence Claims.[91]   Plaintiff's catch-all Co-Fiduciary and Knowing Participation claims also fail because they "neglect to describe a particular breach by a particular fiduciary" and, therefore, "never progress[] beyond the hypothetical and fail[] to state a claim."[92]   Finally, Plaintiff's Knowing Participation Claim against SunTrust fails because "[it] is effectively a claim for *respondeat superior* liability" that does not exist under ERISA.[93]

**G.   Plaintiff Lacks Standing to Pursue Claims on Behalf of the NCF Plan.**

In the Amended Complaint, Plaintiff repeats the allegations on which her Prohibited Transaction and Prudence Claims are based and asserts that they also

---

[91] Lanfear v. Home Depot, Inc., 718 F. Supp. 2d 1364, 1381-82, 1383 (N.D. Ga. 2010) (Evans, J.).

[92] Howell v. Motorola, Inc., 337 F. Supp. 2d 1079, 1101-02 (N.D. Ill. 2004) (internal quotation and citation omitted); Leber, 2010 WL 935442, at *14 (dismissing speculative ERISA claims because "[p]laintiffs fail[ed] to plead with any specificity how or why [the corporate plan sponsor] knew or should have known of the alleged breaches, or who at [the sponsor] would have had such knowledge.").

[93] In re Coca-Cola Enters., Inc. ERISA Litig., 2007 WL 1810211, at *13 (N.D. Ga. June 20, 2007) (Thrash, J.).

24

state claims with respect to the decision to "map" the National Commerce Financial Corporation 401(k) plan (the "NCF Plan") assets into Affiliated Funds.[94] But, as a threshold matter, Plaintiff lacks standing to bring claims on behalf of a plan in which she never participated, sponsored by an employer for which she never worked.[95]   And, even if Plaintiff could pursue claims relating to the NCF Plan, they would fail for the reasons set forth above: the decision to "map" the NCF plan assets into Affiliated Funds and the fees and performance that allegedly made those Funds imprudent were disclosed more than three years before Plaintiff filed her Complaint.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that Plaintiff's Amended Complaint be dismissed with prejudice.

---

[94] Am. Compl. ¶¶ 127-134; see also id. ¶¶ 11, 38-39.

[95] In re ING Groep N.V. ERISA Litig., 749 F. Supp. 2d at 1345.

25

Respectfully submitted this 20th day of June 2011.

        */s/ Darren A. Shuler*
        David Tetrick, Jr.
        Georgia Bar No. 713653
        Darren A. Shuler
        Georgia Bar No. 644276
        Michael B. Wakefield
        Georgia Bar No. 950517

        **KING & SPALDING LLP**
        1180 Peachtree Street, N.E.
        Atlanta, Georgia  30309-3531
        (404) 572-4600
        (404) 572-5135 (facsimile)
        dtetrick@kslaw.com
        dshuler@kslaw.com
        mwakefield@kslaw.com

        **Attorneys for Defendants**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| **BARBARA J. FULLER, et al.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION FILE NO.** |
| | ) | **1:11-CV-784-ODE** |
| **SUNTRUST BANKS, INC. et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 20, 2011, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF which will

automatically send a copy to the following attorneys of record:

Alan R. Perry, Jr.
**PAGE PERRY LLC**
1040 Crown Point Parkway
Suite 1050
Atlanta, Georgia  30338
aperry@pageperry.com

J. Brian McTigue
Bryan T. Veis
James A. Moore
**MCTIGUE & VEIS LLP**
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC 20016
bmctigue@mcgtiguelaw.com
bveis@mctiguelaw.com
jmoore@mctiguelaw.com


*/s/ Darren A. Shuler*
Georgia Bar No. 644276