IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

In re SunTrust Banks, Inc. 401(k) Plan
Affiliated Funds ERISA Litigation

Civil Action File No.:
1:11-CV-784-ODE

**CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT**

TABLE OF CONTENTS

I.    NATURE OF THE ACTION ............................................................1

II.   JURISDICTION AND VENUE .......................................................7

III.  PARTIES ........................................................................................7

      A.    Plaintiffs and their Knowledge...............................................7

      B.    Defendants..............................................................................12

IV.   FACTUAL BACKGROUND..........................................................18

      A.    THE 401(K) PLAN AND ITS FIDUCIARIES ...................18

      B.    DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES BY
            DISLOYALLY AND IMPRUDENTLY MONITORING 401(K)
            PLAN INVESTMENT OPTIONS AND DISLOYALLY AND
            IMPRUDENTLY SELECTING THE INTERNATIONAL
            EQUITY INDEX FUND...................................................25

      1.    Committee Defendants' Imprudent and Disloyal Monitoring............25

      2.    Committee Defendants' Breach in the Selection of the International
            Equity Index Fund...............................................................32

      3.    Defendant RidgeWorth's Fiduciary Breaches ...................................33

      4.    Defendant SunTrust's Fiduciary Breaches.........................................34

      5.    Defendants Lanier, Prince, Corell, and Gillani's Fiduciary
            Breaches ..............................................................................36

      6.    The High Fees and Poor Performance of the Affiliated Funds
            Robbed 401(k) Plan Participants of Their Retirement Savings .........37

      7.    Other Facts Relevant to Defendants' Breaches..................................41

V.    CLASS ACTION ALLEGATIONS ...............................................41

VI.   EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TOLLING
      OF THE STATUTE OF LIMITATIONS...................................45

i

VII.  CLAIMS FOR RELIEF ..................................................................................48

     COUNT I
     Breach of Duties of Loyalty and Prudence for Imprudent and Disloyal
     Monitoring of 401(k) Plan Investments during the Class Period, which
     Caused Losses to the 401(k) Plan (Violation of ERISA, 29 U.S.C. §1104
     by Committee Defendants)..........................................................................48

     COUNT II
     Breach of Duties of Loyalty and Prudence by Selecting the STI Classic
     International Equity Index Fund as an Investment Fund for the 401(k)
     Plan (Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants) ....50

     COUNT III
     Defendants Lanier, Prince, Correll, Chancy, and Gillani Breached Their
     ERISA Fiduciary Duties by Failing to Remove and Prudently and Loyally
     Monitor Committee Defendants ..................................................................51

     COUNT IV
     Defendant SunTrust Breached its ERISA Fiduciary Duties by Failing to
     Remove and Prudently Monitor Defendants Lanier, Prince, Correll,
     Chancy, and Gillani .....................................................................................53

     COUNT V
     Breach of Duties of Loyalty and Prudence by Providing Imprudent and
     Self-Interested Investment Advice to Committee Defendants (Violation
     of ERISA, 29 U.S.C. §1104 by Defendant RidgeWorth)..............................54

     COUNT VI
     Liability for Breach of Co-Fiduciary (Liability Pursuant to ERISA, 29
     U.S.C. §1105 of Defendant SunTrust and Defendant RidgeWorth).............55

     COUNT VII
     Breach of Duties of Loyalty and Prudence by Failing to Remove or
     Replace the Affiliated Funds as 401(k) Plan Investment Vehicles during
     the Class Period, which Caused Losses to the 401(k) Plan (Violation of
     ERISA, 29 U.S.C. §1104 by Committee Defendants) ..................................57

COUNT VIII
Liability for Failing to Remedy Breach of Predecessor Fiduciaries (ERISA
Violation Against Defendants Benefit Finance Committee, Arrieta,
Breeden, Chancy, Dierker, Gillani, Kuntz, Lienhard, Miller, Panther,
Rogers Jr., Shults, and Spiegel)....................................................................59

PRAYER FOR RELIEF ..........................................................................................63

# I.   <u>NATURE OF THE ACTION</u>

1.      This is a civil enforcement action brought pursuant to the Employee
Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C.
§1132(a)(2) & (a)(3), for violations of ERISA's fiduciary duty and prohibited
transaction provisions.  It is brought as a class action by Barbara J. Fuller, Selethia
Pruitt, Natalie Brown, Elaine Jefferson, Barbara A. Kennedy, and Mariah C.
Williams, all of whom are participants in the SunTrust Banks, Inc. 401(k) Plan
("401(k) Plan" or "Plan"), on behalf of the 401(k) Plan and all similarly situated
Plan participants and beneficiaries (henceforth, collectively, "participants"), and all
predecessor plans.[1]

2.      This suit is about corporate self-dealing at the expense of a company's
own employee retirement plan.  Defendants include SunTrust Banks, Inc.
("SunTrust" or the "Company"), the SunTrust Benefits Plan Committee ("Plan
Committee"), the SunTrust Benefits Finance Committee ("Benefits Finance
Committee"), and the committees' individual members, all of whom were at the
relevant time SunTrust employees (collectively the committees and their members

---

[1] This complaint represents the consolidation of the case originally brought by
Barbara J. Fuller in this Court at 1:11-cv-00784-ODE, with the subsequently filed
cases brought by Sandra D. Stargel and Selethia Pruitt at 1:12-cv-03822-ODE and
Natalie Brown, Elaine Jefferson, Barbara A. Kennedy, and Mariah C. Williams at
1:14-cv-02965-ODE.  The complaint is filed pursuant to the order entered in those
cases on February 24, 2016.

are the "Committee Defendants").[2]  Defendants are all 401(k) Plan fiduciaries who are required by ERISA to act prudently and solely in the interest of the Plan's participants when acting with respect to the 401(k) Plan.

3.     Committee Defendants, rather than fulfilling their ERISA fiduciary duties ("the highest known to law"[3]), favored the economic interests of SunTrust and its affiliates.  They did so during the Class Period (April 10, 2004 through December 31, 2012) by repeatedly and improperly favoring for the 401(k) Plan investment options affiliated with SunTrust, which enriched SunTrust since its affiliate RidgeWorth Capital Management, Inc. ("RidgeWorth"), which served as the investment advisor for those funds, collected the fees charged by those investment options.  Specifically, during the Class Period, Committee Defendants (i) selected one SunTrust-affiliated fund for the Plan, the STI Classic International Equity Index Fund, without considering alternatives or otherwise engaging in a prudent and loyal selection process, and (ii) failed to prudently and loyally fulfill their duty to monitor the funds in the 401(k) Plan.

_____

[2] The Benefits Finance Committee was created and assumed the authority and responsibility with respect of 401(k) Plan investment decisions from the Plan Committee effective July 1, 2011.  Hence, "Committee Defendants" refers to members of the Plan Committee prior to that date, and members of the Benefits Finance Committee on and after that date.

[3] Herman v. NationsBank Trust, 126 F.3d 1354, 1361 (11th Cir. 1997) (internal quotation marks omitted).

4.      Committee Defendants' pursuit of SunTrust's, rather than participants', interests in monitoring the funds in the 401(k) Plan during the Class Period was reflected by the following acts, among others:  (i) permitting the affiliated and conflicted investment advisor for SunTrust's proprietary funds, RidgeWorth, to routinely participate in Plan fiduciary committee meetings and serve as a primary source of recommendations for deciding what investment options to remove or replace in the Plan, (ii) ignoring warnings from an outside investment advisor regarding the poor performance of several proprietary funds, (iii) failing to apply the same performance standards to proprietary and non-proprietary funds, (iv) removing non-proprietary funds from the 401(k) Plan for poor performance but not proprietary funds, and (v) waiting until 2008 to adopt a written investment policy for monitoring the Plan's investment options, and then adopting a policy with lax standards that relied upon the opinions of conflicted fiduciaries and permitted continued investment in the proprietary funds.

5.      As is discussed further below, a SunTrust employee, Steve Castle, who was involved with monitoring Committee Defendants' performance, stated that during the Class Period "he was concerned that the Committee was not adequately monitoring investments."

6.      As a result of Defendants' disloyal and imprudent monitoring, several SunTrust proprietary funds that would have been removed by a prudent and loyal

3

fiduciary remained in the 401(k) Plan during the Class Period.  The funds that should have been removed are the following eight mutual funds:  the STI Classic Capital Appreciation Fund (later renamed the "Large Cap Growth Fund"), STI Classic Small Cap Growth Fund, STI Classic Growth and Income Fund (later renamed the "Large Cap Relative Value Fund" and then renamed the "Large-Cap Core Equity Fund"), the STI Classic Mid-Cap Equity Fund (later renamed "Mid-Cap Core Equity"), the STI Classic Investment Grade Bond Fund, the STI Classic Short-Term Bond Fund, the STI Classic Prime Quality Money Market Fund, and the STI Classic International Equity Index Fund.[4]  (Collectively, the "Affiliated Funds").

7.     A prudent and loyal fiduciary who fulfilled his duty to monitor the funds would have removed the Affiliated Funds during the Class Period because, *inter alia*, by that point in time they had an extended history of poor performance. Moreover, it was clear that the poor performance did not justify the high management fees charged by these funds.

8.     The class is all participants in the 401(k) Plan (and their beneficiaries), excluding the Defendants, who had a balance through their Plan

---

[4] Effective March 31, 2008, STI Classic Funds were renamed the RidgeWorth Funds.  However, for the purpose of this complaint the former name will be employed.  Ticker symbols for these mutual funds, in the order listed, are: STCAX, SSCTX, CRVAX, SAGTX, STIGX, SSBTX, SQTXX, and SIEIX.

accounts in any of the Affiliated Funds at any time from April 10, 2004 to

December 31, 2012 ("Class Period").

9.      As a result of Defendants' breaches of fiduciary duty, the 401(k) Plan

and its participants have lost tens of millions of dollars during the Class Period in

high fees and poor performance compared to what they could have earned in

unaffiliated investment vehicles.  As is discussed further below, if, during the Class

Period, the 401(k) Plan had offered comparable funds offered by the well-

respected company, The Vanguard Group, Inc. ("Vanguard"), instead of the

Affiliated Funds, participants would have earned roughly $92 million more for

their retirement.[5]

10.      During much of the Class Period, the 401(k) Plan offered between 9

and 17 investment vehicles for retirement assets held within the Plan.  (These

numbers exclude the SunTrust Stock Fund, which invested primarily in SunTrust

Stock and is not at issue in this complaint).  At the inception of the Class Period,

the only investment funds offered were SunTrust proprietary funds.

---

[5] Mutual Funds offered by Vanguard, and separately managed accounts and
collective trusts, are appropriate comparisons for evaluating mutual fund
performance.  Vanguard is different from other mutual fund companies in that their
fund boards are truly independent and engage in genuine arms-length negotiation
when it comes to setting investment advisory fees for their funds, and fees can
directly impact performance.  *See* John P. Freeman, Stuart L. Brown, & Steve
Pomerantz, Mutual Fund Advisory Fees:  New Evidence and a Fair Fiduciary Duty
Test, 61 *Okla. L. Rev.* 83, 95-103 (2008).

11.     Effective January 2, 2013, all the Affiliated Funds and all SunTrust proprietary mutual funds were removed from the 401(k) Plan investment lineup. Added in their stead were investment funds offered by Vanguard.  In effect, 401(k) Plan fiduciaries appear to have taken the advice implied in this complaint — and first offered to them in this litigation via the class claim filed in 2008 that preceded this complaint (discussed *infra*).  However, their actions are of course too late to help the thousands of participants who have collectively lost tens of millions of dollars of retirement income through the Affiliated Funds' poor performance and high fees.

12.     The allegations in this complaint are based upon counsel's investigation of public documents, including filings with the U.S. Department of Labor and U.S. Securities and Exchange Commission, documents provided to Plaintiffs because of their status as Plan participants, and documents provided by Defendants in the course of exhaustion of administrative remedies, as discussed further below.  Allegations regarding Defendants' conduct after 2008 are made on information and belief as Plaintiffs have no internal documents for that period.  As many facts are still within Defendants' exclusive possession, Plaintiffs may make further changes to the claims herein after discovery.

6

## II.   <u>JURISDICTION AND VENUE</u>

13.     This Court has subject matter jurisdiction pursuant to 29 U.S.C.

§1132(e)(1).

14.     Venue is proper in this district pursuant to ERISA, 29 U.S.C.

§1132(e)(2) because many of the breaches complained of occurred in this District,

the Plan is administered in this District, and one or more of the Defendants reside

or may be found in this District.

## III.   <u>PARTIES</u>

### A.   <u>Plaintiffs and their Knowledge</u>

15.     **Plaintiff Barbara J. Fuller ("Fuller")**.  Plaintiff Fuller is a

participant in the 401(k) Plan.  She worked for SunTrust, and several predecessor

entities, for thirty-eight years, in a variety of clerical positions.  Her employment

ended in late 2005, and she received a lump sum distribution of the balance of her

account in the 401(k) Plan on or about October 12, 2005.   She invested in the

Affiliated Funds during the Class period.  Ms. Fuller has had her retirement assets

invested in the STI Classic Short-Term Bond Fund,  STI Classic Prime Quality

Money Market Fund, and the STI Classic Growth and Income Fund.

16.     Prior to March 2011, Plaintiff Fuller was unaware, *inter alia*, (i) that

the 401(k) Plan had fiduciaries or the identity of those fiduciaries, (ii) that

Defendant fiduciaries met several times per year during the Class Period to review

7

the status of 401(k) Plan investment options, (iii) of the facts relating to the

processes Defendants employed or failed to employ when monitoring the

performance of, or making decisions regarding whether to select, remove, or

replace, 401(k) Plan investment options, (iv) that the fees charged by the Affiliated

Funds were high compared to other investment options that could have been

offered in the 401(k) Plan, (v) that during the Class Period the historical

performance of the Affiliated Funds was poor compared to other investment

options that could have been offered in the 401(k) Plan, (vi) that Defendant

fiduciaries were aware of better performing lower cost alternatives to the Affiliated

Funds but nevertheless failed to offer them instead of the Affiliated Funds, (vii)

that the Affiliated Funds were SunTrust proprietary funds, (viii) that the

investment manager of the Affiliated Funds was a SunTrust subsidiary, or (ix) that

SunTrust stood to benefit financially if the Affiliated Funds, rather than non-

proprietary funds, were offered in the 401(k) Plan.

17.     **Plaintiff Selethia Pruitt ("Pruitt")**.  Plaintiff Pruitt resides in

College Park, Georgia and is a participant in the 401(k) Plan.  She worked for

SunTrust for thirty-eight years, performing bookkeeping, clerical, and other duties

at bank branches and company call centers, and is now retired.  She invested in the

Affiliated Funds during the Class Period through October 2010, including the STI

8

Classic Investment Grade Bond Fund and the STI Prime Quality Money Market Fund.

18.     Prior to May 2012, Plaintiff Pruitt was unaware, *inter alia*, (i) that the 401(k) Plan had fiduciaries or the identity of those fiduciaries, (ii) that Defendant fiduciaries met several times per year during the Class Period to review the status of 401(k) Plan investment options, (iii) of the facts relating to the processes Defendants employed or failed to employ when monitoring the performance of, or making decisions regarding whether to select, remove, or replace, 401(k) Plan investment options, (iv) that the fees charged by the Affiliated Funds were high compared to other investment options that could have been offered in the 401(k) Plan, (v) that during the Class Period the historical performance of the Affiliated Funds was poor compared to other investment options that could have been offered in the 401(k) Plan, (vi) that Defendant fiduciaries were aware of better performing lower cost alternatives to the Affiliated Funds but nevertheless failed to offer them instead of the Affiliated Funds, (vii) that the Affiliated Funds were SunTrust proprietary funds, (viii) that the investment manager of the Affiliated Funds was a SunTrust subsidiary, or (ix) that SunTrust stood to benefit financially if the Affiliated Funds, rather than non-proprietary funds, were offered in the 401(k) Plan.

19.   **Plaintiff Natalie Brown ("Brown").**  Plaintiff Brown resides in Chesapeake, Virginia and is a participant in the 401(k) Plan.  She worked for SunTrust from October 31, 2005 through July 15, 2012 as a teller coordinator.  She invested in the Affiliated Funds during the Class Period:  the STI Prime Quality Money Market Fund from September 29, 2006 through October 29, 2010, and the STI Classic Investment Grade Bond Fund from 2008 through 2012.

20.   **Plaintiff Elaine Jefferson ("Jefferson").** Plaintiff Jefferson resides in Virginia Beach, Virginia and is a participant in the 401(k) Plan.  She worked for SunTrust, or its predecessors, for over 30 years through February 2013.  She worked in the call center.  She invested in the Affiliated Funds during the Class Period: the STI Prime Quality Money Market Fund from September 29, 2006 through October 29, 2010, and the STI Classic Investment Grade Bond Fund from 2008 through 2012.

21.   **Plaintiff Barbara A. Kennedy ("Kennedy").**  Plaintiff Kennedy resides in Portsmouth, Virginia and is a participant in the 401(k) Plan. She worked for SunTrust, or its predecessors, for approximately 19 years.  She worked at bank branches in various managerial capacities.  She invested in the Affiliated Funds during the Class Period:  the STI Classic Small-Cap Growth Stock Fund from 2010 through 2011, the STI Classic Mid-Cap Equity Fund in 2010, the STI Classic

International Equity Index Fund from 2010 to 2012, and the STI Classic Growth and Income Fund from 2010 to 2011.

22.     **Plaintiff Mariah C. Williams ("Williams")**.  Plaintiff Williams resides in Hampton Virginia and is a participant in the 401(k) Plan. She worked for SunTrust since 1998 in various capacities including branch manager, and retired in May 2013.  She invested in the Affiliated Funds during the Class Period:  the STI Classic Mid-Cap Equity Fund in 2010, the STI Classic International Equity Index Fund from 2009 to 2012, the STI Classic Growth and Income Fund from 2009 to 2011, the STI Classic Capital Appreciation Fund from 2009 through 2012, and the STI Classic Investment Grade Bond Fund from 2009 to 2012.

23.     Prior to May 2013, Plaintiffs Brown, Jefferson, Kennedy, and Williams were unaware, *inter alia*, (i) that the 401(k) Plan had fiduciaries or the identity of those fiduciaries, (ii) that Defendant fiduciaries met several times per year during the Class Period to review the status of 401(k) Plan investment options, (iii) of the facts relating to the processes Defendants employed or failed to employ when monitoring the performance of, or making decisions regarding whether to select, remove, or replace, 401(k) Plan investment options, (iv) that the fees charged by the Affiliated Funds were high compared to other investment options that could have been offered in the 401(k) Plan, (v) that during the Class Period the historical performance of the Affiliated Funds was poor compared to

11

other investment options that could have been offered in the 401(k) Plan, (vi) that Defendant fiduciaries were aware of better performing lower cost alternatives to the Affiliated Funds but nevertheless failed to offer them instead of the Affiliated Funds, (vii) that the Affiliated Funds were SunTrust proprietary funds, (viii) that the investment manager of the Affiliated Funds was a SunTrust subsidiary, or (ix) that SunTrust stood to benefit financially if the Affiliated Funds, rather than non-proprietary funds, were offered in the 401(k) Plan.

**B.   Defendants**

24.   **Defendant SunTrust Banks, Inc. ("SunTrust").**   SunTrust is a named fiduciary of the 401(k) Plan.  SunTrust is a large commercial banking organization and provides a broad range of financial services to consumers and corporate customers.  Through its subsidiary SunTrust Bank, SunTrust provides deposit, credit, and trust and investment services.  SunTrust primarily operates in Virginia, Florida, Georgia, Maryland, North Carolina, South Carolina, Tennessee, and the District of Columbia.  Its corporate headquarters are in Atlanta, Georgia.

25.   **Chairman of the Compensation Committee, Joseph L. Lanier, Jr. ("Lanier").**  Defendant Lanier was a member of the SunTrust Board of Directors ("Board") since 1980 and during a portion of the Class Period. He served as Chairman of the Board's Compensation Committee ("Compensation Committee") since at least November 2001 through part of 2004.  The chairman of the

Compensation Committee is a named fiduciary of the 401(k) Plan.  As chairman of the Compensation Committee, Defendant Lanier was responsible for appointing, monitoring, and removing members of the Benefits Plan Committee.

26.     **Chairman of the Compensation Committee, Larry L. Prince ("Prince").**  Defendant Prince was a member of the Board since 1996 and during much or all of the Class Period. He served as Chairman of the Compensation Committee from at least 2004 through part of 2008.  The chairman of  the Compensation Committee is a named fiduciary of the 401(k) Plan.  As Chairman of the Compensation Committee, Defendant Prince was responsible for appointing, monitoring, and removing members of the Benefits Plan Committee.

27.     **Chairman of the Compensation Committee, Alston D. Correll ("Correll").**  Defendant Correll was a member of the Board.  He served as Chairman of the Compensation Committee since on or about mid-2008 and during some or all of the remainder of the Class Period.  The chairman of the Compensation Committee is a named fiduciary of the 401(k) Plan.  In that capacity, Defendant Correll was responsible for appointing, monitoring, and removing members of the Benefits Plan Committee.

28.     **The SunTrust Benefits Plan Committee ("Plan Committee").**  The Plan Committee and its individual members serve as a named fiduciary and administrator of the 401(k) Plan.  The Plan Committee also had an Investment

Subcommittee.  For purposes of this Complaint, the Investment Subcommittee is

treated as a part of the Plan Committee, rather than a separate fiduciary entity.

Individuals who served on the Plan Committee during the Class Period include:

      A.    **Jorge Arrieta.**  Defendant Arrieta was a member of the Plan

Committee from November 2002 through July 2004.

      B.    **Mimi Breeden.**  Defendant Breeden is a member of the Plan

Committee and has been since May 2006.  She is also a Corporate Executive Vice

President and Director of Human Relations for the Company.

      C.    **Mark Chancy.**  Defendant Chancy is a member and chairman

of the Plan Committee.  He has served as chairman from February 2005, and has

served as a committee member since February 2002.  He also served as SunTrust's

Chief Financial Officer ("CFO") from on or about 2004 through the end of April

2011.  Effective on or about 2008, the CFO became a named fiduciary of the

401(k) Plan.  As CFO, Defendant Chancy was responsible for appointing,

monitoring, and removing members of the Benefits Plan Committee.  He is

currently a SunTrust Executive Vice President.

      D.    **David Dierker**.  Defendant Dierker is a member of the Plan

Committee and has been since May 2005.  He is also a Senior Executive Vice

President, and Chief Administrative Officer, for the Company.

E.     **Ted Hoepner**.  Defendant Hoepner was a member of the Plan

Committee and served as chairman from at least February 2000 through November

2004.

F.     **Ken Houghton.**  Defendant Houghton was a member of the

Plan Committee from at least February 2000 through February 2008.

G.     **Thomas Kuntz**.  Defendant Kuntz is a member of the Plan

Committee and has been since February 2005.  He is also a Corporate Executive

Vice President for the Company.

H.     **Donna Lange.**  Defendant Lange is a member of the Plan

Committee and has been since at least February 2000.  She is also Senior

Executive Vice President, Employee Benefits, for the Company.

I.     **Jerome Lienhard.**  Defendant Lienhard is a member of the

Plan Committee and has been since August 2006.  He served as Corporate

Treasurer for the Company during much of the Class Period.

J.     **Gregory Miller.**  Defendant Miller is a member of the Plan

Committee and has been since November 2000.  He is also Senior Vice President

for the Company.

K.     **Thomas Panther.**  Defendant Panther is a member of the Plan

Committee and has been since February 2005.  He is also Chief Accounting

Officer, Senior Vice President, and Controller of the Company.  Prior to becoming

15

a member of the Plan Committee, Defendant Panther was employed by RidgeWorth.

L.     **William H. Rogers, Jr.**  Defendant Rogers is a member of the Plan Committee and has been since December 2001.  He is also SunTrust's Chief Executive Officer and Chairman of its Board of Directors.

M.     **Christopher Shults.**  Defendant Shults is a member of the Plan Committee and has been since February 2008.

N.     **John Spiegel.**  Defendant Spiegel was a member of the Plan Committee from November 2000 through June 2004.

O.     **Mary Steele.**  Defendant Steele was a member of the Plan Committee from at least February 2000 through August 2005.  She is also Senior Vice President and Human Resources Director for the Company.

29.     **The SunTrust Benefits Finance Committee ("Benefits Finance Committee").**  Effective July 1, 2011, two fiduciary committees were established for the SunTrust benefit plans.  The Benefits Plan Committee continued to be responsible for administration, but, on information and belief, the Benefits Finance Committee became responsible for all decisions regarding 401(k) Plan investments.

30.     The Plan Committee, and its individual members from the beginning of the Class Period through July 1, 2011, and the Benefits Finance Committee, and

16

its individual members from July 1, 2011 through the end of the Class Period, are,

collectively, the "**Committee Defendants**".

31.     **Aleem Gillani.**  Defendant Gillani became Chief Financial Officer of

SunTrust ("CFO") on or about April 27, 2011.  Effective on or about 2008, the

CFO became, ex officio, a named fiduciary of the 401(k) Plan.  As CFO,

Defendant Gillani is a member and chair of the Benefits Finance Committee and is

responsible for appointing, monitoring, and removing members of the benefit

finance committee.  From on or about April 27, 2011 through at least July 1, 2011,

Defendant Gillani also served on the Plan Committee.

32.     **John and Jane Does 1-20.**  Plaintiffs do not currently know the

identity of all of the Plan's fiduciaries, in particular the identities of all the persons

who served on the Plan Committee, on the Benefits Finance Committee, and all

Chairs of the Compensation Committee, during the Class Period.  Once the

identities of those not currently named, if any, are ascertained, Plaintiffs will seek

leave to join them under their true names.

33.     **Defendant RidgeWorth Capital Management, Inc.**

**("RidgeWorth").**  RidgeWorth is a SunTrust subsidiary that was created on or

about March 2008.  RidgeWorth provides investment advisory services to the

Affiliated Funds, and receives millions of dollars annually in fees from Plan assets

for those services.  (Except it ceased being the investment advisor for the Prime

17

Quality Money Market Fund on or about the last half of 2010, when its money market business was sold to Federated Investors, Inc.).  RidgeWorth is the successor in interest, for purposes relevant to this Complaint, of the mutual fund advisory division of Trusco Capital Management, Inc. ("Trusco").  For purposes of this Complaint, "RidgeWorth" refers to RidgeWorth Capital Management, Inc. from March 2008 to the present and Trusco prior to March 2008.  RidgeWorth is and was a 401(k) Plan fiduciary in that its representatives attended Plan Committee meetings and provided advice that was a principal basis for the Committee Defendants' investment decisions with respect to the 401(k) Plan.  RidgeWorth is also a fiduciary and the investment manager for the SunTrust Bank, Inc. Retirement Plan, a defined benefit plan.

## IV.  FACTUAL BACKGROUND

### A. THE 401(K) PLAN AND ITS FIDUCIARIES

34.    At all relevant times, the 401(k) Plan was an "employee pension benefit plan" within the meaning of ERISA, 29 U.S.C. §1002(2)(A), and was established to provide retirement income to SunTrust employees.  The 401(k) Plan is a defined contribution plan.  Effective January 1, 2002 the 401(k) Plan was an ESOP (employee stock ownership plan) with IRS Code Section 401(k) features.  Effective January 1, 2007, the 401(k) Plan was converted from an ESOP with 401(k) features, to a 401(k) Plan with ESOP features.

18

35.     SunTrust also sponsored a traditional defined benefit Pension Plan.  A plan sponsor has an obligation to fund a defined benefit plan sufficiently to provide the promised pension benefits to participants, and to increase funding if the funding level appears insufficient.  Moreover, any surplus may revert to the sponsor if a defined benefit plan terminates.  29 U.S.C. §1344(d).  For this reason, good performance of investments in the SunTrust Pension Plan benefited SunTrust financially.  In contrast, participants bear the risk of losses in a defined contribution plan, such as a 401(k) Plan, and the plan sponsor ordinarily has no obligation to remedy investment losses resulting from market declines in such plans.

36.     Effective January 1, 2008 the SunTrust Bank, Inc. Retirement Plan converted from a traditional defined benefit Pension Plan to a type of plan known as a "cash balance plan."

37.     Every employee benefit plan must provide for one or more named fiduciaries that jointly or severally possess the authority to control and manage the operation and administration of the plan.  ERISA, 29 U.S.C. §1102(a)(1).  Further, a person who functions as a fiduciary is a fiduciary, even if he or she is not named as such, so long as the person exercises any discretionary authority or control over the operation or administration of the plan or any authority or control over the

19

disposition of plan assets.  ERISA, 29 U.S.C. §1001(21)(A).  Each of the

Defendants was named as a fiduciary and/or functioned as one.

38.     SunTrust is a named fiduciary and the sponsor of the 401(k) Plan.

SunTrust had, at all applicable times, effective control over the activities of its

directors, officers and employees, including over their 401(k) Plan-related

activities.  SunTrust, acting through its Board, had the authority and discretion to

appoint, monitor, and remove members of the Board's Compensation Committee,

including the Chair.  SunTrust also had the authority to remove the CFO.

39.     The Chair of the Compensation Committee, including, during their

terms, Defendants Lanier, Prince, and Correll, was a named 401(k) Plan fiduciary

and was responsible for appointing and monitoring members of the Plan

Committee.  The Chair of the Compensation Committee had the right to remove

any member of the Plan Committee at any time.  The Chair appointed successors to

fill any vacancy in the Plan Committee's membership.

40.     The Plan Committee is a named fiduciary and administrator of the

401(k) Plan.  The Plan Committee consists of not fewer than three individuals who

are appointed by, monitored by, and served at the pleasure of the Chair of the

Compensation Committee.  The Plan Committee (and its individual members) had

the authority, discretion, and responsibility to select, monitor, and remove or

replace the 401(k) Plan's investment funds, including the Affiliated Funds.  Its specific responsibilities included, but were not limited to:

A.      Selecting and making decisions with respect to removing or replacing investment vehicles for the 401(k) Plan.

B.      Appointing members of the Plan Committee's Investment Sub-Committee.

C.      Monitoring the performance of the 401(k) Plan's investment funds and approving investment menu changes.

41.     The Benefits Finance Committee was created effective on or about July 1, 2011.  It is a named fiduciary of the 401(k) Plan.  On information and belief, as of that date, it assumed from the Plan Committee exclusive responsibility for making investment decisions with respect to the 401(k) Plan, including the responsibility and authority to remove investments from the 401(k) Plan lineup.

42.     On information and belief, effective on or about 2008 the CFO, including during their terms Defendants Chancy and Gillani, is a named fiduciary of the 401(k) Plan.  From 2008 until July 1, 2011, the CFO was chair of the Plan Committee, and had exclusive authority to appoint and remove members of the Plan Committee.  Effective July 1, 2011, the CFO was and is chair of the Benefits Finance Committee, and has exclusive authority to appoint and remove members of the Benefits Finance Committee.

21

43.     RidgeWorth is a SunTrust subsidiary and the investment advisor to the Affiliated Funds.  Its representatives regularly attend Plan Committee meetings in which decisions are made regarding whether to offer or maintain in the Plan investments in the Affiliated Funds it advises.  Pursuant to a mutual understanding and agreement with the Plan Committee, RidgeWorth renders individualized investment advice to the 401(k) Plan regarding such investment decisions that serve as a primary basis for the Committee Defendants' decisions regarding the 401(k) Plan's investment lineup, Plan investment policies, Plan portfolio composition, and diversification of Plan investments.  February 25, 2008 Plan Committee minutes described RidgeWorth as being the "adviser to the Committee for fund evaluation and selection."  RidgeWorth's compensation for giving this advice includes the investment fees it received from 401(k) Plan investments in the Affiliated Funds and other RidgeWorth advised funds.  It is thus a fiduciary pursuant to ERISA, 29 U.S.C. §1002(21)(A).

44.     Specific instances where RidgeWorth provided investment advice with respect to the 401(k) Plan are numerous and include the following.  On or about October 4, 2004, RidgeWorth representatives recommended to the Plan Committee that RidgeWorth's proprietary International Index Fund be added as a 401(k) Plan investment option, but it did not offer any alternatives.  At a September 27, 2006 Plan Committee meeting, Committee Defendant Mimi

Breeden asked John Floyd of RidgeWorth whether the Committee should consider additional fund alternatives for the 401(k) Plan that invested in Mid-Cap stocks, and Floyd responded that he believed participants might become confused if they were provided with too many options.  At a February 25, 2008 Plan Committee meeting, the RidgeWorth representative, Diane Schmidt, advised against retention of a non-proprietary fund in the 401(k) Plan, the Lazard Mid-Cap Portfolio Fund.

45.     In mid-2006 it was proposed at a Plan Committee meeting that sub-committees of the Plan Committee be formed.  One such subcommittee was the Investment Sub-Committee, which was responsible for monitoring 401(k) Plan investments.  In documents submitted to the Plan Committee it was suggested that John Floyd, a RidgeWorth employee, be a member of this subcommittee. Plaintiffs lack sufficient information at this time to determine whether this proposal was put into effect.

46.     The investment vehicles offered in the 401(k) Plan are not the mutual funds themselves, which trade in "shares" offered to the public and priced on national securities exchanges.  The investment vehicles offered to participants through the Plan were unitized investment funds that trade in units.  They are, in effect, custom funds that are unique to the 401(k) Plan.  On information and belief, these units include as the primary component of their value the corresponding mutual fund shares, but their value also reflects cash or a money market fund and

23

the assessment of Plan expenses not paid by ordinary fund shareholders.   Hence, the performance and expenses of the unitized versions of these funds differs from that of mutual funds which are publicly traded and available to the public.  For this reason, publicly available performance and expense information regarding the mutual funds, such as is available through prospectuses filed with the U.S. Securities and Exchange Commission, does not accurately reflect the performance and expenses of the unitized funds in the 401(k) Plan.  Performance and expense information regarding the unitized funds actually offered in the 401(k) Plan is not available to 401(k) Plan participants.

47.    Under ERISA, a Summary Plan Description ("SPD") is intended as an ERISA plan participants' principal source of information regarding the Plan.  The 401(k) Plan's SPD did not disclose that the Affiliated Funds were SunTrust proprietary funds, that the investment advisor was a SunTrust subsidiary, nor that that SunTrust subsidiary — and thereby SunTrust — benefited financially from investment of Plan assets in the Affiliated Funds.  It also did not disclose the amount of the fees charged by the Affiliated Funds.

**B. DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES BY DISLOYALLY AND IMPRUDENTLY MONITORING 401(K) PLAN INVESTMENT OPTIONS AND DISLOYALLY AND IMPRUDENTLY SELECTING THE INTERNATIONAL EQUITY INDEX FUND**

### 1. **Committee Defendants' Imprudent and Disloyal Monitoring**

48.     Committee Defendants had a fiduciary duty to loyally and prudently monitor the appropriateness of continuing to offer all the fund offerings in the 401(k) Plan, including the Affiliated Funds.

49.     Committee Defendants met approximately four or more times per year to discuss the affairs of SunTrust employee benefit plans, and met 33 times during a portion of the Class Period, between April 10, 2004 and March 25, 2008.

50.     At these meetings, the appropriateness of the 401(k) Plan investment funds was reviewed and monitored.  However, as reflected in committee minutes and related documents, the monitoring was both disloyal and imprudent. Committee Defendants placed the financial interests of SunTrust above those of Plan participants by favoring funds affiliated with SunTrust, where the fees paid would go to SunTrust affiliates.

51.     Defendants' improper favoritism and imprudence in monitoring the investment vehicles in the 401(k) Plan was expressed during the Class Period, *inter alia*, through the following conduct:

A.      Committee Defendants removed unaffiliated funds as investment vehicles for the 401(k) Plan on performance grounds.  However, prior to the inception of this litigation, no Affiliated Fund was ever removed as an investment vehicle despite the fact that Committee Defendants 1) repeatedly recognized serious performance issues with several of the Affiliated Funds during the Class Period, and 2) were aware that many better performing and lower cost investment options were available, such as mutual funds offered by the Vanguard Group, or low-cost collective trusts or separate accounts;[6]

B.      Committee Defendants were repeatedly warned by outside advisors during the Class Period that one of the Affiliated Funds, the STI Classic Capital Appreciation Fund, was dramatically underperforming its benchmark.  For example, they were advised on or about March 31, 2006 that "On an absolute basis over the last five years, the fund had a significantly lower return with a slightly lower level of risk than the index and median large cap core manager".  On or about June 30, 2006 they were advised that "selection returns ranked at the bottom

---

[6] "Separately Managed Account" refers to a professionally managed investment account offered by, e.g., a broker-dealer typically for a single entity in which the entity directly owns the securities in the account. "Collective Trust" refers to investment vehicles, other than mutual funds governed by the Investment Company Act of 1940, that are offered for investment to more than one investor. Such funds are typically offered by banks and are only available to high net worth investors such as institutional investors or retirement plans.

26

of the universe of large-cap core managers over short and long term.  Poor stock selection decisions caused the fund's two-year rolling information ratio to fall below the bottom five percent relative to other large-cap core managers".  Despite these repeated warnings, Committee Defendants took no action to remove or replace the fund in the 401(k) Plan lineup;

C.    Committee Defendants employed a conflicted advisor, RidgeWorth, to advise them regarding investment offerings in the 401(k) Plan. RidgeWorth directly benefited from retention of the Affiliated Funds in the Plan. Furthermore, Committee Defendants routinely permitted RidgeWorth to participate in Plan Committee meetings and decision-making that concerned investment issues.  The Plan Committee almost always adopted RidgeWorth's position with respect to selection and retention of investment vehicles for the 401(k) Plan, and, provided RidgeWorth offered a fund in the relevant asset class or fund category, RidgeWorth almost always advocated selection and retention of the funds for which it served as investment advisor — the Affiliated Funds.

D.    Prior to on or about 2006, Committee Defendants did not follow any systematic process for monitoring the performance or prudence of 401(k) Plan investment options.  Their monitoring of these options was haphazard and irregular.

27

E.    Though Committee Defendants eventually adopted a systematic monitoring process after suits were filed against other banks for improperly favoring their proprietary funds, this process was critically flawed for several reasons, including:  (i) the ultimate decision whether to remove a fund is completely left to the discretion of Committee Defendants — it is not dictated by objective criteria of underperformance; (ii) RidgeWorth evaluations of fund performance are at the heart of the monitoring process — thus, the monitoring process depended upon the opinion of a directly conflicted fiduciary.

F.    The flaws in Committee Defendants' systematic monitoring process were dramatically highlighted when Committee Defendants focused their attention on two underperforming funds in 2007 and 2008.  In 2007, Committee Defendants considered whether to remove or replace an underperforming proprietary fund, the STI Classic Capital Appreciation Fund, for which objective criteria indicated the highest level of alert under their process.[7]  After being informed by RidgeWorth that various changes had been made to fund management, Committee Defendants decided that the history of underperformance could be disregarded, and that the Fund would be retained.  They indicated that

---

[7] There is some ambiguity in the Plan Committee minutes regarding the identity of the fund being discussed.  Sometimes it also appears to be referred to as the "Trusco Core Equity Fund."

because of the changes, past performance should no longer be considered relevant to the fund. Committee Defendants ignored the fact that this decision, regardless of its merits, meant that they were approving the retention of a fund in the 401(k) Plan that essentially had no track record — a risky and imprudent act in and of itself. The Committee Defendants' monitoring process with respect to this fund was a sham. They ignored objective criteria and instead contrived a flimsy rationale to keep a proprietary fund in the 401(k) Plan. This process was in sharp contrast to consideration of an underperforming non-proprietary mutual fund in 2008, a fund managed by Lazard Asset Management. This fund was almost immediately removed from the 401(k) Plan with little discussion by Committee Defendants.

G.    Committee Defendants did not adopt an Investment Policy Statement ("IPS") with respect to the 401(k) Plan until on or about 2007. Adopting an IPS is considered a fiduciary best practice, and IPS's typically include procedures and standards for monitoring plan investments. Adopting a well-designed IPS earlier could have led Committee Defendants, at that time, to follow prudent and loyal monitoring procedures. However, the IPS that was adopted was poorly designed. It did not remedy the flaws in Committee Defendants' monitoring process because it essentially codified the lax standards and built-in conflicts of interest that had plagued the monitoring process. For example, it relied

29

heavily upon internal SunTrust and RidgeWorth analysis for determining whether a fund should be removed, and it permits selection and retention of investment vehicles charging a 2% expense ratio or greater (i.e. an annual charge of 2% of all assets invested) — which is exorbitant by any measure.

H.     An example of the flaws in the IPS is that in March 2007, an outside investment advisor (Towers Perrin) assigned the highest level of warning — "action necessary" — to one of the Affiliated Funds, the STI Classic Capital Appreciation Fund, but no action was taken because the opinions of internal SunTrust advisory groups overruled this recommendation.

I.     In May 2006 concerns were raised in a Plan Committee meeting regarding the poor performance of one of the Affiliated Funds, the STI Classic Prime Quality Money Market Fund, compared to its benchmark.  Instead of considering and evaluating alternatives to the fund, the Plan Committee decided to select a different benchmark that would be easier for the fund to beat.  This is an example of a well-known, but improper practice known as "benchmark shifting." When a fund looks bad in comparison to its chosen benchmark, a new, but inappropriate, benchmark is chosen, which makes the fund appear better than it is.

52.     In addition to imprudent and disloyal monitoring, Defendants' improper favoritism towards the Affiliated Funds was also evidenced by the following facts:

A.      An internal SunTrust document dated February 27, 2006 that was circulated at a Plan Committee meeting discussed investment options for the Pension Plan.  This document brazenly recommended Committee Defendants consider breaching their fiduciary duties to benefit the company.  The document admitted, with respect to proprietary fund investments, that better performing non-proprietary funds were readily available, that favoring non-proprietary funds generated significant income for SunTrust, and that favoring proprietary funds because of the financial benefit to the Company was a violation of fiduciary duties, *but nevertheless suggested that the benefit to SunTrust was a factor that should be considered*.  The document stated that the "Financial analysis of decision [of whether to go with proprietary or non-proprietary funds] should compare foregone revenue to reduced pension expense incurred by Company as a result of obtaining higher investment returns." In terms of negatives of going with non-proprietary funds, the document asserted that "Shift of assets to outside funds represents tangible loss of revenue to Company" and that shifting to outside funds would send a signal of " 'loss of confidence' in RidgeWorth's ability to manage assets." Factors favoring a shift to non-proprietary funds would be "**[f]avorable perception of fiduciary monitoring and oversight process working as it should**."  (Emphasis added).

31

B.     The Committee minutes reflect that Committee Defendants accepted as a valid reason for favoring proprietary funds the fact that providing 401(k) Plan assets for investment in such funds would benefit RidgeWorth because it would help to provide sufficient "seed money" to enable RidgeWorth to start its own funds in certain asset class categories.

C.     When a question arose regarding the legal propriety of offering primarily proprietary funds in the 401(k) Plan, Committee Defendants relied on RidgeWorth, a conflicted advisor, to provide legal advice on this issue.

### 2. **Committee Defendants' Breach in the Selection of the International Equity Index Fund**

53.     In addition to imprudent and disloyal monitoring, Committee Defendants also breached their duties within the Class Period by engaging in a disloyal and imprudent process in selecting the STI Classic International Equity Index Fund, one of the Affiliated Funds, as a 401(k) Plan investment option. Committee Defendants selected this fund not because it was in the best interest of participants, but because it was in the financial interests of SunTrust and its affiliates, since offering it in the 401(k) Plan would increase RidgeWorth's fee income.  In selecting this fund, on or about October 4, 2004, Committee Defendants considered no alternatives at all to this proprietary fund.  This was despite the fact that there are several funds in the same investment class and with

identical goals that have better performance and lower fees.  A handout distributed at the Plan Committee meeting of that date with RidgeWorth's recommendations explicitly notes in the "Other Funds Considered" column "N/A", meaning "not applicable."

### 3.  **Defendant RidgeWorth's Fiduciary Breaches**

54.    Defendant RidgeWorth, as fiduciary and investment advisor to the 401(k) Plan, was obviously conflicted when it came to recommending or evaluating any of the Affiliated Funds as 401(k) Plan investment vehicles since it also served as the investment advisor to all of those funds, and received fees proportional to the amount of assets invested in those funds.  Nevertheless, it freely participated in Committee Defendants' meetings, was present when Committee Defendants voted on whether to include and retain its funds in the 401(k) Plan, and repeatedly advocated that Committee Defendants include and/or retain the Affiliated Funds as 401(k) Plan investment vehicles.  When Committee Defendants determined to add investment options, Committee Defendants worked directly with RidgeWorth to develop a list of candidate funds.

55.    RidgeWorth breached its duties of prudence and loyalty to participants by failing to give impartial investment advice to Committee Defendants in conjunction with monitoring the appropriateness of continuing to offer the Affiliated Funds for the 401(k) Plan, and selecting the STI Classic

33

International Equity Index Fund for the Plan. As discussed above, prior to the
inception of this litigation, RidgeWorth repeatedly advised selection and retention
of its own funds for the 401(k) Plan. RidgeWorth also remained silent when it
should have advised removal of its funds. In addition to fee income, RidgeWorth
was concerned that removal of its funds from the 401(k) Plan's lineup would
negatively impact its reputation and business with other plans and investors.

56.    Committee Defendants knew RidgeWorth was conflicted but
nevertheless relied on its advice.

### 4. **Defendant SunTrust's Fiduciary Breaches**

57.    SunTrust knew or should have known that the Committee Defendants
were breaching their duties under ERISA by causing the 401(k) Plan to do business
with SunTrust affiliates. Rather than taking steps to remedy these violations,
SunTrust welcomed and participated in the Committee Defendants' ERISA
violations.

58.    SunTrust also facilitated Committee Defendants' breaches by helping
to conceal them. For example, Steve Castle ("Castle"), an attorney and employee
in SunTrust's legal department, began attending Plan Committee meetings in
February 2006. He was interviewed by investigators in the course of the claims
process that preceded the filing of this lawsuit (described *infra*, §VI). During one
of those interviews he is reported to have said that "when he first came over [to the

34

Plan Committee in 2006] he was concerned that the Committee was not adequately monitoring investments and that he saw it as his task to improve the process."  In a follow-up interview two weeks later, he was asked what he meant by that remark. He then changed his story.  He contended that he did not recall making any such statement, that he did not believe that the Plan Committee's previous process was inadequate, and that "because he was not there, he had no knowledge of the process employed by the Committee prior to his arrival."

59.     Castle's statements and explanations are contradictory and not credible.  His original claim about the inadequacy of the Plan Committee's process was reported by a reliable source — attorneys at the law firm of DLA Piper who were interviewing him.  Moreover, his assertion that he could have no knowledge of the Plan Committee's process prior to his arrival is simply wrong.  As any attorney familiar with such matters knows, one can easily gain knowledge of the process employed by a committee in the past by reviewing the meeting minutes and speaking with participants in those meetings — just as counsel for both parties will do in this case.

60.     Therefore, on information and belief, Castle was not being honest in his subsequent statement that he believed that the Plan Committee's process had been adequate.  In so doing, SunTrust, through its employee Steve Castle,

35

facilitated Committee Defendants' breaches by endeavoring to conceal them from the Class Claimant in that claims process.

61.     SunTrust was also aware that Committee Defendants were breaching their duties, and that, as discussed *infra*, Defendants Lanier, Prince, Corell, Chancy, and Gillani were breaching their duties by failing to replace the members of the Plan Committee and Benefits Finance Committee.  SunTrust breached its own fiduciary duties when it failed to replace Lanier, Prince, Corell, Chancy, and Gillani.

5.  **Defendants Lanier, Prince, Corell, and Gillani's Fiduciary Breaches**

62.     Defendants Lanier, Prince, and Corell, as Chairmen of the SunTrust Board of Directors' Compensation Committee, and Defendants Chancy and Gillani, as SunTrust CFOs, had the authority and responsibility to appoint, monitor, and remove members of the Plan Committee.  They knew or should have known that Committee Defendants were breaching their fiduciary duties through the conduct discussed herein, but failed to replace or remove any of the individual Plan Committee members engaged in this misconduct.

63.     In addition, Defendant Gillani had the authority and responsibility to appoint, monitor, and remove members of the Benefits Finance Committee.  He knew or should have known that the members of that committee were breaching

36

their fiduciary duties to participants through the conduct discussed herein, but

failed to replace or remove any of the individual committee members engaged in

this misconduct.

6.  **The High Fees and Poor Performance of the Affiliated Funds Robbed 401(k) Plan Participants of Their Retirement Savings**

64.    The Affiliated Funds had high fees and poor performance compared to

numerous alternative investment options that could have been offered in the Plan.

(The alternative funds include, *inter alia*, the Vanguard funds mentioned elsewhere

in this complaint, as well as collective trusts and separate accounts that typically

have lower costs than mutual funds and are available to large institutional investors

such as 401(k) plans).  If the Affiliated Funds had been removed during the Class

Period (or in the case of the International Equity Index Fund, not selected to begin

with) Plan participants would have had tens of millions of dollars more for their

retirement.

65.    The high fees charged by the Affiliated Funds are illustrated by the

following: [8]

---

[8] As discussed above, the performance and fees of the versions of the Affiliated Funds in the 401(k) Plan differ from those in the publicly available versions of those funds.  The following allegations regarding fees and performance are based upon the fees and performance of the publicly available versions.  Plaintiffs currently lack comprehensive information regarding the fees and performance of the versions actually offered in the 401(k) Plan, but believe the fees were higher and the performance even worse than the publicly available versions.

37

A.      During a portion of the Class Period the STI Classic International Equity Index Fund charged an expense ratio of 1.12%.  A similar Vanguard offering (VIDMX) has an expense ratio of 0.13% — approximately one-tenth as much.

B.      The STI Classic Capital Appreciation Fund had an expense ratio of 1.24% during a portion of the Class Period.  A similar Vanguard index fund (VINIX) has an expense ratio of 0.05% — less than one-twentieth as much. In 2004 alone, this difference in expense ratio for this fund meant participants paid over $1.6 million more in expenses.  A comparable Vanguard actively managed fund (VPMCX) has an expense ratio of 0.45%.  Moreover, on information and belief, a similar separately managed account managed by RidgeWorth and approved by the Plan Committee for use in the Pension Plan has an expense ratio of 0.25% — one-fifth as much as the STI mutual fund.

C.      The STI Classic Prime Quality Money Market Fund, which was offered in the 401(k) Plan through most of the Class Period, had an expense ratio between 0.74% and 0.52% during the Class Period.  The same company itself offered a much cheaper vehicle which was not used in the 401(k) Plan — the STI Classic Institutional Cash Management Money Market Fund, which had an expense ratio of 0.17%.  Vanguard offers a still cheaper money market offering (VMRXX) which had an expense ratio of 0.13%.

38

D.    A comparison of the expense ratios of the remaining Affiliated Funds mutual funds during the Class Period with comparable Vanguard actively managed funds is as follows:  STI Classic Small Cap Growth Fund ranged from 1.19% to 1.24% (comparable Vanguard fund VEXPX is 0.49%); STI Classic Growth and Income Fund ranged from 0.83% to 0.99% (comparable Vanguard fund VDIGX is 0.38%); STI Classic Investment Grade Bond Fund ranged from 0.83% to 0.57% (comparable Vanguard fund VFICX is 0.24%); STI Classic Short-Term Bond Fund ranged from 0.75% to 0.46% (comparable Vanguard fund VFSTX is 0.24%); SunTrust Mid-Cap Equity Fund ranged from 1.25% to 1.02% (comparable Vanguard fund VMGRX is 0.51%).

66.    Examples of poor performance include:

A.    Plaintiffs have detailed performance information regarding the publicly-traded versions of seven of the eight Affiliated Funds (Plaintiffs lack complete information for the Prime Quality Money Market Fund).  **If the Plan had offered comparable Vanguard funds during the Class Period instead of these seven Affiliated Funds, participants would have earned roughly $90 million more for their retirement.**

B.    Approximate amounts that Plan participants would have earned if they had been invested in comparable Vanguard actively managed or index funds during the Class Period rather than one of the seven Affiliated Funds for

39

which Plaintiffs have detailed performance information are as follows:  STI Classic Capital Appreciation Fund (comparable Vanguard fund VPMCX would have earned over $22 million more); STI International Equity Index Fund (comparable Vanguard index fund VGTSX would have earned over $10 million more); STI Classic Growth and Income Fund (comparable Vanguard fund VDIGX would have earned over $15 million more); STI Classic Investment Grade Bond Fund (comparable Vanguard fund VFICX would have earned over $12 million more); STI Classic Short-Term Bond Fund (comparable Vanguard fund VFSTX would have earned over $2 million more); SunTrust Mid-Cap Equity Fund (comparable Vanguard fund VMGRX would have earned over $5 million more); STI Classic Small Cap Growth Fund (comparable Vanguard Index fund VISGX would have earned over $21 million more).

   C. Based on incomplete publicly available performance data, Plaintiffs estimate that a comparable Vanguard money market fund (VPMXX) would have earned at least $2 million more than the STI Prime Quality Money Market Fund offered in the Plan.[9]

---

[9] The funds identified as being comparable in this complaint are examples of comparable funds, but Plaintiffs are not asserting that they are the only comparable Vanguard funds or necessarily the most similar funds.  Plaintiffs may determine that other funds, or fund share classes, are appropriate benchmark funds for purposes of different or future analyses.

7.  **Other Facts Relevant to Defendants' Breaches**

67.     Committee Defendants were aware that employees were dissatisfied with the heavy concentration of proprietary funds in the 401(k) Plan. Nevertheless, some committee members openly expressed a belief that only proprietary funds should be offered in the 401(k) Plan.

68.     Proprietary SunTrust mutual funds were first added as investment options in the 401(k) Plan effective July 1, 1997.

69.     It was not until 2005, sixteen years after the Plan was created (on January 1, 1989), that any non-proprietary funds were added as investment options.

70.     During the Class Period, the number of investment funds offered in the 401(k) Plan ranged from 9 to approximately 18.  (These figures exclude the SunTrust Company Stock Fund, and the latter figure treats as a single fund various target date retirement funds that differed only in the target retirement date for which they were purportedly designed).

71.     Plan participants, including the named Plaintiffs herein, do not have access to minutes or other information regarding the proceedings of the Plan Committee or any other Defendant fiduciaries absent special circumstances.

## V.    CLASS ACTION ALLEGATIONS

72.     Plaintiffs bring this action on behalf of:

41

All participants and beneficiaries in the SunTrust Banks, Inc. 401(k) Plan, excluding the Defendants, who had a balance through their Plan accounts in any of the Affiliated Funds at any time from April 10, 2004 to December 31, 2012.

(The Affiliated Funds are the following eight funds: STI Classic Capital Appreciation Fund (later renamed the "Large Cap Growth Fund"), STI Classic Small Cap Growth Fund, STI Classic Growth and Income Fund (later renamed the "Large Cap Relative Value Fund" and then renamed the "Large-Cap Core Equity Fund"), STI Classic Mid-Cap Equity Fund (later renamed "Mid-Cap Core Equity"), STI Classic Investment Grade Bond Fund, the STI Classic Short-Term Bond Fund, STI Classic Prime Quality Money Market Fund, and STI Classic International Equity Index Fund).

73.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and

(b)(1), (b)(2), and/or (b)(3).

74.     The class satisfies the numerosity requirement because it is composed

of thousands of persons, in numerous locations. The 401(k) Plan has more than

38,000 participants. The number of class members is so large that joinder of all its

members is impracticable.

75.     Common questions of law and fact include:

A.      Whether Committee Defendants were ERISA fiduciaries

responsible for monitoring 401(k) Plan investments;

B.      Whether RidgeWorth was an ERISA fiduciary and investment

advisor to the 401(k) Plan;

C.     Whether Defendants Lanier, Prince, Corell, Gillani, and Chancy were ERISA fiduciaries to the 401(k) Plan with the responsibility for monitoring the performance of Committee Defendants in managing the Plan;

D.     Whether SunTrust was a fiduciary to the 401(k) Plan whose responsibilities included monitoring the performance of the Chair of the Compensation Committee and CFO in monitoring the performance of Committee Defendants;

E.     Whether Committee Defendants and RidgeWorth breached their ERISA fiduciary duties in monitoring the investment options in the 401(k) Plan;

F.     Whether Committee Defendants and RidgeWorth breached their ERISA fiduciary duties in selecting the STI Classic International Equity Index Fund as an investment option for the 401(k) Plan; and

G.     Whether the 401(k) Plan and its participants suffered losses as a result of the Defendants' fiduciary breaches.

76.    Plaintiffs' claims are typical of the claims of the Class. They have no interests that are antagonistic to the claims of the Class. They understand that this matter cannot be settled without the Court's approval.

77.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are committed to the vigorous representation of the Class. Plaintiffs'

43

counsel, McTigue Law LLP, devotes its practice primarily to ERISA class action litigation, and has been appointed lead or co-lead counsel in numerous such cases. Plaintiffs' liaison counsel, Page Perry, is experienced in class action litigation involving investments. Counsel have agreed to advance the costs of the litigation contingent upon the outcome. Counsel are aware that no fee can be awarded without the Court's approval.

78.    A class action is the superior method for the fair and efficient adjudication of this controversy. Joinder of all members of the class is impracticable. The losses suffered by some of the individual members of the class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights. Moreover, Defendants, as 401(k) Plan fiduciaries, were obligated to treat all class members similarly, i.e. as Plan participants governed by written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Plaintiffs are unaware of any difficulty in the management of this action as a class action.

79.    This Class may be certified under Rule 23(b).

A.    23(b)(1). As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying

44

adjudications with respect to individual class members that would establish

incompatible standards of conduct for the Defendants, or (B) adjudications

with respect to individual class members would, as a practical matter, be

dispositive of the interests of the other members not parties to the

adjudication or substantially impair or impede their ability to protect their

interests.

       B.    23(b)(3).  This action is suitable to proceed as a class action

under 23(b)(3) because questions of law and fact common to the members of

the Class predominate over individual questions, and a class action is

superior to other available methods for the fair and efficient adjudication of

this controversy.  Given the nature of the allegations, no class member has

an interest in individually controlling the prosecution of this matter.

## VI.   EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TOLLING OF THE STATUTE OF LIMITATIONS

       80.    In this circuit, exhaustion of administrative remedies is required prior

to bringing an ERISA fiduciary breach claim.  *Lanfear v. Home Depot*, 536 F.3d

1217 (11th Cir. 2008).  This requirement has been satisfied.

       81.    On April 24, 2008 a class claim was submitted on behalf of the 401(k)

Plan, by class member Mary E. Lee, to the 401(k) Plan Administrator that includes

the fiduciary breach claims brought in this Complaint, and which was brought on

behalf of the same Plan.  The inception date for the Class Period in the class claim was April 25, 2002.

82.     The Defendant Plan Committee delegated to a subcommittee of its members the authority to rule on the claim.  The claim was denied by the subcommittee via a letter dated August 29, 2008 and signed by Defendant Mimi Breeden.

83.     On November 26, 2008 an administrative appeal of the denial of that claim was initiated.  The Defendant Plan Committee delegated to one of its members, Defendant Thomas Panther, the authority to rule on the appeal.  By letter dated March 26, 2009, that appeal was denied by a subcommittee formed of members of the Plan Committee, and claimant Mary E. Lee was informed that the 401(k) Plan had no additional voluntary appeal procedures.

84.     In denying the class claim, 401(k) Plan fiduciaries, Defendants in this action, labored under a direct conflict of interest since they were some of the very entities and persons against whom the claim was brought.  In effect, Defendants were the judges of their own guilt.

85.     On March 12, 2011, Mary E. Lee assigned to any individual Plaintiffs named in this case all rights and interests Mary Lee had in her class claim,

including all rights to further litigate that claim.  Mary Lee is unable to continue to represent the class due to personal reasons.[10]

86.     Since filing of this complaint was delayed while administrative remedies were being exhausted on behalf of the class, Plaintiffs, and the 401(k) Plan and the class they seek to represent are entitled to tolling of the statute of limitations during the time the administrative class claim, including the appeal, was pending.[11]

---

[10] On information and belief, prior to March 11, 2008, Mary Lee was unaware, *inter alia*, (i) that the 401(k) Plan had fiduciaries or the identity of those fiduciaries, (ii) that Defendant fiduciaries met several times per year during the Class Period to review the status of 401(k) Plan investment options, (iii) of the facts relating to the processes Defendants employed or failed to employ when monitoring the performance of, or making decisions regarding whether to select, remove, or replace, 401(k) Plan investment options, (iv) that the fees charged by the Affiliated Funds were high compared to other investment options that could have been offered in the 401(k) Plan, (v) that during the Class Period the historical performance of the Affiliated Funds was poor compared to other investment options that could have been offered in the 401(k) Plan, (vi) that Defendant fiduciaries were aware of better performing lower cost alternatives to the Affiliated Funds but nevertheless failed to offer them instead of the Affiliated Funds, (vii) that the Affiliated Funds were SunTrust proprietary funds, (viii) that the investment manager of the Affiliated Funds was a SunTrust subsidiary, or (ix) that SunTrust stood to benefit financially if the Affiliated Funds, rather than non-proprietary funds, were offered in the 401(k) Plan.

[11] Some of the attorneys who represented the original claimant, Mary E. Lee, in the prosecution of her administrative class claim brought on behalf of the Plan also represent the named Plaintiffs herein.  Mary E. Lee had no contact with counsel regarding the claims asserted in her administrative claim, and was not represented by them, prior to March 11, 2008.

# VII.    CLAIMS FOR RELIEF

## COUNT I

**Breach of Duties of Loyalty and Prudence for Imprudent and Disloyal Monitoring of 401(k) Plan Investments during the Class Period, which Caused Losses to the 401(k) Plan (Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants)**

87.    All previous averments are incorporated herein.

88.    At all relevant times, the Committee Defendants were fiduciaries within the meaning of ERISA, 29 U.S.C. §1002(21)(A), by exercising authority and control with respect to the management of the Plan and its assets.

89.    Committee Defendants had an ongoing duty to loyally and prudently monitor 401(k) Plan investments, and to remove any that it determined were not appropriate for the 401(k) Plan.

90.    Committee Defendants breached their duties of prudence and loyalty under ERISA, 29 U.S.C. §§1104(a)(1)(A), (B) by disloyally and imprudently monitoring 401(k) Plan investment options during the Class Period, in particular the Affiliated Funds.  Committee Defendants breached their duties by employing imprudent and disloyal monitoring processes.  They gave preferential treatment to the Affiliated Funds because maintaining those funds in the 401(k) Plan financially benefited SunTrust and its subsidiary, RidgeWorth, since it generated millions of dollars in fee income for RidgeWorth.

48

91.     Committee Defendants' preferential treatment and improper monitoring processes during the Class Period included:

A.     applying different standards to decisions regarding monitoring and removal of non-proprietary versus proprietary SunTrust funds;

B.     failing to remove the Affiliated Funds despite poor performance and high fees during the Class Period;

C.     allowing conflicted fiduciary and investment advisor RidgeWorth to participate in Plan Committee meetings at which decisions regarding retention of RidgeWorth's own funds in the 401(k) Plan were discussed, and

D.     adopting a written monitoring process that relied upon subjective opinions of conflicted fiduciaries to determine whether to remove a fund.

92.     SunTrust employee, Steve Castle, who was involved with monitoring Committee Defendants' performance, admitted that during the Class Period "he was concerned that the Committee was not adequately monitoring investments."

93.     As a direct and proximate result of these breaches of duty, the Plan, and indirectly Plaintiffs and the Plan's other participants, realized losses.

49

94.     Pursuant to ERISA, 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1109(a), the Committee Defendants are liable to restore all losses suffered by the Plan caused by the Committee Defendants' breaches of fiduciary duty.

## COUNT II

**Breach of Duties of Loyalty and Prudence by Selecting the STI Classic International Equity Index Fund as an Investment Fund for the 401(k) Plan (Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants)**

95.     All previous averments are incorporated herein.

96.     The STI Classic International Equity Index Fund ("International Index Fund"), a SunTrust proprietary fund managed by RidgeWorth, was added as an investment option in the 401(k) Plan effective 2005.

97.     The Committee Defendants were required to prudently and loyally select funds for the 401(k) Plan.

98.     On or about October 4, 2004 Committee Defendants selected the International Index Fund as one of the 401(k) Plan's investment funds.  No alternatives to the International Index Fund were considered prior to selecting this fund for the 401(k) Plan.

99.     By their actions and omissions in causing the International Index Fund to be added as an option in the 401(k) Plan, Committee Defendants breached their duties of prudence and loyalty.

50

100.   The Committee Defendants breached their fiduciary duties with respect to selection of this fund because they gave no or inadequate consideration as to whether it was a prudent or appropriate choice for the 401(k) Plan, and selected the fund because of its affiliation with SunTrust and selecting it would bring millions of dollars in additional revenue to SunTrust affiliates.

101.   The International Index Fund offered poor performance and high fees. But for Defendants' breaches, a different fund with better performance and lower fees would have been selected.

102.   Committee Defendants' breaches in the selection of the International Index Fund caused millions of dollars in losses to the 401(k) Plan.

## COUNT III

**Defendants Lanier, Prince, Correll, Chancy, and Gillani Breached Their ERISA Fiduciary Duties by Failing to Remove and Prudently and Loyally Monitor Committee Defendants**

103.   All previous averments are incorporated herein.

104.   At all relevant times Defendants Lanier, Prince, Correll, Chancy, and Gillani, were 401(k) Plan fiduciaries within the meaning of ERISA, 29 U.S.C. §1002(21)(A), by exercising authority and control with respect to appointment, removal (if necessary), and monitoring of the members of the Plan Committee.

105.   Effective July 1, 2011 Defendant Gillani, acted as a 401(k) Plan fiduciary within the meaning of ERISA, 29 U.S.C. §1002(21)(A), by exercising

authority and control with respect to appointment, removal (if necessary), and monitoring of the members of the Benefits Finance Committee.

106.   Under ERISA, 29 U.S.C. §1104, an appointing fiduciary has an ongoing obligation to monitor the actions of fiduciaries which he or she appoints to ensure that the appointed fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets and the administration of the plan, and to take prompt and effective action to protect the plan and participants when they are not.  In addition, a monitoring fiduciary must provide the other fiduciaries with accurate information in its possession that it knows or reasonably should know that the other fiduciaries must have in order to prudently manage the plan and its assets.

107.   Defendants Lanier, Correll, Prince, Chancy, and Gillani violated their ERISA fiduciary duties of prudence and loyalty by failing to adequately monitor the performance of the Committee Defendants when they knew or should have known that Committee Defendants were failing to fulfill their ERISA fiduciary obligations.  In particular, Committee Defendants were breaching their duties of loyalty and prudence with respect to monitoring of the Affiliated Funds.

108.   As a direct and proximate result of these breaches of fiduciary duty, the 401(k) Plan, and indirectly Plaintiffs and the 401(k) Plan's other participants, lost tens of millions of dollars.

52

## COUNT IV

**Defendant SunTrust Breached its ERISA Fiduciary Duties by Failing to Remove and Prudently Monitor Defendants Lanier, Prince, Correll, Chancy, and Gillani**

109.   All previous averments are incorporated herein.

110.   At all relevant times Defendant SunTrust was a 401(k) Plan fiduciary within the meaning of ERISA, 29 U.S.C. §1002(21)(A), by exercising authority and control with respect to appointment, removal (if necessary), and monitoring of the chair of the Compensation Committee (including Defendants Lanier, Prince, and Correll) and the SunTrust CFO (including Defendants Chancy and Gillani) in the performance of their fiduciary duties.

111.   Defendant SunTrust violated its ERISA fiduciary duties of prudence and loyalty by failing to adequately monitor the performance of the chair of the Compensation Committee (including Defendants Lanier, Prince, and Correll) and the CFO (including Defendants Chancy and Gillani) when Suntrust knew or should have known that those Defendants were failing to fulfill their ERISA fiduciary obligations.  In particular, those Defendants were breaching their duties of loyalty and prudence by failing to remove the members of the Plan Committee and the Benefits Finance Committee, who were breaching their fiduciary duties.

53

112.   As a direct and proximate result of these breaches of fiduciary duty, the 401(k) Plan, and indirectly Plaintiffs and the 401(k) Plan's other participants, lost tens of millions of dollars to the Affiliated Funds' high fees and poor returns.

## COUNT V

**Breach of Duties of Loyalty and Prudence by Providing Imprudent and Self-Interested Investment Advice to Committee Defendants**
**(Violation of ERISA, 29 U.S.C. §1104 by Defendant RidgeWorth)**

113.   All previous averments are incorporated herein.

114.   At all relevant times, Defendant RidgeWorth was a fiduciary of the 401(k) Plan in that it regularly provided advice to Committee Defendants that was a principal basis for the Committee Defendants' investment decisions with respect to the 401(k) Plan, and in that it attended their committee meetings.  RidgeWorth was indirectly compensated for this advice via the fees it received on 401(k) Plan assets invested in the Affiliated Funds.

115.   Defendant RidgeWorth was required by ERISA to provide prudent and loyal advice to Committee Defendants regarding 401(k) Plan investment options that put the interests of 401(k) Plan participants first and foremost.

116.   Rather than providing such advice, Defendant RidgeWorth provided self-interested and imprudent advice that benefited its own mutual fund advisory business – both financially and in terms of reputation.  For example, as discussed above, it rarely or never recommended removal of the Affiliated Funds from the

54

401(k) Plan investment lineup, despite the fact that they performed poorly and had high fees, and numerous better performing and lower cost funds were available. And in recommending funds to add to the lineup, it often focused exclusively or primarily on its own funds, and disregarded the numerous better performing and lower cost funds available.

117.   As a direct and proximate result of these breaches of duty, the 401(k) Plan, and indirectly Plaintiffs and the 401(k) Plan's other participants, realized losses.

118.   Pursuant to ERISA, 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1109(a), Defendant RidgeWorth is liable to restore all losses suffered by the 401(k) Plan caused by Defendant RidgeWorth's breaches of fiduciary duty.

## COUNT VI

### Liability for Breach of Co-Fiduciary
### (Liability Pursuant to ERISA, 29 U.S.C. §1105 of Defendant SunTrust and Defendant RidgeWorth)

119.   All previous averments are incorporated herein.

120.   At all relevant times, SunTrust was a named 401(k) Plan fiduciary within the meaning of ERISA.

121.   As a fiduciary of the 401(k) Plan, SunTrust assumed a duty to protect the Plan from the improper actions of other Plan fiduciaries.  A co-fiduciary is liable for the breach of another co-fiduciary under ERISA, 29 U.S.C. §1105, if he

either knowingly participates in or conceals another fiduciary's breach of duty, or fails to make reasonable efforts under the circumstances to remedy the breach of another fiduciary when he has knowledge of the breach.

122.   Defendant SunTrust is liable as co-fiduciary because it was aware of, participated in, enabled, concealed, and failed to remedy Committee Defendants' breaches of fiduciary duty related to the Plan's selection of, and failure to remove, the Affiliated Funds as 401(k) Plan investment funds.

123.   SunTrust's actions enabling Committee Defendants' fiduciary breaches included the actions of its employee Steve Castle, a member of SunTrust's legal department who attended numerous Plan Committee meetings during the Class Period.  Castle was aware that the Plan Committee's process in monitoring, selecting, and deciding whether to remove 401(k) Plan investment funds was seriously deficient and in breach of ERISA.  Yet when pressed on this point by investigators he attempted to conceal his knowledge.

124.   Defendant SunTrust, through its board of directors, also enabled Defendants' breaches by failing to remove Defendants Lanier, Prince, Correll, Chancy, and Gillani when it knew that they failed to remove individual members of the Plan Committee and the Benefits Finance Committee who were breaching their duties.

125.   Defendant RidgeWorth knowingly participated in and enabled Committee Defendants' breaches of fiduciary duty in failing to remove the Affiliated Funds (and selecting the STI Classic International Equity Index Fund) by repeatedly advising, as discussed above, selection and retention of Affiliated Funds.  RidgeWorth gave this advice because it benefited financially and in terms of promotion and reputation of its mutual fund business if the Affiliated Funds were selected for, and were retained in, the 401(k) Plan.

126.   Defendant RidgeWorth also failed to remedy Committee Defendants' breaches of duty by failing to advise, in instances discussed above, removal of the Affiliated Funds and the selection of non-Affiliated Funds.

127.   As a direct and proximate result of SunTrust's and RidgeWorth's actions, the Plan and its participants lost tens of millions of dollars.  Pursuant to ERISA, 29 U.S.C. §§1132(a)(2) & 1109(a), SunTrust and RidgeWorth are liable to restore all losses to the Plan caused by the breaches of their co-fiduciaries.

## COUNT VII

**Breach of Duties of Loyalty and Prudence by Failing to Remove or Replace the Affiliated Funds as 401(k) Plan Investment Vehicles during the Class Period, which Caused Losses to the 401(k) Plan**
**(Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants)**

128.   All previous averments are incorporated herein.

57

129.    ERISA plan fiduciaries have a continuing duty to remove investments that are improper or unsuited for a plan.

130.    Committee Defendants, by their actions and omissions in repeatedly failing to remove or replace the Affiliated Funds, which offered poor performance and high fees, as investment options in the Plan during the Class Period breached their duties of prudence and loyalty under ERISA, 29 U.S.C. §§1104(a)(1)(A), (B).

131.    Committee Defendants committed these breaches during each of the Committee meetings that occurred periodically during each year of the Class Period.  At each of these meetings, the Committee Defendants had cause to remove the Affiliated Funds based on their poor performance and high fees, but failed to do so.

132.    As a direct and proximate result of these breaches of duty, the Plan, and indirectly Plaintiffs and the Plan's other participants, realized losses.

133.    Pursuant to ERISA, 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1109(a), the Committee Defendants are liable to restore all losses suffered by the Plan caused by the Committee Defendants' breaches of fiduciary duty.

## COUNT VIII

**Liability for Failing to Remedy Breach of Predecessor Fiduciaries
(ERISA Violation Against Defendants Benefit Finance Committee, Arrieta,
Breeden, Chancy, Dierker, Gillani, Kuntz, Lienhard, Miller, Panther, Rogers
Jr., Shults, and Spiegel)**

134.    All previous averments are incorporated herein.

135.    A fiduciary has a continuing duty to remedy breaches of predecessor fiduciaries, including breaches in the selection of investments.

136.    Prior to the inception of the Class Period, 401(k) Plan fiduciaries selected the following seven Affiliated Funds for the 401(k) Plan:  STI Classic Capital Appreciation Fund (created in June 1992 and first offered in Plan on or about July 1, 1997), STI Classic Small Cap Growth Fund (created October 1998 and first offered in 1999), STI Classic Growth and Income Fund (became part of STI fund family May 1999 and was first offered in 1999), STI Classic Mid-Cap Equity Fund (created on or about June 1994 and selected for the 401(k) Plan in August 2001), STI Classic Investment Grade Bond Fund (created June 1992 and first offered on or about July 1, 1997), the STI Classic Short-Term Bond Fund (created June 1992 and first offered on or about July 1, 1997), and the STI Classic Prime Quality Money Market Fund (created on or about 1992 and first offered on or about July 1, 1997).

137.   These seven Affiliated Funds were disloyally selected because, on information and belief, they were chosen because their presence in the 401(k) Plan financially benefited SunTrust and its affiliates.  They were also chosen with no or inadequate consideration of alternatives.  401(k) Plan fiduciaries thus breached their duties in selecting these funds for the Plan.

138.   Committee Defendants who are successor fiduciaries to those fiduciaries who selected those seven Affiliated Funds are Defendants Benefits Finance Committee, Arrieta, Breeden, Chancy, Dierker, Gillani, Kuntz, Lienhard, Panther, Rogers Jr., and Shults.  Committee Defendants Miller and Spiegel are also successor fiduciaries for those same funds with the exception of the STI Classic Mid-Cap Equity Fund, for which, on information and belief, they were among the fiduciaries who participated in the initial selection.  (Hereinafter these thirteen Committee Defendants, as well as other Committee Defendants who became members of the relevant committees after the selection of funds, but whose identities are currently unknown to Plaintiffs, are the "Successor Fiduciary Defendants.")

139.   The Successor Fiduciary Defendants were aware that their predecessor fiduciaries had breached their duties in selecting the Affiliated Funds.

140.   The Successor Fiduciary Defendants breached their duties by failing to take adequate steps to remedy, within the Class Period, their predecessors'

breaches in selecting the Affiliated Funds referenced in this Count.  Such steps could have included a full, unbiased, review of the suitability of the Affiliated Funds for the plan, and consideration of replacing them with appropriate alternative investments.

141.   As a result of the Successor Fiduciary Defendants' breaches, the Plan and its participants lost tens of millions of dollars.

WHEREFORE, Plaintiffs pray for relief as follows:

a)      Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

b)      Issue an order removing Defendants from their positions of fiduciary responsibility with respect to the Plan;

c)      Issue an order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' fiduciary breaches, including lost return on investments and payment of investment management fees;

d)      Order equitable restitution, disgorgement of all fees paid, and other appropriate equitable monetary relief against Defendants;

e)      Award Plaintiffs and the class their attorneys' fees and costs pursuant to ERISA, 29 U.S.C. §1132(g) and/or the Common Fund doctrine; and

f)      Award such other and further relief as the Court deems equitable and just.

61

Respectfully Submitted,

By /s/  James A. Moore_____

J. Brian McTigue (*admitted Pro Hac Vice*)
James A. Moore (*admitted Pro Hac Vice*)
**MCTIGUE LAW LLP**
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC  20016
Tel:  (202) 364-6900
Fax: (202) 364-9960
bmctigue@mctiguelaw.com
jmoore@mctiguelaw.com

*Counsel for Plaintiffs*

Alan R. Perry, Jr. (GA Bar #572508)
**PAGE PERRY**
1175 Peachtree St NE
100 Colony Square, Suite 1810
Atlanta, Georgia 30338
(P) 404-567-4400
(F)404-334-7213
aperry@pageperry.com

*Local Counsel for Plaintiffs*

62

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

In re SunTrust Banks, Inc. 401(k) Plan          Civil Action File No.:
Affiliated Funds ERISA Litigation                    1:11-CV-784-ODE

## <u>CERTIFICATE OF SERVICE</u>

On March 25, 2016, I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF which will automatically send a copy to the

following attorneys of record:

**Darren A. Shuler**                        **Michael Benjamin Wakefield**
King & Spalding, LLP-ATL            King & Spalding, LLP-ATL
1180 Peachtree Street, NE            1180 Peachtree Street, NE
Atlanta, GA 30309-3521              Atlanta, GA 30309-3521
404-572-2790                              404-572-2825
Email: dshuler@kslaw.com          Email: mwakefield@kslaw.com

**David Tetrick , Jr.**
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309-3521
404-572-4600
Email: dtetrick@kslaw.com

/s/ James A. Moore
McTigue Law LLP

63