## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____  )
                                   )
**IN RE SUNTRUST BANKS, INC.**  )    **CIVIL ACTION FILE**
**401(k) PLAN AFFILIATED**     )    **NO. 1:11-CV-784-ODE**
**FUNDS ERISA LITIGATION**   )
_____  )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

David Tetrick, Jr.
Georgia Bar No. 713653
dtetrick@kslaw.com
Darren A. Shuler
Georgia Bar No. 644276
dshuler@kslaw.com
Danielle Chattin
Georgia Bar No. 486940
dchattin@kslaw.com
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia 30309

Telephone: (404) 572-4600
Fax: (404) 572-5139

**Attorneys for Defendants**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................3

LEGAL STANDARD.............................................................................................3

ARGUMENT ..........................................................................................................4

   I.   THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT THE
      PLAN COMMITTEE'S MONITORING OF THE AFFILIATED FUNDS
      DURING THE CLASS PERIOD WAS DISLOYAL OR IMPRUDENT......5

      A.   Plaintiffs Have Adduced No Evidence that the Plan Committee's
         Monitoring of the Affiliated Funds Was Disloyal. ...................................5

      B.   Plaintiffs Have Adduced No Evidence that the Plan Committee's
         Monitoring of the Affiliated Funds Was Imprudent.............................7

         1.   The Undisputed Evidence Demonstrates that the Plan
             Committee's Monitoring Process Was Prudent. .............................8

         2.   The Opinions of Plaintiffs' Expert Samuel Halpern Are Not
             Evidence of an Imprudent Process.................................................10

         3.   Plaintiffs Have Failed to Establish Imprudent Monitoring
             Decisions with Respect to Any Specific Affiliated Fund..............14

   II.  THERE IS NO GENUINE ISSUE OF FACT THAT DEFENDANTS'
      PURPORTED BREACHES PROXIMATELY CAUSED A LOSS TO
      THE PLAN. ...........................................................................................19

      A.   Plaintiffs Have Not Established a Loss to the Plan. .............................20

      B.   Plaintiffs Have Not Established Loss Causation. ..................................22

   III.  PLAINTIFFS' DERIVATIVE CLAIMS FALL WITH THEIR
       FIDUCIARY BREACH CLAIMS. ............................................................24

CONCLUSION....................................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F. v. Providence Health Plan*,
   173 F. Supp. 3d 1061 (D. Or. 2016) ...................................................5

*Bank of Am., N.A. v. Sorrell*,
   248 F. Supp. 2d 1196 (N.D. Ga. 2002) ...............................................4

*Barchock v. CVS Health Corp.*,
   886 F.3d 43 (1st Cir. 2018) ................................................................7

*In re Beazer Homes USA, Inc. ERISA Litig.*,
   No. 1:07-CV-0952-RWS, 2010 WL 1416150 (N.D. Ga. Apr. 2,
   2010) .................................................................................................24

*Bussian v. RJR Nabisco, Inc.*,
   223 F.3d 286 (5th Cir. 2000) ..............................................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................4

*In re Citigroup ERISA Litig.*,
   No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009),
   *aff'd*, 662 F.3d 128 (2d Cir. 2011)...................................................24

*DiFelice v. U.S. Airways, Inc.*,
   497 F.3d 410 (4th Cir. 2007) ......................................................8, 12

*Dupree v. Prudential Ins. Co. of Am.*,
   No. 99-8337-Civ., 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007).............5, 13

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ...........................................5, 6, 12, 13

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011) ............................................................24

*Ironworkers Local No. 272 v. Bowen*,
   695 F.2d 531 (11th Cir. 1983) ...........................................................19

*Larson v. Allina Health Sys.*,
   350 F. Supp. 3d 780 (D. Minn. 2018)................................................13

*Leber v. Citigroup, Inc.*,
   No. 07 CIV. 9329, 2011 WL 5428784 (S.D.N.Y. Nov. 8, 2011).......................13

*Leigh v. Warner Bros., Inc.*,
   212 F.3d 1210 (11th Cir. 2000) ............................................................4

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011) ............................................................12

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ............................................................12

*New Orleans Emp'rs Int'l Longshoremen's Ass'n, AFL-CIO Pension
   Fund v. Mercer Inv. Consultants*,
   635 F. Supp. 2d 1351 (N.D. Ga. 2009).....................................7, 8, 18

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)...........................................................................4

*Perez v. DSI Contracting, Inc.*,
   No. 1:14-CV-282-LMM, 2015 WL 12618779 (N.D. Ga. Jul. 24,
   2014) ...............................................................................................4, 19

*Roth v. Sawyer-Cleater Lumber Co.*,
   61 F.3d 599 (8th Cir. 1995) ............................................................20

*Sacerdote v. N.Y. Univ.*,
   328 F. Supp. 3d 273 (S.D.N.Y. 2018) ........................................12, 20

*Smith v. Delta Air Lines, Inc.*,
   422 F. Supp. 2d 1310 (N.D. Ga. 2006)............................................24

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs.
   Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ........................................................4, 11

iii

*Tatum v. RJR Pension Inv. Comm.*,
  761 F.3d 346 (4th Cir. 2014) ...............................................................8

*Tatum v. RJR Pension Inv. Comm.*,
  855 F.3d 553 (4th Cir. 2017) ...................................................20, 23

*White v. Chevron Corp.*,
  No. 16-cv-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016).....................12

*Wilcox v. Georgetown Univ.*,
  No. CV 18-422 (RMC), 2019 WL 132281 (D.D.C. Jan. 8, 2019) ....................12

*Wildman v. Am. Century Servs., LLC*,
  No. 4:16-CV-00737, 2019 WL 293382 (W.D. Mo. Jan. 23, 2019) ...........*passim*

*Willett v. Blue Cross & Blue Shield of Ala.*,
  953 F.2d 1335 (11th Cir. 1992) ...................................................2, 19

**Statutes**

29 U.S.C. § 1104(a)(1)................................................................5, 7, 8

29 U.S.C. § 1108(c)(3)...................................................................12

29 U.S.C. § 1109 ......................................................................2, 4, 19

**Other Authorities**

29 C.F.R. § 2509.75-8.....................................................................24

42 Fed. Reg. 18,734 (April 8, 1977).......................................................13

56 Fed. Reg. 10,724 (Mar. 13, 1991) (to be codified at 29 C.F.R. pt.
  2550) .................................................................................13

Fed. R. Civ. P. 56(a)......................................................................4

## **INTRODUCTION**

The primary claims in this case are that the fiduciaries of the SunTrust Banks, Inc. 401(k) Plan ("Plan") violated ERISA[1] by offering eight affiliated mutual funds ("Affiliated Funds") to Plan participants between March 11, 2005 and December 31, 2012 ("Class Period"). Those claims are in Counts I and VII of Plaintiffs' Second Amended Complaint ("SAC"), which allege that the SunTrust Plan Committee[2] disloyally and imprudently monitored and failed to remove the Affiliated Funds. The SAC's other counts have either been dismissed,[3] are the subjects of pending summary judgment motions,[4] or are derivative of Counts I and VII.[5] Accordingly, the only remaining question before the Court is whether Plaintiffs have raised a genuine issue of material fact to support their allegations that the Plan Committee acted disloyally and imprudently when monitoring the Affiliated Funds during the Class Period. As explained below:

- Plaintiffs cannot support their claim that the Plan Committee breached its fiduciary duty of ***loyalty*** by failing to remove the Affiliated Funds

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*
[2] "Plan Committee" refers to the SunTrust Benefits Plan and Benefits Finance Committees, which oversaw the 401(k) Plan. 56.1 Stmt. ¶¶ 13–18.
[3] *See* May 2, 2018 Order (Doc. 219) (dismissing Count II).
[4] *See* RidgeWorth Capital Management, Inc.'s Mot. for Sum. J. (Doc. 223) (Count V); Defs.' Mot. for Sum. J. on Count VIII (Doc. 233) (Count VIII).
[5] These are Counts III, IV, and VI. *See* SAC ¶¶ 102–111, 118–126.

because they have adduced no evidence that the Plan Committee retained the Affiliated Funds for the purpose of benefitting SunTrust at the expense of Plan participants;

- Plaintiffs cannot support their claim that the Plan Committee breached its fiduciary duty of **prudence** by retaining the Affiliated Funds in the Plan's investment menu because (a) the undisputed evidence shows that the Affiliated Funds were, at worst, "mediocre" performers during the Class Period, and (b) Plaintiffs have adduced no specific evidence of imprudent decisions by the Plan Committee with respect to any of the eight Affiliated Funds, as this Court has admonished they must do;[6] and

- Even if Plaintiffs had adduced such evidence, they have failed to show that any alleged breach proximately caused a loss to the Plan, as required under 29 U.S.C. § 1109 and Eleventh Circuit law.[7]

Because Plaintiffs have failed to establish a genuine issue of material fact, and Defendants are entitled to judgment as a matter of law, the Court should enter summary judgment in Defendants' favor on Counts I, III, IV, VI, and VII.

---

[6] *See* June 27, 2018 Order (Doc. 222) at 7.
[7] *See Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1343 (11th Cir. 1992).

## BACKGROUND

Defendants' Statement of Undisputed Material Facts ("56.1 Stmt.") contains a full description of the relevant facts. Plaintiffs represent eight separate subclasses of Plan participants who invested in the Affiliated Funds during the Class Period.[8] Defendants are various individuals and entities that Plaintiffs allege served in a fiduciary capacity with respect to the Plan. Counts I and VII of the SAC are against the members of the Plan Committee, which was responsible for making investment decisions for the 401(k) Plan during the Class Period. As the Court's class certification order noted, Plaintiffs cannot rely on "generalized proof" to "establish whether Defendants breached their fiduciary duties to the Plan in offering all of the Affiliated Funds."[9] Instead, Plaintiffs' must prove "whether Defendants, in maintaining each of the eight Affiliated Funds in the Plan breached their fiduciary duties to the Plan."[10]

## LEGAL STANDARD

Summary judgment is appropriate when a court concludes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[8] *See* June 27, 2018 Order (Doc. 222) at 16–17.
[9] *Id.* at 7.
[10] *Id.*; *see also id.* ("Plaintiffs' evidence must address each of the eight Affiliated Funds.") (emphasis in original).

3

matter of law."[11]  The moving party satisfies its burden by establishing the absence of a triable fact issue.[12]  The burden then shifts to the non-moving party, who must offer specific facts showing genuine issues exist for trial.[13]  "[A]n issue is not genuine if it is unsupported by evidence or if it is created by evidence that is 'merely colorable' or is 'not significantly probative.'"[14]  And "conclusory allegations without specific supporting facts have no probative value."[15]

## ARGUMENT

An ERISA breach of fiduciary duty claim has three elements: (1) the defendant acted as a fiduciary, (2) the defendant breached its fiduciary duty, and (3) the breach caused a loss to the plan.[16]  Defendants do not dispute that the Plan Committee acted as a fiduciary to the Plan during the Class Period.  But Plaintiffs cannot raise a genuine issue of material fact concerning the other two elements: that the Plan Committee breached its fiduciary duties by failing to remove the

---

[11] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

[12] *See Celotex*, 477 U.S. at 330.

[13] *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

[14] *Bank of Am., N.A. v. Sorrell*, 248 F. Supp. 2d 1196, 1198 (N.D. Ga. 2002) (citation omitted).

[15] *Leigh*, 212 F.3d at 1217 (citation omitted).

[16] *See Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2d Cir. 2013) (citing 29 U.S.C. § 1109); *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000); *Perez v. DSI Contracting, Inc.*, No. 1:14-CV-282-LMM, 2015 WL 12618779, at *4 (N.D. Ga. Jul. 24, 2014).

4

Affiliated Funds during the Class Period or that such breach proximately caused a loss to the Plan.  Failure to prove either element is fatal to Plaintiffs' case.

## I. THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT THE PLAN COMMITTEE'S MONITORING OF THE AFFILIATED FUNDS DURING THE CLASS PERIOD WAS DISLOYAL OR IMPRUDENT.

Plaintiffs allege that the Plan Committee's monitoring of the Affiliated Funds violated two discrete fiduciary duties:  the duty of loyalty and the duty of prudence.  Plaintiffs lack concrete evidence to prove either theory.

### A. Plaintiffs Have Adduced No Evidence that the Plan Committee's Monitoring of the Affiliated Funds Was Disloyal.

ERISA's duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of" providing benefits to participants and defraying plan expenses.[17]  To violate the duty of loyalty, a fiduciary must act *for the purpose* of benefitting herself or others; actions that have incidental benefits to the fiduciaries or third parties are not enough.[18]  Thus, simply offering proprietary funds does not violate the duty of loyalty.[19]

---

[17] 29 U.S.C. § 1104(a)(1).

[18] *See, e.g.*, *Wildman v. Am. Century Servs., LLC*, No. 4:16-CV-00737, 2019 WL 293382, at *10 (W.D. Mo. Jan. 23, 2019); *A.F. v. Providence Health Plan*, 173 F. Supp. 3d 1061, 1073 (D. Or. 2016); *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337-Civ., 2007 WL 2263892, at *45 (S.D. Fla. Aug. 7, 2007).

[19] *See Wildman*, 2019 WL 293382 at *11; *Dupree*, 2007 WL 2263892, at *45; *see also Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (finding "no statute

Plaintiffs have no evidence that the Plan Committee retained the Affiliated Funds in the Plan with the subjective intent of benefitting SunTrust. Plaintiffs' principal "evidence" of disloyalty is a 2006 PowerPoint presentation on "plan governance" that concerns SunTrust's separate *pension* plan (not the 401(k) Plan at issue here).[20]   Even construing the presentation in a light most favorable to Plaintiffs, the fact that the Plan Committee apparently considered the costs and benefits (to SunTrust) of retaining the Affiliated Funds in a defined benefit plan (that SunTrust was solely responsible for funding) speaks only to the Plan Committee's consideration of that other plan's (and its participants') interests. Plaintiffs have not connected this presentation to the Plan Committee's actions regarding the 401(k) Plan.

Plaintiffs' fiduciary process expert, lawyer and former ERISA litigator Samuel Halpern, argues that  SunTrust CEO William H. Rogers Jr.'s testimony about "reputation risk" if SunTrust's affiliated funds were removed from its pension plan is evidence of disloyalty during the Class Period.[21]   But even a cursory review of Mr. Rogers' actual testimony shows Mr. Halpern's assertion is unfounded.  First, Mr. Rogers was answering questions about a document from

or regulation prohibiting a fiduciary from selecting funds from one management company").

[20] 56.1 Stmt. ¶¶ 172–75.

[21] *See* Shuler Decl. Ex. G (Halpern Expert Report) at 15 & n.18.

April 2004—before the Class Period opened and, thus, outside ERISA's repose period—and Mr. Rogers unequivocally testified that he had no recollection of the document, let alone the meaning of its contents.[22]  Second, Mr. Rogers declined to speculate about the "reputation risk" to which the document referred, and he certainly did not testify that the Plan Committee considered SunTrust's reputation risk when adding third-party funds to the Plan, as Mr. Halpern has asserted.[23]

### B. Plaintiffs Have Adduced No Evidence that the Plan Committee's Monitoring of the Affiliated Funds Was Imprudent.

ERISA's duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man in a like capacity and familiar with such matters would use" in a similar enterprise.[24]  Importantly, the duty of prudence "is one of conduct, and not a test of the result of performance of the investment."[25]  The relevant inquiry is whether the fiduciary "employed appropriate methods to reach" its investment decision.[26]

---

[22] 56.1 Stmt. ¶ 171.

[23] *Id.*

[24] 29 U.S.C. § 1104(a)(1)(B).

[25] *Barchock v. CVS Health Corp.*, 886 F.3d 43, 44–45 (1st Cir. 2018) (citation omitted).

[26] *New Orleans Emp'rs Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1372 (N.D. Ga. 2009).

Moreover, ERISA's duty of prudence requires fiduciaries to act prudently "under the circumstances."[27]   The prudence of retaining a plan investment thus "depend[s] on the character and aim of the particular plan and decision at issue and the circumstances prevailing at the time."[28]   Fiduciaries "who appropriately investigate the merits of an investment decision prior to acting" will "easily clear this bar,"[29] even if the decision did not achieve a desired result.

The Court's class certification order does not allow Plaintiffs to rely on generalized criticisms about the Plan Committee's monitoring process to establish imprudent monitoring with respect to the Affiliated Funds.  Rather, Plaintiffs must have evidence of imprudence specific to each of the Affiliated Funds.[30]

> 1.   The Undisputed Evidence Demonstrates that the Plan Committee's Monitoring Process Was Prudent.

The evidence developed during discovery showed that the Plan Committee engaged in a regular, robust, and objective process for monitoring investment options in the 401(k) Plan.  The Plan Committee met frequently—over sixty times during the nearly eight-year Class Period—and formed an investment

---

[27] 29 U.S.C. § 1104(a)(1)(B).

[28] *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 420 (4th Cir. 2007) (quoting *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 299 (5th Cir. 2000)).

[29] *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014); *see also New Orleans Emp'rs*, 635 F. Supp. 2d at 1377–78 (rejecting prudence claim relating to retention of plan investment).

[30] *See* June 27, 2018 Order (Doc. 222) at 7.

8

subcommittee to monitor Plan investments even more closely.[31]   The Plan Committee also received quarterly investment performance reports and analysis from Towers Perrin (later named Towers Watson) (hereinafter, "Towers"), an independent consultant.[32]  Internal SunTrust investment professionals provided the Plan Committee with additional analysis of Plan investment options.[33]

The Plan Committee had an equally rigorous process for removing poorly performing funds from the Plan.  Towers investigated poorly performing funds on behalf of the Plan Committee and conducted in-person interviews with the managers of underperforming funds when appropriate.[34]  The Plan Committee analyzed Towers' findings and considered its recommendations when deciding whether to remove a fund.[35]  And the evidentiary record demonstrates that the Plan Committee removed funds from the Plan where it concluded circumstances warranted action to protect participants.[36]

The investment options that the Plan Committee added and removed during the Class Period reflect that its processes were objective and balanced.  Over the course of the Class Period, the Plan held roughly equal numbers of proprietary and

---

[31] 56.1 Stmt. ¶¶ 18, 37–48.
[32] 56.1 Stmt. ¶¶ 24–36.
[33] 56.1 Stmt. ¶¶ 9–12, 42–48.
[34] 56.1 Stmt. ¶¶ 28–29, 66–67, 90–91, 102–03.
[35] 56.1 Stmt. ¶¶ 31, 62–72, 91, 103–11.
[36] 56.1 Stmt. ¶¶ 96–99, 109–12, 136–39.

non-proprietary funds, and the Plan Committee removed roughly equal numbers of each.[37]  Moreover, during the Class Period, the Plan Committee added eleven funds to the Plan; ten of them were non-proprietary funds (and the one new proprietary SunTrust fund was not an Affiliated Fund).[38]  On multiple occasions during the Class Period, the Plan Committee selected non-proprietary funds over proprietary alternatives, including adding a suite of T. Rowe Price target date funds as the Plan's default investment over a competing suite of SunTrust alternatives.[39] The evidence shows the Plan Committee's investment monitoring process was prudent.

2.    The Opinions of Plaintiffs' Expert Samuel Halpern Are Not Evidence of an Imprudent Process.

In the face of this objective evidence, Plaintiffs have only the assertions of Mr. Halpern, who compared the Plan Committee's monitoring process to a set of "Reasonable Standards and Practices" for 401(k) plan fiduciaries of his own making.[40] Mr. Halpern's Standards are contained in an unpublished, non-peer-reviewed document, parts of which Mr. Halpern drafted specifically for this case.[41]

[37] 56.1 Stmt. ¶¶ 53–57.
[38] 56.1 Stmt. ¶ 56.
[39] 56.1 Stmt. ¶¶ 134–54.
[40] *See* Shuler Decl. Ex. G (Halpern Expert Report).
[41] *See id.* at Appendix I; Ex. N (Halpern Dep. Tr.) at 81:9–22; 221:11–223:12; 262:9–263:22.

10

Mr. Halpern found the Plan Committee's process fell short of his bespoke Standards.

Mr. Halpern's circular reasoning resulted in an opinion that the Plan's monitoring process was imprudent based on three factors: (1) the performance (described by Plaintiffs' experts as "mediocre" and "middling"[42]) and fees of the Affiliated Funds during the Class Period; (2) "structural" conflicts of interest that, according to Mr. Halpern, "compromised" the Plan Committee's investment decisions; and (3) the process by which the Affiliated Funds were initially selected long before the Class Period began.[43]   None establishes a material fact issue on Plaintiffs' prudence claim.

***Fund performance and fees.***   Mr. Halpern did not argue that the performance of the Affiliated Funds, standing alone, was enough to make their retention in the Plan unreasonable.[44]   Good, because fiduciary actions are judged "based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight."[45]   Because no fiduciary can

---

[42] *See* Shuler Decl. Ex. K (Pomerantz Rebuttal Report) at 3, 7; Ex. N (Halpern Dep. Tr.) at 310:20–311:14.

[43] *See* Shuler Decl. Ex. G (Halpern Expert Report) at 9–30; Ex. N (Halpern Dep. Tr.) at 163:22–164:19, 185:8–188:1, 322:1–12.

[44] *See* Shuler Decl. Ex. N (Halpern Dep. Tr.) at 177:1–180:7, 184:9–186:4, 190:7–196:22.

[45] *St. Vincent*, 712 F.3d at 716 (citation omitted).

predict future investment performance, it is well settled that "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation."[46]

The fact that cheaper funds existed in the marketplace is likewise not evidence of imprudence.  The duty of prudence does not require fiduciaries "to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)."[47]  And courts have rejected arguments that fiduciaries must offer passively-managed over actively-managed funds[48] or collective trusts over mutual funds.[49]

***Structural conflicts***.   Many of Mr. Halpern's "structural conflicts" are expressly permitted by ERISA.  Officers of a corporate plan sponsor commonly serve as fiduciaries to 401(k) plans.[50]   Likewise, ERISA's implementing

---

[46] *White v. Chevron Corp.*, No. 16-cv-0793, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016).

[47] *Hecker*, 556 F.3d at 586; *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822–23 (8th Cir. 2018) ("cheaper alternative investments with some similarities" that exist in marketplace not a "meaningful benchmark" to determine prudence of plan investment).

[48] *See, e.g., Wilcox v. Georgetown Univ.*, No. CV 18-422 (RMC), 2019 WL 132281, at *11 (D.D.C. Jan. 8, 2019); *Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273, 313 n.114 (S.D.N.Y. 2018).

[49] *See, e.g.*, *Loomis v. Exelon Corp.*, 658 F.3d 667, 671–72 (7th Cir. 2011).

[50] *See* 29 U.S.C. § 1108(c)(3); *DiFelice*, 497 F.3d at 421; *Wildman*, 2019 WL 293382, at *10 (noting "a conflict of interest alone is not a per se breach") (citation omitted).

regulations expressly permit financial institutions to offer their own products in company retirement plans,[51] and courts recognize that offering proprietary funds in a 401(k) plan is not *per se* evidence of imprudence.[52]

 ***Selection of the Affiliated Funds***.  Mr. Halpern also relies heavily on the selection of the Affiliated Funds, which took place before the Class Period and outside ERISA's six-year repose period.  As established in this Court's order granting summary judgment on all claims arising before March 11, 2005[53] and further explained in Defendants' pending motion for summary judgment on Count VIII,[54] time-barred events are irrelevant to judging the Plan Committee's monitoring process during the Class Period.

 In short, none of Mr. Halpern's factors—"middling" fund performance and fees, potential conflicts of interest, or events from before the repose period—is

---

[51] *See, e.g.*, Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991) (to be codified at 29 C.F.R. pt. 2550) (noting that it would be "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor"); Prohibited Transaction Class Exemption 77-3, 42 Fed. Reg. 18,734 (April 8, 1977).

[52] *Wildman*, 2019 WL 293382, at *12 (citing *Hecker*, 556 F.3d at 586); *Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 797 (D. Minn. 2018); *Leber v. Citigroup, Inc.*, No. 07 CIV. 9329, 2011 WL 5428784, at *3 (S.D.N.Y. Nov. 8, 2011); *see also Dupree*, 2007 WL 2263892, at *47 (defined benefit plan).

[53] *See* May 2, 2018 Order (Doc. 219).

[54] *See* Doc. 233.

enough, alone or together, to create a genuine issue of material fact that the Plan Committee engaged in imprudent monitoring during the Class Period.

   3. <u>Plaintiffs Have Failed to Establish Imprudent Monitoring Decisions with Respect to Any Specific Affiliated Fund</u>.

   Even more fundamentally, Plaintiffs have adduced no evidence that the Plan Committee's monitoring of any specific Affiliated Fund was imprudent at any point during the Class Period.  Dr. Pomerantz, their damages expert, expressly denied having any opinion on the prudence of any specific Affiliated Fund because, he said, Plaintiffs' counsel had only asked him about the overall slate of funds.[55]  Plaintiffs' inattention to individual funds is fatal because, as the Court has already explained, generalized evidence about the Plan Committee's process is insufficient to establish a breach with respect to specific investment decisions during the Class Period.[56]  With respect to at least three of the Affiliated Funds— the Small Cap Growth, Short Term Bond, and Investment Grade Bond Funds— there is no evidence of specific imprudent investment decisions resulting in their

---

[55] *See* Shuler Decl. Ex. J (Pomerantz Expert Report) at 4; Ex. M (Pomerantz Dep. Tr.) at 87:17–88:20, 95:16–96:5; *see also* Mem. of Law in Supp. of Defs.' Mot. to Exclude Opinion 5 of Dr. Pomerantz (Doc. 250-1) at 3–6, 12–13.

[56] *See* June 27, 2018 Order (Doc. 222) at 7 (expressing disagreement "with Plaintiffs' statement that generalized proof can establish whether Defendants breached their fiduciary duties to the Plan in offering all of the Affiliated Funds" and  that "[i]t will be necessary for Plaintiffs to address whether Defendants, in maintaining each of the eight Affiliated Funds in the Plan breached their fiduciary duties to the Plan").

retention.[57]  Summary judgment should be entered on those three funds and their subclass's claims based on this lack of evidence.

As for the other five funds and subclasses, the record concerning the Plan Committee's monitoring process shows Plaintiffs fell far short of marshalling evidence that could establish a genuine issue of material fact warranting a trial:

***Mid-Cap Equity Fund***.  While the Mid-Cap Equity Fund had the weakest performance of any Affiliated Fund during the Class Period, the Plan Committee responded by closely monitoring the Fund and removing it in 2010.[58]  Plaintiffs may argue this removal was too little, too late.  But this ignores record evidence that the Plan Committee had asked Towers, its independent investment consultant, to investigate the Fund as early as September 2008.[59]  After Towers investigated, it advised the Plan Committee *not* to remove the Fund from the Plan, and subsequently noted performance improvements in late 2008 and 2009.[60]  Only after another period of underperformance in late 2009 and 2010 did Towers recommend considering replacements, which the Committee did when it removed the Fund and replaced it with an unaffiliated alternative.[61]    Following an independent

---

[57] 56.1 Stmt. ¶¶ 77–86, 113–16.

[58] 56.1 Stmt. ¶¶ 100–12.

[59] 56.1 Stmt. ¶ 102.

[60] 56.1 Stmt. ¶¶ 103–06.

[61] 56.1 Smt. ¶¶ 109–12.

consultant's recommendations and diligently monitoring a fund during a period of underperformance is evidence of prudence, not imprudence.

Mr. Halpern tries to contrast the Plan Committee's retention of the Mid-Cap Equity Fund until 2010 and retention of other Affiliated Funds with its removal from the Plan of the unaffiliated Lazard Mid Cap Institutional Fund in 2008.[62] But this argument elides important differences between the funds.  As Dr. John Minahan, Defendants' investment consulting expert, has explained, the Plan Committee had sound reasons for removing the Lazard fund swiftly, including concerns about "investments that were negatively impacted by the sub prime industry."[63]  There were no such concerns for the Mid-Cap Equity Fund.

***Growth and Income Fund***.   Like the Mid-Cap Equity Fund, the Plan Committee monitored the Growth and Income Fund and responded to weak performance by removing the Fund from the Plan.  Like the Mid-Cap Equity Fund, once the Growth and Income Fund's performance (which was strong through 2007[64]) began to deteriorate in 2008, the Plan Committee asked Towers to evaluate the Fund.[65]  Towers concluded there was no systemic problem with the Fund, and

---

[62] Shuler Decl. Ex. H (Halpern Expert Rebuttal Report) at 18–20.
[63] Shuler Decl. Ex. A (Minahan Expert Report) at 33–34.
[64] 56.1 Stmt. ¶ 88.
[65] 56.1 Stmt. ¶ 90.

recommended close monitoring but not removal.[66]   The Plan Committee did continue to closely monitor the Fund and decided to remove it after another Towers investigation in early 2011.[67]   Plaintiffs' after-the-fact criticism of the diligent approach recommended by Towers and followed by the Plan Committee is hardly evidence of imprudence.

*International Equity Index Fund*.  Mr. Halpern claims that the fees of the International Equity Index Fund were high relative to other passively managed international funds.[68]  But as Dr. Bruce Stangle, Defendants' economics expert, has explained, the International Equity Index Fund was a unique investment that tracked a Gross Domestic Product ("GDP") weighted index of international equities (instead of the typical index weighted by market capitalization).[69]  Indeed, as Dr. Stangle's analysis shows, the Fund's expenses were lower than the only other fund that used a GDP-weighted approach during the Class Period.[70]

*Capital Appreciation Fund*.   Plaintiffs have challenged the Plan Committee's decision to retain the Capital Appreciation Fund after it changed

---

[66] 56.1 Stmt. ¶ 91.

[67] 56.1 Stmt. ¶¶ 92–99.

[68] Shuler Decl. Ex. G (Halpern Expert Report) at 22 n.25.

[69] Shuler Decl. Ex. D (Stangle Expert Report) ¶ 74.

[70] *Id.* ¶ 99.

managers in 2007.[71]  Mr. Halpern asserts that new management meant the Fund lacked any "performance record," making its retention imprudent.[72]   But this ignores that Towers and the Plan Committee's Investment Subcommittee investigated the new fund managers (and the successful methodology they employed elsewhere), and noted shortly after the management change that performance of the Fund "had improved significantly."[73]  Plaintiffs also ignore that the Capital Appreciation Fund's performance continued to improve following the change, so much so that its trailing five-year performance ranked in the top half of peer funds by 2011 and 2012.[74]

**_Prime Quality Money Market Fund_**. Plaintiffs have also argued that the Plan Committee acted unreasonably by failing to switch from the Prime Quality Money Market Fund to a cheaper SunTrust money market fund, the Institutional Cash Management Fund.  But again, Plaintiffs ignore the context surrounding the Plan Committee's actual investment decision.  The Plan Committee _did_ decide to switch to the Institutional Cash Management Fund in 2008.[75]  But the Committee

---

[71] 56.1 Stmt. ¶ 60.

[72] Shuler Decl. Ex. G (Halpern Expert Report) at 27.

[73] 56.1 Stmt. ¶¶ 61–68; _see also New Orleans Emp'rs_, 635 F. Supp. 2d at 1377 (noting "it was not unreasonable" for fiduciaries "to take a forward-looking approach" to monitoring plan investment).

[74] 56.1 Stmt. ¶¶ 75–76.

[75] 56.1 Stmt. ¶¶ 123–25.

reversed course after learning that making the switch would cause participants to lose the protection of federal guaranties that had been issued to protect money market fund investors during the worst of the financial crisis.[76]

## II. THERE IS NO GENUINE ISSUE OF FACT THAT DEFENDANTS' PURPORTED BREACHES PROXIMATELY CAUSED A LOSS TO THE PLAN.

Plaintiffs' claims fail for the additional and independent reason that they have adduced no evidence to support a finding of loss causation.  Under ERISA, fiduciaries who breach their duties are liable for "any losses to the plan *resulting from each such breach* . . . ."[77]  "The Eleventh Circuit has interpreted this language to 'require that the breach of the fiduciary duty be the proximate cause of the losses claimed.'"[78]  Thus, "a fiduciary is not liable under [ERISA] where his actions—'although a breach of his fiduciary duty—did not cause the loss to the Fund.'"[79]

It is the Plaintiffs' burden to prove loss causation.[80]  To meet this burden, Plaintiffs first must prove a loss—that is, the difference between the Plan's actual

---

[76] 56.1 Stmt. ¶ 125.

[77] 29 U.S.C. § 1109 (emphasis added).

[78] *DSI Contracting*, 2015 WL 12618779, at *5 (citing *Willett*, 953 F.2d at 1343).

[79] *Id.* (quoting *Ironworkers Local No. 272 v. Bowen*, 695 F.2d 531, 536 (11th Cir. 1983)).

[80] *See Willett*, 953 F.2d at 1343–44; *DSI Contracting*, 2015 WL 12618779, at *6.

results and what the Plan would have made in the absence of a breach.[81]  Plaintiffs then must show proximate causation: that the Defendants' breach of duty caused the loss, because no prudent fiduciary would have made the same decision.[82] Plaintiffs can prove neither.

### A.    Plaintiffs Have Not Established a Loss to the Plan.

Plaintiffs have not established that retention of the Affiliated Funds during the Class Period caused a legally cognizable loss to the Plan.  To do so, Plaintiffs must show a difference in returns between the challenged Affiliated Funds and appropriate comparator funds that were suitable and prudent for the Plan at the time the breach occurred.[83]  Importantly, courts do not allow ERISA plaintiffs to establish loss simply by comparing the challenged fund to any higher-performing fund in the marketplace, as this would result in a windfall with no reasonable connection to the returns participants would have received absent a breach.[84]

Plaintiffs have attempted to present evidence of a loss through Dr. Pomerantz's report, which devised three methods to measure loss.  "Method 1" compares the Affiliated Funds against what Dr. Pomerantz calls the "best

---

[81] *See Wildman*, 2019 WL 293382, at *18 (citing *Roth v. Sawyer-Cleater Lumber Co.*, 61 F.3d 599, 604 (8th Cir. 1995)).

[82] *See, e.g.*, *Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 558 (4th Cir. 2017); *Sacerdote*, 328 F. Supp. 3d at 285–86.

[83] *See Wildman*, 2019 WL 293382, at *18–19.

[84] *See id.* at *9, *18–19.

performing feasible alternative," which is simply the fund in each Affiliated Fund's asset class that ended up performing best during the Class Period.[85] "Method 2" compares each Affiliated Fund against "a comparable Vanguard fund within the same asset class category."[86]   "Method 3" compares each Affiliated Fund against "average market returns," which Dr. Pomerantz approximated through the performance of Vanguard index funds during the Class Period.[87]

There are numerous flaws in Dr. Pomerantz's approach, as detailed in both Defendants' pending *Daubert* motion and the rebuttal report of Dr. Stangle.[88] First, Dr. Pomerantz does not connect his calculations to any specific breaches during the Class Period, with Method 1 as a particularly stark example.  As Dr. Pomerantz conceded, Method 1 would result in a loss in every scenario except a hypothetical plan offering the same "best performing alternative" funds, which Dr. Pomerantz admitted Defendants could not have selected without the benefit of hindsight.[89]  Even more critically, Dr. Pomerantz does not establish, and indeed declined to opine, that any of his comparators were prudent options for the

---

[85] Shuler Decl. Ex. J (Pomerantz Expert Report) at 11–12.

[86] *Id.* at 12–13.

[87] *Id.* at 13–14.

[88] Defs.' Mot. to Exclude Opinion 5 of Dr. Pomerantz (Doc. 250); Shuler Decl. Ex. E (Stangle Rebuttal Report).

[89] *See* Shuler Decl. Ex. M (Pomerantz Dep. Tr.) at 138:22–141:10; 150:10–152:7.

SunTrust Plan during the Class Period.[90]  For example, he provided no reason why a prudent fiduciary would have selected exclusive slates of Vanguard active or passive funds for the Plan.[91]

These same flaws recently led another district court to reject Dr. Pomerantz's loss calculations.[92]  Just like here, Dr. Pomerantz did not connect his loss calculations to specific breaches, select suitable comparators to the challenged funds, or "opine on the prudence of any of the alternatives that he used."[93]  As a result, the court determined that Dr. Pomerantz had failed to compare the challenged funds to any meaningful comparators, making his loss calculations "the result of speculation and . . . untethered to the facts of this case."[94]

## B.     Plaintiffs Have Not Established Loss Causation.

In addition to proving a legally cognizable loss to the Plan, Plaintiffs must prove that the Plan Committee's breach of fiduciary duty proximately caused that loss.  That is, even if the Plan Committee's monitoring process was flawed, and even if the Affiliated Funds performed more poorly than other suitable mutual funds, there is still no liability if a prudent monitoring process would have resulted

---

[90] *See id.* at 88:21–91:8, 141:3–10.

[91] *See id.* at 143:11–144:10, 145:22–146:14.

[92] *See Wildman*, 2019 WL 293382, at *18.

[93] *Id.* at *19.

[94] *Id.* at *9; *see also* *18 (noting plaintiffs cannot establish loss "by comparing alleged imprudent investments to funds that cannot be said to be prudent").

in the same investment decisions.[95]   Thus, to succeed on their claims Plaintiffs must establish that no prudent fiduciary would have retained the Affiliated Funds in the Plan during the Class Period.[96]

There is no evidence in the record to support a conclusion that the Affiliated Funds' performance and fees were so poor that no prudent fiduciary would have maintained them in the Plan.  Defendants' experts, Drs. Stangle and Minahan, have opined that the performance and costs of the Affiliated Funds during the Class Period were reasonable and in line with peers.[97]   And Plaintiffs' own expert, Dr. Pomerantz, described the Affiliated Funds as "B students" with "mediocre" and "middling" performance—conclusions that, if anything, support that a prudent fiduciary *could* have decided to maintain the Affiliated Funds in the Plan.[98]

Mr. Halpern offered no opinion on loss causation, and he expressly *declined* to opine whether the Committee should have removed the Affiliated Funds, nor did he opine what fund(s) a hypothetical prudent fiduciary would have selected.[99]

---

[95] *See, e.g.*, *Tatum*, 855 F.3d at 556 (affirming bench trial ruling "that the fiduciary's breach did not cause the losses because a prudent fiduciary would have made the same divestment decision at the same time and in the same manner").
[96] *See id.*
[97] Shuler Decl. Ex. A (Minahan Expert Report); Ex. D (Stangle Expert Report).
[98] *See* Shuler Decl. Ex. K (Pomerantz Rebuttal Expert Report) at 3, 7; Ex. M (Pomerantz Dep. Tr.) at 169:16–172:22.
[99] *See* Shuler Decl. Ex. G (Halpern Expert Report) at 30 n.41; Ex. N (Halpern Dep. Tr.) at 137:3–138:2, 150:5–155:13, 204:1–23, 231:2–9.

Indeed, Mr. Halpern's refusal to testify that the Affiliated Funds' performance standing alone made their retention imprudent suggests, if anything, that a prudent fiduciary *could* have retained the Funds.[100]

## III.   PLAINTIFFS' DERIVATIVE CLAIMS FALL WITH THEIR FIDUCIARY BREACH CLAIMS.

Finally, without an underlying breach by the Plan Committee, Counts III, IV, and VI of the SAC all fail as a matter of law.[101]   Moreover, Plaintiffs have established no evidence that the Defendants named in these counts failed to review the Plan Committee's performance at reasonable intervals to ensure it met plan and statutory requirements.[102]   Plaintiffs' claims against SunTrust are doomed because SunTrust is not a fiduciary to the Plan[103] and lacks vicarious fiduciary liability under ERISA for the actions of its employees or directors.[104]

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment on Counts I, III, IV, VI, and VII of the SAC.

---

[100] *See* Shuler Decl. Ex. G (Halpern Dep. Tr.) at 177:1–180:7, 184:9–186:4, 190:7–196:22.

[101] *See Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1333 (N.D. Ga. 2006).

[102] *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011) (quoting 29 C.F.R. § 2509.75-8 at FR-17)).

[103] *See In re Citigroup ERISA Litig.*, No. 07 Civ. 9790, 2009 WL 2762708, at *14–15 (S.D.N.Y. Aug. 31, 2009), *aff'd*, 662 F.3d 128 (2d Cir. 2011).

[104] *See, e.g.*, *In re Beazer Homes USA, Inc. ERISA Litig.*, No. 1:07-CV-0952-RWS, 2010 WL 1416150, at *5 (N.D. Ga. Apr. 2, 2010).

Dated: March 8, 2019

/s/ *Darren A. Shuler*
David Tetrick, Jr.
Georgia Bar No. 713653
dtetrick@kslaw.com
Darren A. Shuler
Georgia Bar No. 644276
dshuler@kslaw.com
Danielle Chattin
Georgia Bar No. 486940
dchattin@kslaw.com
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 572-4600
Fax:  (404) 572-5139

**Attorneys for Defendants**

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This Memorandum was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 8th day of March 2019.


*/s/  Darren A. Shuler*
Darren A. Shuler
Georgia Bar No. 644276

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____   )
                                  )
**IN RE SUNTRUST BANKS, INC.**    )   **CIVIL ACTION FILE**
**401(k) PLAN AFFILIATED**        )   **NO. 1:11-CV-784-ODE**
**FUNDS ERISA LITIGATION**        )
_____   )

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 8, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send a copy to the following attorneys of record:

Alan R. Perry, Jr.                      J. Brian McTigue
**PAGE PERRY**                          James A. Moore
1493 LaVista Rd NE                      **MCTIGUE LAW LLP**
Atlanta, Georgia  30324                 4530 Wisconsin Avenue, NW
aperry@pageperry.com                    Suite 300
                                        Washington, DC 20016
                                        bmctigue@mctiguelaw.com
                                        jmoore@mctiguelaw.com

Karen L. Handorf
Scott Michael Lempert
Jamie Bowers
**COHEN MILSTEIN SELLERS**
   **& TOLL PLLC**
1100 New York Avenue, Suite 500 West
Washington, DC 20005
khandorf@cohenmilstein.com
slempert@cohenmilstein.com
jbowers@cohenmilstein.com

                                        */s/ Darren A. Shuler*
                                        Georgia Bar No. 644276